No. 23-13368

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

The State of Georgia,
                    Plaintiff-Appellee,

v.

Jeffrey Bossert Clark,
                    Defendant-Appellant.

_____

Appeal From the United States District Court for the Northern District of Georgia
The Honorable Steve C. Jones, Presiding
D.C. Docket No. 1:23-cv-03721-SCJ

_____

**State of Georgia's Brief in Opposition to Appellant's Motion for Stay Pending Appeal**

**FANI T. WILLIS, DISTRICT ATTORNEY**
Atlanta Judicial Circuit

F. McDonald Wakeford, Chief Senior Assistant District Attorney
John W. "Will" Wooten, Deputy District Attorney
Alex Bernick, Assistant District Attorney
Anna Green Cross, Special Prosecutor
John E. Floyd, Special Prosecutor
Office of the Fulton County District Attorney
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
(404) 612-4981

_Counsel for Plaintiff-Appellee the State of Georgia_

## INTRODUCTION

Defendant Jeffrey B. Clark moves this Court for a stay pending his appeal of the district court's well-reasoned September 29, 2023 order rejecting Clark's effort to remove his State of Georgia criminal proceedings to federal court under the provisions of 28 U.S.C. § 1442(a) (procedurally invoking 28 U.S.C. § 1455). Ex. A[1] (Doc. 55, Order Declining to Assume Jurisdiction). The district court recognized that Clark failed to meet even the low evidentiary threshold required to establish the charged criminal conduct was within the color of his federal office— a conclusion supported by both prevailing legal authority and the record evidence.

Additionally, consistent with his unsuccessful efforts throughout this litigation, Clark insists he is entitled to a stay of his **criminal** remand to Fulton County Superior Court based on the statute permitting automatic removal of **civil** cases, 28 U.S.C. § 1446(a), based upon a fundamental misunderstanding of the criminal Special Purpose Grand Jury ("SPGJ") empaneled in the Superior Court for criminal investigative purposes. The district court rejected this convoluted effort, noting that Clark has "not asserted any viable basis for the SPGJ to be removed." Ex. A (Doc. 55, Order Declining to Assume Jurisdiction) at 29. Clark's misread of the applicable statutes and misapprehension of the binding caselaw

---

[1]   Defendant did not attach the district court's September 29, 2023 Order Declining to Assume Jurisdiction (Doc. 55) to his motion; it is attached here as Exhibit A.

cannot support the heavy burden required to justify the relief he requests. The State of Georgia, by and through the Fulton County District Attorney Fani T. Willis, opposes the motion and respectfully asks this Court to deny the motion for a stay.

## I.    BACKGROUND

A Fulton County grand jury returned a 41-count indictment against Defendant Clark and 18 co-defendants on August 14, 2023. Ex. A (Doc. 55, Order Declining to Assume Jurisdiction) at 3. Defendant Clark is charged in Count 1 with a violation of the Georgia Racketeer Influenced and Corrupt Organizations Act (O.C.G.A. § 16-14-4(c)) and in Count 22 with Criminal Attempt to Commit False Statements and Writings in violation of O.C.G.A. §§ 16-4-1 and 16-10-20. *Id*. Specifically, relevant to consideration of Clark's motion, the criminal charges Clark faces primarily relate to an overarching conspiracy to interfere with Georgia's administration and certification of the 2020 Presidential election, and a December 28, 2020 letter Clark drafted and submitted to his superiors, Acting Attorney General Jeffrey Rosen and Acting Deputy Attorney General Richard Donoghue, to further those ends. *Id*. As the district court summarized, the "draft letter was addressed, but never sent, to Georgia state officials . . . encouraging Georgia to take actions with regard to its Certified Electors because of DOJ investigations into the 2020 election that showed purported irregularities." *Id*. at 3-4.

A week after the indictment was issued, on August 21, 2023, Defendant Clark filed both a notice of removal to the Northern District of Georgia, and a pleading styled an "Emergency Motion to Confirm Applicability of Automatic Stay Under 28 U.S.C. § 1446(d) or the Triggering of the Stay in 28 U.S.C. §1455(b)(5) or Both—or in the Alternative for an Administrative Stay." Ex. B (Doc. 1, Notice of Removal), Ex. C (Doc. 2, Emergency Motion for Stay). The Motion for a Stay was denied by the district court, summary remand declined, and an evidentiary hearing on the merits of Clark's removal notice held September 18, 2023. Ex. D (Doc. 9, Order Denying Emergency Motion to Stay), Ex. E (Doc. 15, Order Denying Summary Remand). On September 29, 2023, the Honorable Steve C. Jones issued a 31-page order rejecting Clark's effort to remove the criminal proceedings, finding no basis to remove the concluded Special Purpose Grand Jury proceedings, and remanding Defendant's case to the Fulton County Superior Court. Ex. A (Doc. 55, Order Declining to Assume Jurisdiction).

Clark filed his Notice of Appeal from the district court's order, and also moved the district court for a stay pending appeal on October 9, 2023. The district court had not ruled on the motion for stay prior to Clark filing the instant motion for stay pending appeal in this Court on October 26, 2023. Mot. The State files this opposition to Defendant Clark's Motion, and respectfully requests that the motion be denied.

## II.    DEFENDANT CANNOT MEET HIS BURDEN TO ESTABLISH THAT A STAY PENDING APPEAL IS MERITED

Clark seeks a stay of the district court's order declining to exercise jurisdiction over his criminal prosecution pending in Fulton County Superior Court pursuant to 28 U.S.C. §1447(d), which provides an avenue for appeal for individuals denied removal under 28 U.S.C. §1442. *See* 28 U.S.C. §1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."). Section 1447 does not provide for an automatic or mandatory stay of lower court proceedings through the pendency of the appeal, nor has this Court ever interpreted the right of appeal afforded by that statute to be coupled with a mandatory stay.

As this Court has consistently recognized, a litigant seeking a stay pending appeal bears the burden to justify it through consideration of four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (quoting *Nken v. Holder*, 556 US. 418, 426 (2009)). In general, a stay is considered "extraordinary relief" for which the moving party

bears a "heavy burden." *Winston-Salem/Forsyth Cty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971).

Upon review, the first two factors are considered to be the most critical. *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (citing *Nken,* 556 U.S. at 434); *see also Hand*, 888 F.3d at 1207. To satisfy its burden as to these two factors, "the party seeking the stay must show more than the mere possibility of success on the merits or of irreparable injury." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019); *accord Nken*, 556 U.S. at 434-35. Indeed, "[a] stay is not a matter of right" but rather "an exercise of judicial discretion,"  and so the "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Florida v. United States*, Nos. 23-11528, 23-11644, 2023 U.S. App. LEXIS 13863, at *5 (11th Cir. June 5, 2023) (citing *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926); *Nken*, 556 U.S. at 433-34). Here, Clark falls well short on all four prongs.

### A. Clark has not made a strong—or even plausible—showing that his appeal is likely to succeed on the merits.

A review of the district court's well-reasoned order reveals no error in its conclusion that Clark has not met his burden to show a causal connection between his federal office and the acts alleged in the criminal prosecution. Ex. A (Doc. 55, Order Declining to Assume Jurisdiction) at 16. At the outset, it should be noted that Defendant failed to testify at the evidentiary hearing, called no other witness to

the stand, and tendered no exhibits at the hearing. *Id*. at 11 ("Clark did not submit any witness testimony, and only referred to two declarations that were filed on the docket (via CM/ECF) prior to the evidentiary hearing."). Clark's own self-serving declaration was excluded, given his failure to make himself available for cross-examination. *Id*. at 14, n.11. Additionally, a declaration from former Attorney General Edwin Meese filed by Clark was admitted over objection, but given limited weight by the district court insofar as the declaration offered expert opinions and/or proffered information irrelevant to the issues raised in Clark's removal bid. *Id*. at 3, n.4; *id*. at 14. Instead, Clark rested almost entirely on the deposition testimony of Acting United States Attorney General Jeffrey Rosen and Deputy Attorney General Richard Donoghue, entered onto the docket as exhibits to the State's opposition to removal, for support. *Id*. at 14-15. As a result, the factual record Clark draws on to make his case for removal is decidedly limited.

More directly, Clark misreads the district court's order when he claims that it applied an improper legal standard. Mot. at 12-13. The district court specifically cited to, and applied the language of, Section 1442(a)(1), as amended in 2011. Ex. A (Doc. 55, Order Declining to Assume Jurisdiction) at 6 ("This statute allows for federal jurisdiction over 'a criminal prosecution . . . against . . . any officer (or any person acting under that officer) of the United States . . . **for or relating to** any act under color of such office.'" (citing 28 U.S.C. § 1442(a)(1); emphasis added)).

Clark's argument notwithstanding, the district court applied the appropriate standard. Citation and adherence to Supreme Court's pre-amendment caselaw (*Willingham v Morgan*, 395 U.S. 402 (1969) and *Jefferson Cty. v. Acker*, 827 U.S. 423 (1999)) is no mere "judicial gloss," as Defendant terms it, but recognition that those seminal cases have not been disturbed. Given the paltry record presented by Clark, denial of his bid for removal was not a close call.

**B. Clark faces no irreparable harm absent a stay.**

Clark offers no more than the "mere possibility" of harm in support of his motion to stay the criminal case proceedings, citing his preference for an Article III judge to determine his anticipated federal defenses, and running through a litany of potential or theoretical inconveniences that every litigant faces—wasted time, trouble, judicial resources, personal expense, and negative publicity. Mot. at 19. No trial date has yet been set for Clark, and he has demonstrated nothing more onerous than being subject to a routine scheduling order entered in the Fulton County case setting a motion deadline for January 2024. *Id.* at 2 (also noting severance of some defendants from Clark, and scheduling order requiring discovery to be produced by December 4, 2023 and motions due January 8, 2024). This factor weighs against the issuance of a stay, where the injury Clark asserts does not rise above "too lenient" possibility of irreparable harm. *Nken*, 556 U.S. at 435.

It is worth noting as well that Defendant makes no effort to address or confront 28 U.S.C. § 1455(b)(3), which provides that a criminal defendant's continued participation in State court proceedings is the default preference when removal is sought under Section 1442. Clark offers no rationale for why a defendant who is not entitled to a stay of the State court prosecution pending final adjudication of his removal should receive a halt of those same State court proceedings once his removal petition has been determined to be deficient.

### C. A stay would result in prejudice to the State of Georgia.

Clark gives insufficient weight to the very real prejudice to the State of Georgia that would result from an indefinite stay of the ongoing criminal prosecution against him. Federal courts have long recognized the substantial interest States hold in prosecuting criminal violations of State laws. *See, e.g.*, *Willingham*, 395 U.S. at 409, n.4 (requiring a "more detailed showing" for federal removal of state criminal prosecutions based on an increased State interest). There are well-known federalism interests at stake when contemplating the freeze of a criminal prosecution pending the resolution of a removal effort already denied in the district court. *See generally* 28 U.S.C. § 2283 (the Anti-Injunction Act, which restricts federal courts' ability to grant an injunction of state court proceedings); *Atl. C. L. R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970) ("Moreover since the [Act's] statutory prohibition against such injunctions in part

9

rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction."). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Id.* at 297; *see also Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1315 n.9 (11th Cir. 2005) (noting the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 45 (1971) requires that "federal courts . . . abstain from interfering with ongoing state criminal prosecutions" based on comity and federalism concerns). The factor of prejudice to the State weighs heavily against the issuance of a stay pending appeal, and Clark makes no serious argument to the contrary.

**D. The public interest weighs against issuance of a stay pending appeal.**

In addition to those established interests in keeping State criminal matters free from federal interference, in this case the public interest favors the resolution of Clark's case in State court without undue delay. State comity would be best preserved with keeping the State prosecution of Clark on the same track as his co-defendants, and he raises no colorable claim otherwise. The district court concluded that Clark was acting outside the scope of his federal duties in the acts that the indictment alleges to be interference in the State of Georgia's election administration. Ex. A (Doc. 55, Order Declining to Assume Jurisdiction) at 23

("Consequently, **Clark has not shown the required nexus** for federal officer removal." (emphasis added)), 27 ("Not only has Clark failed to provide any (let alone sufficient) evidence that the President delegated him this authority, but the evidence shows that any such delegation of the action alleged (i.e., the contents of the letter drafted) would have been **outside the scope of the DOJ more broadly**." (emphasis added)). A stay of the remand order authorizing the continuation of the State prosecution would be yet another example of Clark seeking to disrupt the State of Georgia's lawful exercise of its authority. Respectfully, that effort should be rejected.

## III.    DEFENDANT'S RELIANCE ON *COINBASE, INC. V. BIELSKI*, 599 U.S. 736 (2023) PROVIDES NO SUPPORT FOR HIS DEMAND FOR AN AUTOMATIC OR MANDATORY STAY.

In an effort to shed his burden of meeting the *Nken* criteria for obtaining a stay, Defendant advances a novel but ultimately meritless theory that a recent decision from the Supreme Court of the United States restricted to a civil litigant's interlocutory appeal of a motion to compel arbitration pursuant to 9 U.S.C. § 16(a) somehow re-writes the appellate rules to guarantee a criminal defendant the right to a mandatory stay of an appeal from an order denying federal removal. Mot. at 2-5 (citing *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (June 23, 2023)). In that case, the Supreme Court determined that a district court must stay its proceedings after

denying a motion to compel arbitration when the losing party appeals as a matter of right under 9 U.S.C. § 16(a). *Coinbase, Inc.*, 599 U.S. at 741.

Clark does not direct this Court's attention to any court's application of the *Coinbase* reasoning in any area outside the interlocutory appeal for denial of motions to compel arbitration authorized by 9 U.S.C. § 16(a); there **is** no such authority. Since the Supreme Court's June 23, 2023 decision in *Coinbase*, nineteen published opinions have cited to the case, and not one supports the exceptionally broad reading Defendant Clark urges.[2] The interests and position of civil litigants subject to the potential application of a binding contractual arbitration agreement clearly differ dramatically from efforts of a criminal defendant seeking federal removal, and Clark provides this Court with no rationale that would justify mandating a stay in every case where a district court denied removal under Section 1442(a).

With less than five months since its issuance, it is unsurprising that this Court has yet to consider any application of *Coinbase*. A very recent decision from the Fifth Circuit, however, sheds some light on the limits the case is likely to have outside interlocutory appeals of arbitration rulings. That Fifth Circuit case, *Plaquemines Par. v. Chevron United States, Inc.,* cites to *Coinbase* to **reject** a civil

---

[2]     As of November 6, 2023, nineteen published opinions cite to *Coinbase*, none of which apply the reasoning unique to enforcement of arbitration to any other context.

litigant's effort to stay pending appeal the order denying its bid for federal removal pursuant to Section 1446, with no suggestion a mandatory stay would be appropriate or even considered. No. 23-30291, 2023 U.S. App. LEXIS 27249, at *23-24 (5th Cir. Oct. 11, 2023) (granting motion to lift and vacate district court's order issuing stay pending appeal based on traditional *Nken* factors; appeal taken under authority of 28 USC §1447(d)). The Fifth Circuit noted *Coinbase*'s statements of general principles meant to guide analysis of the "irreparable harm" factor of the *Nken* criteria in holding that litigation-related burdens and expenses typically do not amount to the sort of harm sufficient to carry the burden of the party seeking a stay of an order denying federal removal.

Clark provides no rationale for departing from the long-standing application of the *Nken* framework to determine the propriety of a stay pending appeal of the remand when the potential harm he cites—the possibility of wasted time, depleted resources, threat of State proceedings being called for trial—are already factors appropriately considered by the Court. *See Hand*, 888 F.3d at 1207 (second factor to consider is whether the applicant will be irreparably injured absent a stay). In short, the *Coinbase* decision does not purport to and does not have any impact outside a civil 9 U.S.C. § 16(a) appeal, and sheds no light whatsoever on whether a stay is warranted in this criminal appeal of the denial of federal official removal under Section 1442.

## IV. THE CIVIL REMOVAL STATUTE, 28 U.S.C. § 1446(d), HAS NO APPLICABILITY TO THE MATTERS BEFORE THE COURT

Clark makes a similarly quixotic attempt to avert the entirely predictable result of the application of Section 1455(b) (i.e., denial of his Motion to remove the State **criminal** proceedings) by insisting that the automatic stay associated with removal of **civil** litigation, pursuant to Section 1446(d), applies here. The effort misunderstands fundamental tenets of criminal law and procedure.

A Fulton County grand jury returned a criminal indictment against Defendant Clark and his co-defendants, charging them with felony violations of Georgia state criminal statutes. The pending matter in Fulton County Superior Court, Indictment 23SC188947, is wholly criminal in nature. *See generally United States v. Coley*, No. CR415-187, 2016 U.S. Dist. LEXIS 21941, at *9 (S.D. Ga. 2016) (in distinguishing civil proceedings from criminal, noting "there are very different pleading and proof standards in civil and criminal cases, and there are obvious and sound reasons for these differences"); *see also* Ex. D (Doc. 9, Order Denying Emergency Stay) at 3-4 (noting criminal prosecutions are removed to federal courts only under 28 U.S.C. § 1455).

The theory Defendant Clark advances has no support in law or fact. Clark urges the Court to apply the automatic stay as if the State case were a civil

proceeding (28 U.S.C. § 1446(d)[3]), instead of the criminal indictment he and his

co-defendants face, apparently based on the following series of mistaken assertions

of fact:

> (1)    The Fulton County Special Purpose Grand Jury that investigated
> matters related to interference in the 2020 presidential election in Georgia
> was civil in nature[4];

---

[3]    The text of Section 1446(d) expressly limits its purview to removal of civil
cases ("Promptly after the filing of such notice of removal of a **civil action** the
defendant or defendants shall give written notice thereof to all adverse parties and
shall file a copy of the notice with the clerk of such State court, which shall effect
removal and the **State court shall proceed no further unless and until the case
is remanded**." (emphasis added)).

[4]    The Fulton County Superior Court judge supervising the Special Purpose
Grand Jury ("SPGJ") consistently characterized the SPGJ's function as a criminal
investigative body. In the face of challenges from those with recognized legal
standing to contest the Grand Jury's subpoena power or other compulsory process,
the court found the SPGJ as criminal in nature, despite its inability to issue
indictments. *See* Ex. F (Doc 8, Resp. in Opposition to Mot. to Stay, Ex. A - Aug.
22, 2022 Order on Motion to Quash at 4-5 (Case No. 2022-EX-000024, Fulton
Cty. Super. Ct.)):

> [The SPGJ's purpose was] unquestionably and exclusively to conduct
> a criminal investigation: its convening was sought by the elected
> official who investigates, lodges, and prosecutes criminal charges in
> this Circuit; its convening Order specifies its purpose as the
> investigation of possible criminal activities; and its final output is a
> report recommending whether criminal charges should be brought...
> Put simply, **there is nothing about this special purpose grand jury
> that involves or implicates civil practice**.

(emphasis added).

15

(2)    Use of civil process[5] in gathering information later presented to a State criminal grand jury in contemplation of the indictment against Defendant Clark and his co-defendants somehow transforms the State criminal case into a "hybrid civil-criminal" proceeding (a process ill-defined by Defendant's motion and, candidly, unclear to the State) that affords criminal defendants substantive and/or procedural rights akin to that of a civil litigant for removal purposes;

(3)    Such a hybrid prosecution entitles criminal Clark to the automatic stay afforded civil litigants upon the filing of a notice of removal (28 U.S.C. § 1446(d)).

When presented with similar arguments, the district court roundly rejected them. Ex. A (Doc. 55, Order Declining to Assume Jurisdiction) at 29 ("Clark has not asserted any viable basis for the SPGJ to be removed."). Noting that Clark had failed to meet his burden to show that federal officer removal was appropriate for the acts charged in the indictment, the district court concluded that removal was not justified under either Section 1442 or 1441. *Id.* at 28-30. Moreover, as the lower court recognized, the SPGJ proceedings have concluded, and Clark cites no authority that would support removing a *concluded* special purpose grand jury— whether civil, criminal or hybrid—proceeding to federal court. Clark was not subject to any subpoena or compulsory process from the SPGJ, and he does not claim any connection to it or make any effort to outline why or how he would have standing to remove a concluded state criminal investigative body to federal court.

---

[5]    Which again, is factually incorrect. This Special Purpose Grand Jury was criminal in nature, not civil, with the powers of a criminal investigative body.

Despite his determination to characterize the pending indictment against him as anything but criminal, Clark has not directed this Court's attention to any statute, case law, or other authority for his "civil-criminal hybrid" theory of the criminal charges pending against him. While he purports to "remove" the now-terminated SPGJ matter from State to federal court, he has offered the Court no theory of standing to support such an action. *See United States v. Johnson*, 983 F.2d 216, 218 (11th Cir. 1993) ("Every litigant must possess standing to sue in the United States courts."); *United States v. Cone*, 627 F.3d 1356, 1359 (11th Cir. 2010) (appeal dismissed; non-party had no standing to challenge alleged jurisdictional defects); *Mulhall v. Unite Here Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal; it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." (internal quotation marks and citation omitted)). In short, civil cases are stayed automatically in state court once a party files a notice of removal—criminal cases are not. The pending indictment against Defendant is exclusively criminal, leaving the provisions of Section 1446(d) plainly inapplicable. Insofar as the Motion purports to invoke Section 1446(d), it must be denied.

## CONCLUSION

Defendant Clark demands a mandatory stay of the State criminal prosecution against him, but provides this Court no legal basis to justify those ends. Nor can he meet his burden of establishing the requisite showing pursuant to the *Nken* criteria to justify this Court's discretionary grant of a stay pending appeal. The State respectfully asks that the Court deny the motion.

Respectfully submitted this 6th day of November 2023,

**FANI T. WILLIS**
**DISTRICT ATTORNEY**
ATLANTA JUDICIAL CIRCUIT

By:

*/s/ Anna Green Cross*
Anna Green Cross
Special Prosecutor
Georgia Bar No. 306674
Office of the Fulton County District Attorney
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
404.612.4981
anna@crosskincaid.com

F. McDonald Wakeford
Chief Senior Assistant District Attorney
Office of the Fulton County District Attorney

John W. "Will" Wooten
Assistant District Attorney
Office of the Fulton County District Attorney

Alex Bernick
Assistant District Attorney

18

Office of the Fulton County District Attorney

John E. Floyd
Special Prosecutor
Office of the Fulton County District Attorney

*Counsel for Plaintiff-Appellee*
*the State of Georgia*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This Response complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and the Eleventh Circuit Rule 26.1-3(c), this document contains 4559 words.

2.  This Response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it is double-spaced typeface composed in 14-point Times New Roman font.

Respectfully submitted this 6th day of November, 2023,

*/s/ Anna Green Cross*
Anna Green Cross
Special Prosecutor
Georgia Bar No. 306674

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

As authorized by the Rules of the Eleventh Circuit, I hereby certify that the Certificate of Interested Persons contained in the Defendant's Motion appears complete.

Respectfully submitted this 6th day of November, 2023,

*/s/ Anna Green Cross*
Anna Green Cross
Special Prosecutor
Georgia Bar No. 306674

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify the foregoing was served upon the following by the

CM/ECF electronic filing system because all are registered CM/ECF users:

Harry W. MacDougald
Caldwell, Carlson, Elliott & DeLoach, LLP
Ga. Bar No. 463076
Two Ravinia Drive
Suite 1600
Atlanta, GA 30346
404.843.1956
hmacdougald@ccedlaw.com

Catherine S. Bernard
Bernard & Johnson, LLC
5 Dunwoody Park, Suite 100
Atlanta, Georgia 30338
404.432.8410
catherine@justice.law
Attorneys for Defendant Jeffrey B. Clark

Respectfully submitted this 6th day of November 2023,

*/s/ Anna Green Cross*
Anna Green Cross
Special Prosecutor
Georgia Bar No. 306674
Office of the Fulton County District Attorney
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
404.612.4981
anna@crosskincaid.com

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **THE STATE OF GEORGIA,** | | **CIVIL ACTION FILE** |
| **v.** | | **No. 1:23-CV-03721-SCJ** |
| **JEFFREY BOSSERT CLARK,** | | **RE: NOTICE OF REMOVAL OF FULTON COUNTY SUPERIOR COURT INDICTMENT NO. 23SC188947** |
| **Defendant.** | | |

<u>**ORDER**</u>

    This matter appears before the Court following Defendant Jeffery Bossert Clark's filing of a Notice of Removal.[1] Doc. No. [1]. This Order addresses the limited question of whether Clark has carried his burden to demonstrate the removal of the State of Georgia's criminal prosecution against him is proper under the federal officer removal statute, 28 U.S.C. § 1442(a). After considering the arguments made and evidence submitted, the Court determines that Clark has not met his burden. Accordingly, the Court **DECLINES** to assume

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

jurisdiction over the State's criminal prosecution of Clark under 28 U.S.C. § 1455,

**DENIES** Clark's Notice of Removal of the Special Grand Jury Proceedings under

28 U.S.C. § 1446, and **REMANDS** the case to Fulton County Superior Court.[2]

## I.      BACKGROUND

At the times relevant to this matter, Clark undisputedly served as an

Assistant Attorney General (AAG) for the United States Department of Justice

(DOJ). Doc. No. [48], 24; Hearing Tr. [3] 60:21–61:3. Following presidential

nomination and Senate confirmation, on November 1, 2018, Clark was sworn into

office and assigned to be the AAG for the Environmental and Natural Resources

_____

[2] As the Court has previously indicated, despite using the term "remand" the Court has not actually assumed jurisdiction over this case under Section 1455, and the State proceedings are ongoing. See Georgia v. Meadows, --- F.Supp.3d ---, No. 1:23-CV-03621-SCJ, 2023 WL 5829131, at *1 n.2 (N.D. Ga. Sept. 8, 2023). Nevertheless, Section 1455 itself conceives of some form of remand, 28 U.S.C. § 1455(b)(4), and other federal courts who have failed to find that federal jurisdiction exists over a criminal prosecution have "remanded" the prosecution to the state court. See, e.g., New York v. Trump, ---F. Supp. 3d----, No. 23 CIV. 3773 (AKH), 2023 WL 4614689, at *1 (S.D.N.Y. July 19, 2023).

[3] The Court cites to the Official Certified Hearing Transcript for the September 18, 2023 evidentiary hearing provided by the court reporter. This transcript has not yet been filed on the docket.

Division. Doc. No. [48], 4.[4] In September 2020, he also began to simultaneously serve as the AAG for the Civil Division. Id.

On August 14, 2023, a grand jury indicted Clark along with 18 co-Defendants for conduct relating to the 2020 presidential election. Doc. No. [1-1]. The Indictment charged Clark specifically with violating Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act, O.C.G.A. § 16-14-4(c), and with Criminal Attempt to Commit False Statements and Writings, O.C.G.A. §§ 16-4-1, 16-10-20. Id. at 14, 84. The Indictment's charges primarily relate to a letter Clark drafted and submitted to his superiors, Acting Attorney General Jeffrey A. Rosen and Acting Deputy Attorney General Richard Donoghue. Doc. No. [28-1]. The draft letter was addressed, but never sent, to Georgia state officials—specifically the Governor, the Georgia Speaker of the

---

[4]  At the evidentiary hearing, the Court admitted, over the State's objection, a declaration submitted by Clark from former United States Attorney General, Edwin Meese, III. Doc. No. [48]. The Court indicated that it would properly weigh Meese's declaration evidence following the State's objections that some of Meese's opinions constitute improper expert or legal opinions, and that his testimony about his personal experience as Attorney General is irrelevant to Clerk's case. To be sure, the Court does not consider any testimony rendered by Meese that would require expert designation. Moreover, to the extent that the Court considers Meese's declaration's assertions about his own personal experience at DOJ, the Court finds that this experience has limited relevance given that Clark's tenure as AAG occurred decades after Meese had left the DOJ.

House, and the President Pro Tempore of the Georgia Senate—encouraging Georgia to take actions with regard to its Certified Electors because of DOJ investigations into the 2020 election that showed purported irregularities. Doc. Nos. [28-1]; [1-1], 46–47 (charging that Clark "knowingly and willfully ma[de] a false writing and document . . . that the United States Department of Justice had 'identified significant concerns that may have impacted the outcome of the election in multiple States, including the State of Georgia[ ]'" and "solicited Acting United States Attorney General Jeffrey Rosen and Acting United States Deputy Attorney General Richard Donoghue to sign and send a document that falsely stated" that DOJ had these concerns).

Clark filed a Notice of Removal of the Criminal Prosecution on August 21, 2023.[5] Doc. No. [1]. He asserts that removal of this proceeding is procedurally proper under 28 U.S.C. § 1455 (for removal of criminal prosecutions) and substantively permitted under 28 U.S.C. § 1442(a) (for federal officer jurisdiction). He argues that he was acting as a federal officer at the time that the

---

[5] Clark secondarily attempts to remove the Special Grand Jury Proceedings, which preceded the Indictment, as a civil matter under Sections 1441, 1442, and 1446. Doc. No. [1], 28–30. The State rejects Clark's characterization of the Special Grand Jury Proceedings as a civil matter. Doc. No. [28], 21–23. The Court resolves this particular issue *infra* Section (III)(B).

above-referenced letter was drafted and submitted to his DOJ superiors and that he has a colorable federal defense for the charges against him. On August 24, 2023, the Court declined to summarily remand his case, ordered the State to respond to Clark's attempted removal, and scheduled an evidentiary hearing to be held on September 18, 2023.[6] Doc. No. [15]. The State responded in opposition to Clark's removal (Doc. No. [28]) and Clark replied (Doc. No. [41]). The Court held the evidentiary hearing on September 18, 2023. Doc. No. [50]. Clark waived his right to appear at the hearing (Doc. No. [49]), and one State witness, Joseph (Jody) Hunt, testified (Hearing Tr. 56:23–84:21). As will be discussed in greater detail *infra*, only the State admitted exhibits at this hearing. Doc. No. [51].

At the conclusion of the hearing, the Court took the matter under advisement. Having considered the arguments put forth by the Parties and the evidence submitted, the Court now enters this Order, which concludes that there is no federal jurisdiction over Clark's criminal prosecution.

---

[6] Before the hearing, the Court granted leave for an Amici Curiae to file a brief in support of remand. Doc. Nos. [46]; [47].

## II.    LEGAL STANDARD

"[A] federal district court should be slow to act 'where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.'" Cameron v. Johnson, 390 U.S. 611, 618 (1968) (quoting Douglas v. City of Jeannette, 319 U.S. 157, 162 (1943)). An exception to these general concepts of federalism is the federal officer removal statute, 28 U.S.C. § 1442(a)(1). This statute allows for federal jurisdiction over "a criminal prosecution . . . against . . . any officer (or any person acting under that officer) of the United States . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

Federal officer removal "is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." Florida v. Cohen, 887 F.2d 1451, 1453 (11th Cir. 1989) (citing Willingham v. Morgan, 395 U.S. 402, 405 (1969)).  Given a preference for state courts conducting their state prosecutions, it has been suggested that a "more detailed showing" of the relation between the acts charged and the federal role at issue is required. Willingham, 395 U.S. at 409 n.4. Furthermore, federal courts must maintain a balance between what Section 1442

6

allows and respect for a State's right to deal with matters properly within its domain.

Clark removed this criminal prosecution procedurally under 28 U.S.C. § 1455, which specifies the requirements for removing a state criminal prosecution to a federal district court. "28 U.S.C. § 1455 'merely provides procedures that must be followed in order to remove a criminal case from state court when a defendant has the right to do so under another provision.'" Maine v. Counts, No. 22-1841, 2023 WL 3167442, at *1 (1st Cir. Feb. 16, 2023) (quoting Kruebbe v. Beevers, 692 F. App'x 173, 176 (5th Cir. 2017)). Upon filing a notice of removal, the Court must promptly determine whether the notice and its attachments clearly fail to establish the Court's subject matter jurisdiction, and if they do, the case is summarily remanded to state court. 28 U.S.C. § 1455(b)(4). If summary remand is not granted, then the district court must "promptly" hold an evidentiary hearing to determine the "disposition of the prosecution as justice shall require." Id. § 1455(b)(5). Based on the facts adduced at the hearing and the arguments put forth by the Parties, the Court must determine whether the Defendant has met his burden in establishing that the Court has subject matter jurisdiction over his criminal prosecution. Trump, 2023 WL 4614689, at * 5 (citing

7

United Food & Comm. Workers Union v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)).

Under 28 U.S.C. § 1442, the question of the scope of a federal officer's authority contains issues of law and fact. See Nadler v. Mann, 951 F.2d 301, 305 (11th Cir. 1992) ("[D]etermination[s] of whether an employee's actions are within the scope of his employment involve[ ] a question of law as well as fact.").

Ultimately, for removal under Section 1455 to be proper, the removing party must show that there is a basis for the federal court to exercise jurisdiction over the criminal prosecution. See Leonard v. Enter. Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."). If the Court lacks federal jurisdiction, then the case cannot proceed in this forum.

The Supreme Court has cautioned that "an airtight case on the merits in order to show the required causal connection" is not required and that courts are to "credit" the movant's "theory of the case" for the elements of the jurisdictional inquiry.[7] Jefferson Cnty. v. Acker, 527 U.S. 423, 432 (1999).

_____

[7] Acker's "theory of the case" language refers to the colorable defense prong of the analysis. 527 U.S. at 432. Nevertheless, the Court will evaluate the theory of the case as

8

### III.   ANALYSIS

With the foregoing standards in mind, the Court turns to its determination of whether Clark has carried his burden to show that removal is permitted under 28 U.S.C. § 1442. Clark has raised two different proceedings for the Court to consider in its removal analysis: (A) the Indictment and its criminal prosecution against him (procedurally under 28 U.S.C. § 1455), and (B) the Special Grand Jury Proceedings (SGJP) prior to the issuance of the Indictment (procedurally under 28 U.S.C. § 1446). Clark has not shown a basis for the removal of either.

### A.   The Indictment and Criminal Prosecution

The Court first addresses Clark's removal of his criminal prosecution. For the Court to determine the jurisdictional question presented, it must address the familiar three-part test for federal officer removal: (1) that Clark was a federal officer, (2) that his actions alleged were taken under the color of his federal office, and (3) that he has a colorable federal defense. <u>Caver v. Cent. Ala. Elec. Coop.</u>, 845 F.3d 1135, 1142 (11th Cir. 2017). The Court considers each of these requirements in turn and ultimately concludes that Clark has failed to meet his

---

it relates to the color of office because at least one district court recently has applied it in this manner. See <u>Georgia v. Heinze</u>, 637 F. Supp. 3d 1316, 1322 (N.D. Ga. 2022).

9

burden on the second requirement that his actions occurred under the color of his federal office.

### 1.    *Federal Officer*

Clark was a federal officer at the time of the acts alleged. There is not any real contention in this case that Clark was not a federal officer when he served as AAG over two DOJ divisions.[8]

### 2.    *Causal Connection Between Federal Office and Acts Alleged*

The Court now turns to the question of whether Clark was acting in the scope of his federal office at the time of the acts alleged. The Court concludes that Clark has not submitted evidence to meet his burden to show that his actions

---

[8] Clark's co-Defendant, Mark Meadows, appealed this Court's remand order to the Eleventh Circuit and moved for a stay of the remand order. See Georgia v. Meadows, No. 23-12958 (11th Cir. Sept. 8, 2023); id. at ECF No. 4. The Eleventh Circuit panel that was reviewing the motion to stay requested supplemental briefing on whether Section 1442(a)(1)'s jurisdiction covered *former*, as well as current, federal officers (Id. at ECF No. 7). The State's supplemental briefing argued that Section 1442(a)(1)'s text did not cover former federal officers. Id. at ECF No. 11. Following the briefing but before a hearing could be held, Meadows withdrew his motion to stay. Id. at ECF Nos. 28, 29. Meadows's appeal otherwise remains pending, but it is unknown whether the Eleventh Circuit panel hearing the merits of his appeal will address the question raised by the panel reviewing his motion to stay. Ultimately, the Court need not consider this issue further because Clark did not meet his burden in establishing that he was acting under the color of a federal office and the case must be remanded.

were causally related to his federal office. To reach this conclusion, the Court must first address what evidence it will consider.

### a)   <u>Evidence to be considered</u>

The first issue the Court must address is the evidence that is to be considered on behalf of Clark's removal petition. As indicated, Clark did not submit any witness testimony, and only referred to two declarations that were filed on the docket (via CM/ECF) prior to the evidentiary hearing. <u>See generally</u> Hearing Tr. In fact, Clark's presentation to the Court wholly consisted of counsel's argument and factual representations in the light of the evidence filed on the docket and in response to the briefing submitted. The State, for its part, tendered two exhibits at the hearing and offered one witness's testimony. The State also relied on significant portions of the docket evidence in support of its arguments for remand.

The Court is not aware of any prior cases that discuss what evidence is to be considered at the statutorily mandated evidentiary hearing under 28 U.S.C. § 1455(b)(5). To be sure, ordinarily—at least when showing jurisdictional facts for the amount in controversy for diversity cases (28 U.S.C. § 1442) removed under 28 U.S.C. § 1446—"substantive jurisdictional requirements of removal do not

limit the types of evidence that may be used to satisfy the preponderance of the evidence standard." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 755 (11th Cir. 2010). That is, a defendant "may introduce [his] own affidavits, declarations, or other documentation—provided of course that removal is procedurally proper." Id. There is some support for a similar proposition in the context of federal officer removal. See De Busk v. Harvin, 212 F.2d 143, 146 (5th Cir. 1954) [9] ("The uncontroverted *affidavits* of appellees, *attached as exhibits* to the amended petition for removal, clearly reveal that appellant's dismissal by appellees was an 'act under color of [ ] office', within the meaning of the removal statute." (emphasis added)).

An evidentiary hearing, however, is not required in a typical *civil* removal action. Thus, the question of whether evidence submitted on the docket is sufficient (or if it must be tendered at the hearing) has yet to be addressed, as far as the Court is aware from its independent research. The Court determines that

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

it will consider the evidence filed on the docket even if it was not tendered or referenced at the evidentiary hearing, subject to one caveat as described below.[10]

The Court's reasoning for considering this evidence rests on the aforementioned removal cases, which often involve documentary evidence submitted on the docket for the jurisdictional determination. The fact that the removal of a criminal prosecution requires an evidentiary hearing to determine if the case should remain in federal court should not, in and of itself, inhibit the consideration of attachments and other evidence on the docket. Likewise, while the Court may be cautioned to scrutinize the removal of criminal cases more closely than civil cases (given heightened federalism concerns), it does not necessarily mean that the Court should make the submission of evidence more difficult than in a typical removal case. Willingham, 395 U.S. at 409 n.4; see also, Pretka, 608 F.3d at 755. Indeed, to remove a case (even a criminal prosecution) to federal court does not require "an airtight case on the merits," and this certainly should not be the case for assessing the jurisdictional evidence from the hearing itself. Acker, 527 U.S. at 432.

---

[10] The Court limits this ruling to the facts and circumstances of Clark's case.

13

Moreover, as a matter of fact in this case, the Court notes that some, but not all, of the docket evidence was objected to at the hearing. Specifically, the State objected to the submission of a declaration and its attachments made by Clark himself and the declaration by former Attorney General Meese. Hearing Tr. 49:13–51:8. The Court excluded the Clark affidavit and its attachments,[11] but allowed the Meese declaration subject to further weighing and consideration in this Order. Id. 52:21–53:4; see also supra note 4. Because the State selectively objected to some, but not all of the evidence filed on the docket, for purposes of this Order's jurisdictional inquiry, the Court deems that the State waived any objections to evidence for which an objection was not specifically raised. Clark, for his part, did not make any objection to the State's evidence filed on the docket. Rather, he referred to the Rosen and Donoghue transcripts and asked the Court

_____

[11] Unlike the declarations and affidavits submitted by third parties in this case, the Court excluded Clark's declaration. The Court finds that even if it were to consider this declaration its weight would be slight given its clear self-interest and that it was not subject to cross-examination. See Fed. R. Evid. 403; cf. also Fed. R. Civ. P. 43(c); Proe v. Facts Servs., Inc., 491 F. App'x 135, 138 (11th Cir. 2012) ("A district court has 'broad discretion to admit evidence if it has any tendency to prove or disprove a fact in issue.'" (quoting Fidelity Interior Constr., Inc. v. Se. Carpenters Reg'l Council of United Bro. of Carpenters and Joiners of Am., 675 F.3d 1250, 1258–59 (11th Cir. 2012))).

to consider the "totality" of the depositions filed. [12] Hearing Tr. 23:23–24. Accordingly, because a number of filings have been made on the docket without any objection—in written motion or orally at the evidentiary hearing—the Court concludes that any objection not raised to its consideration of this evidence has been waived.

This conclusion is not to imply that the evidentiary hearing is without any purpose. Section 1455 clearly contemplates an evidentiary hearing and the evidence submitted at this hearing is assumedly for the purpose of assisting the Court to more fully consider its jurisdiction over a matter. Indeed, the ability to hear live testimony and for the Parties to submit further documentary evidence is of enormous value and should not be tossed aside under the ease of docket filings. To be sure, there is evidence in this case that was excluded or assigned little weight because the witness was not available for cross-examination.

Accordingly, the Court will generally consider the docket filings in this case as part of its jurisdictional inquiry into whether Clark was operating as a

---

[12] Clark's use of and reliance on some of the State's evidence as part of his presentation at the hearing, as far as the Court is concerned, not only suggests an implicit waiver of the objection, but in fact an affirmative waiver.

federal officer.[13] See, e.g., Doc. Nos. [29-1]; [30-1]; [31-1]; [43]. The only filing that will not be considered is Clark's declaration and its attachments (i.e., Doc. Nos. [42] & [42-1]–[42-9]). This filing, in its entirety, is excluded per the Court's oral ruling on the State's objection at the hearing. Hearing Tr. 53:3–4, 54:2–25.

### b)    Clark's burden in the light of this evidence

Having established what evidence is considered in issuing this ruling, the Court now assesses whether Clark has met his burden to show a causal connection between his federal office and the acts alleged in the criminal prosecution. The Court concludes that he has not.

The Court fully adopts its reasoning in Georgia v. Meadows relating to what constitutes an act for purposes of the Georgia RICO statute.[14] Meadows, 2023 WL 5829131, at *4–8. While the Court necessarily engaged in a lengthy

_____

[13] The Court has reviewed the totality of the evidence in the Record. This does not mean that all filed submissions are relevant to this Order, however, and if something from the Record is omitted in this Order, the Court deems it irrelevant or to have limited value to the jurisdictional question presented.

[14] The Court does make clear that it relies on Baucom v. Martin, 677 F.2d 1346, 1347 (11th Cir. 1982) as persuasive authority. The Court found this case to be relevant given that it involved an underlying RICO investigation. Id. ("The FBI, in cooperation with Georgia law enforcement authorities, engaged in an investigation of possible violations . . . the [federal] RICO statute."). The Court acknowledges, however, that Baucom was *not* a Georgia RICO case, and did not rely on it as such.

16

discussion in the <u>Meadows</u> case about the role of the overt acts specified, the Court need not do so here. The Indictment clearly specifies Clark's alleged associative acts, which also correspond to the additional substantive charge against him for attempted false writings.[15] Doc. No. [1-1], 46–47, 51, 84. The State charges that Clark engaged in criminal activity under Georgia law when he drafted the December 28 letter and solicited Rosen's and Donoghue's signatures to endorse and send the letter to Georgia officials for purposes of interfering with the 2020 presidential election. <u>Id.</u> Hence the specific question for the Court to decide is whether Clark has met his burden to show that his aforementioned actions were causally connected to (i.e., under color of) his federal office.

In December 2020, the time of the relevant actions for assessing federal office removal, Clark was a federal officer as AAG for both the Environmental and Natural Resources and the Civil Divisions of DOJ. <u>See</u> *supra* Section (III)(A)(1). Clark does not contend that the December 28 letter had anything to do with his AAG role with the Environmental and Natural Resources

_____

[15]  One exception may be Overt Act 110, which alleges that Clark received a phone call from a co-Defendant on January 2, 2021. Doc. No. [1-1], 51. There has been no evidence or argument pertaining to this act relevant specifically to the questions addressed in this Order for the removal proceedings and thus the Court will not linger further on it.

Division. Instead, the Court construes Clark's argument to be two-fold: (1) he first argues that his role as AAG for the Civil Division permitted him to write this letter within the scope of his office; and (2) alternatively, as AAG, he was not limited to working under a particular DOJ division, and thus he could be assigned or directed to do work for any of the DOJ subdivisions. See generally Hearing Tr. The Court now considers, and ultimately rejects, both arguments.

### (1)     The scope of Clark's role in the Civil Division

First, the Court concludes that Clark has submitted no evidence that the December 28 letter was written within the scope of his role as AAG for the Civil Division. To the contrary, the evidence before the Court indicates the opposite: Clark's role in the Civil Division did not include any role in the investigation or oversight of State elections. The only witness subject to cross-examination at the hearing, Jody Hunt—the former AAG of Civil Division from 2018 until 2020 and whom Clark replaced (Hearing Tr. 60:4–8)—testified from his personal experience that most of the Civil Division's work was "defensive in nature" that is "defending suits that are filed against the United States or officers of the executive branch." Id. at 61:19–20. The remaining work, "affirmative enforcement matters" includes False Claims Act cases, enforcement actions in the Consumer

18

Protection Branch, and some matters handled by the Federal Programs Branch. Id. at 61:22–62:8. Hunt expressly disclaimed the Civil Division's role in matters relating to "election interference or allegations of voter fraud" and testified that the only election matters handled by the Civil Division would be in a defensive posture once a member of the executive branch had been named in a lawsuit. Id. at 62:14–23. Indeed, "[a]nything with respect to election irregularities or voter discrimination issues would either fall to the Civil Rights Division or to the Criminal Division." Id. at 63:1:–3. This delegation of responsibilities between the Civil Division and the other DOJ Divisions assigned to enforcement actions involving election laws and irregularities, has been, in Hunt's experience, "consistent over time" and was contained in the DOJ's Justice Manual. Id. at 65:17–25.

And, in fact, the Justice Manual and relevant regulations for the DOJ's Civil Division reinforce Hunt's testimony. The Justice Manual indicates the Civil Division's AAG has authority, as is most relevant for this case, [16] under 28 C.F.R.

---

[16]   While some of the regulations consider the Civil Division involvement with international matters, see, e.g., 28 C.F.R. § 0.49, the Court does not find the evidence submitted by Clark pertaining to foreign interference with the elections (or related cybersecurity threats) to be relevant to the Court's jurisdictional inquiry of whether he

§ 0.45 and 28 C.F.R. § 0.46. Doc. No. [28-8], 4. The defensive work of the Civil

Division, on behalf of federal officials sued in their official capacity, is discussed

in 28 C.F.R. § 0.46, and does not cover the type of action contemplated in Clark's

December 28 letter. The regulation does allow the Civil Division to affirmatively

bring cases of fraud, but for "civil claims arising from fraud on the Government"

such as cases under the False Claims Act, among others. 28 C.F.R. § 0.45(d). None

of the statutory provisions indicated, however, have to do with *election* fraud or

interference.

Rosen's and Donoghue's deposition testimony submitted by the

State—and referenced extensively at the hearing by Clark[17]—further supports

that the Civil Division did not have a role in bringing affirmative election-related

suits. Rosen testified that Clark's letter was "strange" in part because Clark

"didn't have responsibility for election issues." Doc. No. [30-1] (Rosen Dep. Tr.)

---

was a federal officer acting within the scope of his office (see, e.g., Doc.
Nos. [43-4]–[43-12]). Neither have the Parties argued as much. Thus, while this evidence
may bear on the merits of the criminality or justification for Clark's actions alleged in
the Indictment, it has no relevance to the jurisdictional questions to be answered by this
Court.

[17]  Clark asked the Court to "consider the totality of [Rosen and Donoghue's] testimony."
Hearing Tr. 23:23–24. The Court has done so.

Tr. 99:11, 17–19. Rosen also indicated that for the processes of "vetting voter fraud and election-crime related allegations" the FBI and the Criminal Division would provide the most insight. Id. at 125:23–126:4, 127:1–4. Donoghue testified that the Civil Division was responsible for "a vast portfolio" but "[n]othing having to do with elections . . . ." Doc. No. [29-1] (Donoghue Dep. Tr.) Tr. 97:6–11. Clark's assistant in drafting the letter, Kenneth Klukowski, reaffirmed that he was "shocked" at the assignment because "election-related matters are not part of the Civil [Division's] portfolio." Doc. No. [31-1] (Klukowski Dep. Tr.) Tr. 67:6–10; see also id. at 77:18–21 ("[T]his is not part of the Civil Division. These investigations must be someone else, because I have never heard anything about any of this.").

Clark's only evidence in response is that he is named as counsel representing former Vice President Mike Pence and other officials in a civil lawsuits alleging voting irregularities around the same time as the December 28 letter (i.e., in matters related to the 2020 presidential election). Hearing Tr. 28:21–29:8, 35:20–36:4; see also Doc. No. [48], 45–135 (filings made in these election cases). The State does not dispute that Clark was involved in these cases, but rather that his involvement had nothing to do with the investigation or prosecution of election fraud. Rather, Hunt testified that Clark was involved in

these cases, not because of any election oversight responsibilities, but because members of the executive branch had been sued in their official capacities, and the Civil Division was tasked with defending them. Hearing Tr. 72:4–14. The subject matter of the litigation did not matter, the cases "belong[ed] to the Civil Division" by nature of their defensive posture "regardless of the subject matter of the lawsuit." Id. at 72:18–19. Hunt's testimony on Clark's involvement in these cases is unrebutted and is internally consistent with his general description of the Civil Division's responsibilities, as well as the Justice Department's Manual and the relevant regulations. Accordingly, the Court does not find Clark's evidence of being named as DOJ counsel in these defensive cases involving election matters to be evidence that he, as AAG of the Civil Division, had any authority over election fraud and interference matters or that his involvement related to his role as AAG of the Civil Division.

Accordingly, the Court concludes that Clark has not met his burden to show that he was acting within the scope of his federal office as AAG of the Civil Division in drafting the December 28 letter. The letter pertained to election fraud and election interference concerns that were outside the gamut of his federal

office. Consequently, Clark has not shown the required nexus for federal officer removal.

### (2)     *Reassignment or delegation of Clark's duties*

Clark's next argument that he was acting in the scope of his federal office as AAG for purposes of federal officer removal is that his assignments as AAG to the Environmental and Natural Resources Division and the Civil Division were not strict parameters and that he could be reassigned to other DOJ Divisions by the Attorney General or the President. In support, Clark submits the declaration of Edwin Meese, which attaches a Memorandum Opinion from the former Solicitor General and AAG Ted Olson. Doc. No. [48], 21–23.  In this Memorandum, Olson concluded that the AAGs can be assigned by the Attorney General to "any duties he chooses . . . including the supervision of a division other than that for which they were nominated and confirmed." Id. at 23. Meese's declaration expounds that the President is an authority who can likewise reassign or direct the actions of an AAG beyond the scope of the division the AAG was tasked with in nomination and confirmation. Id. at 5–6. Clark contends that the President could have delegated him (as AAG) the authority to write this

December 28 letter and suggests that the President had been in contact with Clark prior to his writing the letter. See, e.g., Hearing Tr. 24:21–27:16.

Preliminarily, the Court finds that this argument most clearly aligns with Clark's asserted theory of the case that "it is simply impossible for [Clark] to have done the things he is charged with doing except that he was acting under color of law." Id. at 19:3–6. Clark further argued that he wrote the letter while at his DOJ office, using DOJ equipment and software, and sent it using his DOJ email. Hearing Tr. 16:15–17:1. As required, the Court credits Clark's theory of the case (i.e., that he engaged in these activities while at the DOJ and the President could have reassigned or delegated duties to Clark within the scope of DOJ's broader delegation). It is still Clark's burden, however, to show that there is a jurisdictional basis for his removal. See Leonard, 279 F.3d at 972 ("A removing defendant bears the burden of proving proper federal jurisdiction."); cf. Maryland v. Soper, 270 U.S. 9, 34 (1926) (discussing a defendant's testimonial support of their notice of removal of a criminal indictment and collecting cases).

Other than his counsel's own vague and uncertain assertions (Hearing Tr. 25:17–27:20) the Court has no evidence that the President directed Clark to work on election-related matters generally or to write the December 28 letter to the

24

Georgia State Officials on their election procedures.[18] Rosen testified that he did not know if the President had discussed the December 28 letter with Clark.[19] Rosen Dep. Tr. 105:6–9. Donoghue testified that he did not recall Clark indicating that the President was aware of the letter. Donoghue Dep. Tr. 104:21–23. Klukowski, who drafted the letter at Clark's request, did not testify that the President directed Clark to write the letter, but rather indicated that the letter was for a meeting with Rosen and Donoghue. Klukowski Dep. Tr. 65:15–66:5, 73:4–15. No evidence in the Record definitively shows that the President directed Clark to write the letter. Instead, the evidence before this Court does not show the President's involvement in this letter specifically until the January 3 meeting where the President decided not to send it to the Georgia officials. Rosen Dep. Tr. 111:22–25.

_____

[18] Donoghue also testified that he was unaware of anyone else in the Civil Division who was working with Clark on the letter and that it was his impression that Clark "drafted this letter himself." Donoghue Dep. Tr. 101:8–14.

[19] Because it is fatal to Clark's argument that he submitted no evidence that the President reassigned or delegated him the task of writing the letter, the Court need not engage with the suggestion that Clark's contacts with the President contravened DOJ policy. See, e.g., Donoghue Dep. Tr. 104:3–7; Doc. No. [28-5] (Memorandum from Former Attorney General Eric Holder regarding "Communications with the White House and Congress"); see also id. at 3 (requiring initial communications be made between the White House and the AG or Deputy AG).

Moreover, Rosen and Donoghue's testimony makes clear that the specific contents of the December 28 letter were not within the scope of the Department of Justice's authority more broadly. In fact, it was for this reason that Rosen and Donoghue were unwilling to endorse and sign the letter. Rosen Dep. Tr. 154:23–155:1; Donoghue Dep. Tr. 103:22–23; Doc. No. [28-4], 2 ("[T]here is no chance that I would sign this letter or anything remotely like this."). Rosen testified that "there were so many problems with [the letter]" including "it's not the Justice Department's responsibility" to direct States on election procedures. Rosen Dep. Tr. 102:17–22. Donoghue's email response to the letter raises concerns about DOJ's role to make "recommendations to a State Legislature about how they should meet their [c]onstitutional obligation to appoint Electors." Doc. No. [28-4], 2. He later reaffirmed that "it was not at all the Department [of Justice's] role to be dictating to states what they should or should not be doing with regard to their presidential elections." Donoghue Dep. Tr. 98:18–21. Klukowsi also asserted that he was unaware of the DOJ ever having recommended a State legislature call itself to session. Klukowski Dep. Tr. 82:7–9.

Thus, the evidence submitted does not support Clark's argument that he was acting in the scope of his authority as AAG because the President had the

ability to delegate him the task of writing the December 28 letter. Not only has

Clark failed to provide any (let alone sufficient) evidence that the President

delegated him this authority,[20] but the evidence shows that any such delegation

of the action alleged (i.e., the contents in the letter drafted) would have been

outside the scope of DOJ more broadly. The bar for federal officer removal is

indeed low, but the removing party still bears a burden to show a jurisdictional

basis for the removal. Clark has failed to offer sufficient evidence that the acts

alleged in the Indictment related to the color of his office.[21] Accordingly, Clark

has failed to carry the second element for proper removal under Section 1442.

---

[20]  In crediting Clark's theory of the case, the Court has not questioned Clark's
contention that the *President* himself has authority to reassign or delegate AAGs in the
Justice Department. While Meese's declaration makes this assertion (Doc. No. [48], 6),
the Olson Memorandum does not reference the President at all (id. at 21–23). The Court
has no reason to doubt that the President has authority to reconfigure AAG's duties, but
the evidence does not support that the President did reconfigure Clark's duties to
include election investigation or oversight, or reassign Clark to the Civil Rights or
Criminal Divisions, which do interact with state elections (Hearing Tr. 63:1–3).
Counsel's arguments that it was possible that these events occurred and citation to the
Meese declaration (which was not subject to cross examination) does not support the
broad conclusion that Clark in fact had this authority, or that this authority was related
to his color of office.

[21]  As an aside, in his argument at the evidentiary hearing, Clark conflated an official
acting under "color of law" (as is found in different statutory provisions, such as
Section 1983) with an official acting under "color of office." See, e.g., Hearing Tr.
89:3–90:21. While there may be some overlap in the way these "colorable" requirements
manifest in cases, the inquiries involved are distinct. Acting under "color of office" for

### 3.   *Colorable Federal Defense*

Finally, the third requirement for Section 1442 removal is the removing defendant allege a colorable federal defense. Clark asserts numerous federal defenses, including immunity under the Supremacy Clause. Doc. Nos. [1], 26; [41], 9–13. Because Clark failed to carry his burden with respect to the second requirement of Section 1442—that he was acting under the color of his office at the time of the acts alleged—the Court declines to address Clark's defenses.

### B.   **Special Grand Jury Proceedings**

Clark also seeks to remove the SGJP against him, as a civil matter procedurally under 28 U.S.C. § 1446(a), because he is a federal officer under Section 1442 and there is a federal question under Section 1441. Clark relies on Section 1442(d)(1), which defines an action to be removed to include "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order . . . is sought or issued." 28 U.S.C. § 1442(d)(1);

---

Section 1442 purposes requires "showing . . . a 'causal connection' between the charged conduct and asserted official authority." Willingham, 395 U.S. at 409 (quoting Soper, 270 U.S. at 33). Acting under "color of law" conversely involves "acting 'under pretense of law.'" Butler v. Sheriff of Palm Beach Cnty., 685 F.3d 1261, 1268 (11th Cir. 2012) (quoting United States v. House, 684 F.3d 1173, 1200 (11th Cir. 2012)). Accordingly, the Court has considered the cases cited by Clark involving questions of acting under "color of law," but affords them the mere persuasive weight they are due.

Doc. No. [1], 22–24. Clark also asserts that removal would be proper under Section 1441 (for federal question jurisdiction) because the SGJP constitutes a civil proceeding that is completely preempted. Id. at 28–30. The State responds that these SGJP are not removable as civil actions under Section 1441 or Section 1442 and that the SGJP have concluded and thereby are not within the bounds of Section 1442's proceedings to be removed. Doc. No. [28], 23.

Even assuming that the complete SGJP *could* be removed as a civil or criminal matter, Clark has not asserted any viable basis for the SGJP to be removed. To the extent Clark seeks removal of the SGJP under Section 1442, the acts involved in the SGJP are the same as those charged in the Indictment (Doc. No. [32-1]) and the Court has already determined that Clark failed to carry his burden to show federal officer removal was appropriate. See *supra* Section (III)(A).

As for Clark's contention that this Court has jurisdiction under Section 1441 based on complete preemption, the Court disagrees. "Complete preemption is rare." Dorsett v. Highlands Lake Ctr., LLC, 557 F. Supp. 3d 1218, 1225 (M.D. Fla. 2021). It requires either Congress to expressly preempt state law or "wholly displace[ ] the state-law cause of action" through federal statute. Id.

29

at 1226 (quoting <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 8 (2003)). Here, Clark did not cite to any federal statute or congressional action that would completely preempt the State's SGJP. Clark's arguments that being AAG provides a stronger basis for finding complete preemption given that Congress has not delegated investigating this federal office to the States (Doc. No. [1], 29), is really an argument for defensive preemption, which is not a basis for removal. <u>Id.</u> at 1225 (citing <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 393 (1987)).

Furthermore, the SGJP have concluded and the findings have been published. Doc. No. [32-1]. Clark has not provided any authority showing that a *concluded* special purpose grand jury proceeding can be removed to the federal court. In the absence of binding authority, the Court declines to remove the completed SGJP.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DECLINES** to assume jurisdiction over the State's criminal prosecution of Clark under Section 1455 and **REMANDS** the case to Fulton County Superior Court. The Court moreover **DENIES** Clark's attempt to remove the SGJP under Section 1446.

The Court makes clear this Order determines only that, as a federal court with limited jurisdiction, it lacks any basis for jurisdiction over Clark's criminal prosecution and the SGJP. The Court's conclusion is not to suggest any opinion about the State's case against Clark. The Court makes no ruling on the merits of the charges against Clark or any defense that he may offer. Clark maintains the presumption of innocence and bears no burden of proving that he did not commit the crimes charged against him. The burden of proof beyond a reasonable doubt remains with the State. This Order's sole determination is that there is no federal jurisdiction over the criminal case. The outcome of this case will be for a Fulton County judge and trier of fact to ultimately decide.

IT IS SO ORDERED this _29th_ day of September, 2023.

_____

**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

31

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| STATE OF GEORGIA, | Case No. _____ |
| v. | (Related to: |
| JEFFREY BOSSERT CLARK, | Case No. 1:23-cv-03621-SCJ) |
| DEFENDANT. | Judge Steve C. Jones |
| | On removal from the Fulton County Superior Court |

---

### DEFENDANT JEFFREY B. CLARK'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

PLEASE TAKE NOTICE:

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442, 1446, and 1455, Jeffrey B. Clark ("Defendant") hereby gives notice and removes the two actions listed below to the United States District Court for the Northern District of Georgia, Atlanta Division:

**(1)** the attempted prosecution in Fulton County Superior Court, *State of Georgia v. Donald John Trump, et al.*, Case No. 23SC188947, ("Fulton County Action" or "Action")); *as well as*

**(2)** the Fulton County Special Purpose Grand Jury proceedings ("SPGJ Proceedings"), *In Re: Special Purpose Grand Jury*, Fulton County Superior Court

Case No. 22-EX-000024 that led up to the Action (along with any pending appellate process attendant to the SPGJ Proceedings).

This Notice will have the legal effect of removing the entire civil-criminal hybrid case to this Court and preventing the State of Georgia ("State") from proceeding any further with the Fulton County Action unless and until (1) a remand order is issued by this Court; (2) 28 U.S.C. § 1447(c) is complied with; and (3) the interlocutory appeal applicable to federal-officer removals as specified in Section 1447(d) is taken and all follow-on appellate process is completed. *See* 28 U.S.C. § 1446(d) (automatic stay upon any civil-based removal).[1]

## INTRODUCTION

Mr. Clark plainly has the ability to remove the matters embraced here to this Article III federal District Court under federal law. He was a high-ranking U.S. Justice Department official at all relevant times applicable to the Fulton County Action and the allegations therein relate directly to his work at the Justice Department as well as with the former President of the United States.

Given the effect of Section 1446(d)'s automatic stay, we will also be seeking emergency relief against the State attempting to execute on any arrest warrants as its

---

[1] *See also BP plc v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532 (2021) (relying in part on Section 1446(d)'s automatic stay when concluding its effect lasts through interlocutory appeal proceedings and does not just apply to trial court proceedings concerning federal officer removal jurisdiction).

power over this case ceased immediately upon this removal. From this point forward, this Court alone is in charge (in the absence of an appeal) of the issuance of process to bring all parties before the Court. *See* 28 U.S.C. § 1447(a). Use of a state law criminal process designed to generate headlines, potential "perp walks" for television cameras, and anything more than simple service of process on defendants would be inappropriate here given the removal. ***District Attorney Fani Willis waited two and a half years to bring this prosecution.*** Any claim of urgency is therefore not credible. To our knowledge, no defendant has left the country, fled Georgia, or done anything other than pledge to resist this politicized matter with maximum energy. And that is their undeniable constitutional right.

Filed on August 14, 2023, the Fulton County Action is an unprecedented attempted prosecution under the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO"). The Fulton County Action took advantage of civil proceedings to augment the powers of an ordinary grand jury in Georgia with the powers of a special purpose grand jury. This voluntary choice by the State requires the State to take the bitter with the sweet, for the State cannot work such a fusion of civil and criminal powers and thereafter deny the impact of using those civil powers as a launchpad for this case. And the bitter for the State here is that its use of that civil launchpad brings with it the automatic stay on state court proceedings pursuant to Section 1446(d), once removal has occurred.

For the first time in United States history, a former President of the United States has been charged with running a criminal organization. This is wildly implausible on its face (whatever some ratings-hungry media pundits might posture), and as Mr. Clark and other defendants will show, the allegations that such an enterprise exists fail on numerous grounds. The case is also defective on multiple legal grounds, which should ultimately dispose of the matter without the need for delving into any extensive factual findings. The Action is just as defective factually as it is legally, however.

Mr. Clark is one of the 18 other defendants named in the Action. The allegations in the Action all relate to Mr. Clark's service as a Senate-confirmed Assistant Attorney General in the United States Justice Department. Mr. Clark has had an outstanding 28-year career since graduating from law school in 1995, clerking for a United States Court of Appeals Judge in the Sixth Circuit, and working at and becoming a partner in a large international law firm, alternating with periods of service in the Justice Department, for a total of about six-and-a-half years combined, in the Administrations of Presidents George W. Bush and Donald J. Trump.

The State's assertions that Mr. Clark participated in a non-existent, multi-state criminal conspiracy are scurrilous. We trust he will be cleared of the charges advanced by District Attorney Fani Willis. We have faith that the federal courts will

ultimately recognize this Action for what it is—a naked attempt to destroy Mr. Clark by "lawfare," cost him millions in legal fees, impair his work in the conservative legal community at the Center for Renewing America in Washington, D.C., and tarnish his previously stellar reputation. And those are just the illegitimate objectives as to Mr. Clark. As to the other Defendants, the Action is an attempt to put political enemies in prison with no more to commend it than the Moscow show trials.

In its every dimension, the Action is a violation of the sacred principle of enforcing the law on an evenhanded basis. It is not a good-faith prosecution; it is instead a political "hit job" stretched out across 98 pages to convey the false impression that it has heft and gravity. And for these reasons, it is certainly not a matter that this Court—with its illustrious history as one of the original thirteen courts established by the Judiciary Act of 1789—should have to sully itself with. *See* 1 Stat. 73 (1789). We are, however, compelled to bring it here, where we trust Mr. Clark's legal rights as a former federal officer of distinction will be vindicated.

* * *

Defendant's counsel signs this Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure and Defendant pleads the following in accordance with the parallel requirements of 28 U.S.C. § 1446(a) and § 1455(a) for as "short and plain statement of the grounds for removal" as the complex and unprecedented circumstances will allow:

1.  This is a paradigmatic case for removal under the federal officer removal statute, 28 U.S.C. § 1442—the statute that forms the principal, but not exclusive, basis for removal herein. Defendant is a former high-ranking federal officer at the United States Justice Department. Specifically, Defendant was a Senate-confirmed Assistant Attorney General for the Environment & Natural Resources Division from November 1, 2018 to January 14, 2021, as well as the former Acting Assistant Attorney General of the United States for the Civil Division from September 5, 2020 to January 14, 2021.[2]

2.  Mr. Clark's federal officer status is undeniable. He is plainly entitled to see any case against him related to his service in the Executive Branch of the United States government resolved in the federal Article III court system, if he can meet the easy threshold requirement of advancing a merely colorable legal defense, which we do below.

3.  Mr. Clark faces charges brought by Fulton County, Georgia in the name of the State of Georgia. Georgia is thus seeking to review the propriety of advice Defendant is alleged to have prepared and delivered, ***while a federal officer***, though that advice was never presented to any state court or other body that

---

[2] Indeed, Mr. Clark was the only "double" Assistant Attorney General in the Trump Administration to simultaneously run two litigating divisions of the Justice Department (which comprises only seven litigating divisions in total). Mr. Clark was thus responsible for supervising about 1,400 federal lawyers and a myriad of other federal staff.

could be characterized as a tribunal (nor was it ever presented to any federal court). Instead, the alleged advice was given exclusively within the confines of the senior leadership of the Justice Department and/or, inside the sanctum of the Oval Office of the White House, where it was put to the President of the United States himself.[3]

4.   No State possesses the power to supervise the internal operations and deliberations of any branch of the federal government. This is a basic structural feature of the U.S. Constitution's design. The Supremacy Clause (U.S. Const., art. vi, cl. 2) and the federal officer removal statute, 28 U.S.C. § 1442, collectively ensure the preservation of the federal structure by vesting Article III courts with the jurisdiction and responsibility to adjudicate the federal statutory claims, constitutional claims, and other defenses put forward by individuals entrusted with federal authority.

5.   In this case, it is the State of Georgia, through its Fulton County delegate, that claims the power to intrude into the federal government's operations. As such, the Action is a direct attack on the fundamental principle of federalism by

---

[3] *See* Select Committee to Investigate the January 6th Attack on the United States Capitol, *Final Report* at 80, 117th Cong., 2d Session, H.R. Rep. 117-000 (Dec. 00, 2022) [date oddity "00" in original], *available at* https://www.documentcloud.org/documents/23514956-the-full-january-6-committee-report-text (last visited Aug. 20, 2023) (asserting that a January 3, 2021 meeting occurred in the Oval Office attended by Mr. Clark, other federal lawyers, and then-President Trump).

positing the State as operating ***above*** the federal government, rather than the reverse.

6.    Indeed, the State has no authority whatsoever to criminalize advice given to the President by a senior Justice Department official concerning U.S. Department of Justice law enforcement policy based on a County District Attorney's disagreement with the substance or development of that advice. In this case, the Fulton County Action seeks to explore the legal, policy, factual, and political bases for advice that Defendant is alleged to have given (1) to the Acting Attorney General of the United States, (2) to the Principal Associate Deputy Attorney General (the "PADAG"), who at the time was performing the duties of the Deputy Attorney General, and, most importantly according to a Congressional investigation, (3) to the President of the United States.[4] The State simply has no authority to intrude upon, politicize, or second-guess advice given to former President Trump by senior officials of the Justice Department, including Mr. Clark.

7.    The authority of a District Attorney to bring prosecutions in the name of the State of Georgia is established by O.C.G.A. § 15-18-6(4). In cases removed to federal court, O.C.G.A. § 15-18-7 provides that "it shall be the duty of the district attorney of the circuit from which the case was removed, in association

---

[4] *See* n. 3, *supra*

with the Attorney General, to appear for the state as the prosecuting officers

of the state." This means that District Attorney Willis will need to consult with

Georgia's Attorney General before taking any positions in this removed case.[5]

8.   One of the key elements of the federal officer removal statute, *see* 28 U.S.C.

§ 1442(d)(1) defines "civil action" and "criminal prosecution" to "include any

proceeding (***whether or not ancillary to another proceeding***)" (emphasis

added). In accord with that straightforward textual instruction, this Notice of

Removal encompasses and removes not just the Fulton County Action itself

but also the Special Purpose Grand Jury proceedings that preceded (and to

some extent are still continuing) and paved the way for the filing of the Fulton

County Action. The Fulton County Action, narrowly defined, is criminal. The

Special Purpose Grand Jury proceedings ("SPGJ Proceedings"), however, are

civil in nature.

9.   Any request to remand this case should thus be denied. The first test should be

whether the State even has the jurisdiction to entertain charges against

Defendant. On a schedule the Court establishes for this highly complex, civil-

---

[5] The fact that removal now involves the Georgia Attorney General should also cause this Court to seek out the views of whether the State's Attorney General agrees with District Attorney Willis's decision to put this matter before a grand jury and agrees with the terms of the indictment. And in particular, this Court should seek out the views of the Attorney General of Georgia on whether he agrees with the prosecution of the three federal officials named in the indictment—former President Trump, former Chief of Staff Meadows, and former Assistant Attorney General Clark.

criminal hybrid case, Mr. Clark will file a motion to dismiss for lack of jurisdiction on multiple grounds. This set of issues has to be resolved before Mr. Clark can be subjected to any further burdens of defending this matter. *See, e.g., Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) (threshold subject matter and personal jurisdictional questions must be resolved before the merits); *Steel Co.* v. *Citizens for Better Env't,* 523 U. S. 83, 94-95 (1998) (requirement to establish subject matter jurisdiction as a threshold matter is "inflexible and without exception" and, for that reason, the Supreme Court rejected the doctrine of "hypothetical jurisdiction").

## BACKGROUND AND PROCEDURAL REQUIREMENTS

10. Jeffrey B. Clark, hereafter "Defendant," has been charged in the matter currently styled "*The State of Georgia v. Trump, et al.*," pending in Fulton (County Georgia) Superior Court, Clerk No. 23Sc1888947.

11. The federal officer removal statute itself, 28 U.S.C. § 1442, does not specify a time limit for removal. As a result, ***when*** federal officer cases are removable depends on whether the prosecution or case against the federal officer is a civil case or a criminal case.

12. First, this action (being in-part criminal) is timely removed pursuant to 28 U.S.C. § 1455(b)(1) (emphasis added), which provides as follows:

> A notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, or at any time

before trial, whichever is earlier, except that for good cause shown the
United States district court may enter an order granting the defendant
or defendants leave to file the notice at a later time.

13. This removal is timely because no arraignment[6] has even been held, so the 30-

day clock in Section 1455(b)(1) has not even begun. Defendant has been

forced to move faster only because of District Attorney Fani Willis's threat to

make criminal arrests of each defendant unless they voluntarily surrender in

Fulton County *in four days*.[7] *See* Graham Massie, *Fani Willis Announces*

*Arrest Warrants for Trump and 18 Co-Defendants with Deadline to Turn*

*Themselves In*, THE INDEPENDENT, *available at* https://www.the-

independent.com/news/world/americas/us-politics/trump-arrest-warrant-

georgia-indictment-b2393096.html (Aug. 15, 2023) (circa minute 2, 37-

---

[6] Neither Section 1455 nor Section 1451 (containing generally applicable definitions
to Title 89 of Title 28 of the United States Code, where the removal statutes are
housed) defines the term "arraignment." BLACK'S LAW DICTIONARY (11th edition),
however, defines "arraignment" as "The initial step in a criminal prosecution
whereby the defendant is brought before the court to hear the charges and to enter a
plea." Mr. Clark has not been brought before the before the Fulton County Superior
Court to enter a plea or hear the charges, ergo no arraignment has yet occurred.

[7] Mr. Clark and undersigned counsel have not seen any of the arrest warrants, let
alone the arrest warrant issued re Mr. Clark in particular. The District Attorney is
apparently relying on news media announcements to alert defendants to her arrest
warrant threats. This is inconsistent with due process. Defendants should not have
to watch the news or search for press stories to try to track down all legal papers in
this case.

In any event, Mr. Clark does not and has not voluntarily placed himself under
Georgia state jurisdiction by any means in the Action.

second mark in embedded video); *see also id.* at 2:41 ("***I am giving the***

***defendants the opportunity to voluntarily surrender, no later than noon on***

***Friday, the twenty-fifth day of August 2023.***") (emphasis added).

14. Mr. Clark has had no direct visibility into the SPGJ Proceedings. He was not

subpoenaed to testify before the SPGJ. Nor was he issued a "target letter" by

the Fulton County District Attorney's Office. Nor did the District Attorney's

Office otherwise notify Mr. Clark that he was a target or subject of the SPGJ

Proceedings, such as by phoning him or one of his counsel.

15. Therefore, not being apprised that he was a party or potential party to those

SPGJ Proceedings, he could not possibly have separately removed those

proceedings to this Court before the August 14, 2023 indictment was handed

down naming him as one of the defendants.

16. The SPGJ Proceedings, however, likely involved District Attorney Willis

putting allegations about Mr. Clark to the SPGJ. It appears that District

Attorney Willis was using the SPGJ Proceedings to develop information about

Mr. Clark and other defendants she now alleges in the indictment conspired

with one another. For this reason, the SPGJ Proceedings are inextricably

linked to the indictment action, allowing both to be removed based on the

timing of that indictment, media coverage of which was Mr. Clark's first

notice that he would be charged based on the prior SPGJ investigation.

17. Moreover, given the lack of notice that the SPGJ Proceedings were looking into Mr. Clark until the indictment was issued on August 14, 2023, 28 U.S.C. § 1446(b)(3) applies. That provision of law specifies, in relevant part,[8] that "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper from which it may first be ascertained* that the case is one which is or has become removable." (Emphasis added.) Because Mr. Clark had no notice that the civil SPGJ Proceedings were targeting him until the indictment was issued on August 14, 2023, that "paper" is the one "from which it may first be ascertained that the case is one which is or has become removable." Hence, even if the deadline for removal were to run not from an arraignment that has not yet even been held, the removal would still be timely if it occurred on or before September 13, 2023 (30 days after the August 14, 2023 indictment). And this Notice of Removal is clearly timely as compared against that deadline.

18. Consistent with 28 U.S.C. § 1446(a), Defendant's counsel hereby submits concurrently herewith in the next consecutive docket entry a copy of all process, pleadings, and orders that we are aware of in the Fulton County

---

[8] The irrelevant portions of Section 1446(b)(3) refer to special rules for the timing of removal of diversity jurisdiction cases under 28 U.S.C. § 1332. But Mr. Clark is not attempting to remove this case on the basis of diversity jurisdiction.

Action narrowly defined (*i.e.*, the indictment action). The following consecutive docket entry filed concurrently herewith contains a copy of all process, pleadings, and orders in the SPGJ Proceedings that we have been able to locate. Note, that these filings are attached only out of an abundance of caution. Section 1446(a) actually requires the attachment and filing here only of papers that have been "served upon defendant or defendants in such action." No papers in either the Fulton County Action or in the SPGJ Proceedings have been served on Mr. Clark. We are also unaware of any such papers being served most of the other 18 defendants in the Fulton County Action.

19. Finally, while we have made best efforts to place all relevant papers from the Fulton County Action narrowly defined and the SPGJ Proceedings before this Court at this time, pursuant to 28 U.S.C. § 1447(b), if there is any other paper this Court is or becomes aware of, it "may cause the same to be brought before it by writ of certiorari issued to [the Fulton County, Georgia] State court."[9] Mr. Clark would, of course, fully cooperate with such a process of bringing unknown papers to light from the state court processes and bringing them here to this Court.

---

[9] The Fulton County Superior Court website is not remotely the equivalent of the federal PACER system of electronic case filing ("ECF"). With respect to the SPGJ Proceedings, it is poorly organized and somewhat *ad hoc* in nature.

## BRIEF SUMMARY OF FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

20.  District Attorney Fani Willis is seeking to penalize Defendant's discretionary actions when he served as the Assistant Attorney General over two federal Department of Justice Divisions in the rough time frame of December 28, 2020 to January 3, 2021, the point in time at which the President of the United States is reported to have declined to pursue a recommendation made by Mr. Clark after a multi-hour Oval Office meeting with six other lawyers, a meeting to which the indictment oddly makes no reference. *See supra* n.3.[10]

21.  Count 1 of the 41-Count indictment makes allegations that Mr. Clark is part of a vast Georgia RICO conspiracy running from November 4, 2020 to September 15, 2022. *See* Exh. A-1 at 13. Mr. Clark sent his resignation letter to President Trump, effective January 14, 2021 and has had no connection to Georgia election matters since that time. *See* Exh. C.

22.  The State will be unable to prove, if this case as to him is not quickly dismissed on legal grounds or otherwise founders on factual grounds before trial, the allegation that Mr. Clark agreed, ***at any point in time***, to become part of a vast, 19+ member, ongoing criminal enterprise is preposterous, as is the alleged

---

[10] Mr. Clark reserves all of his constitutional rights and trial rights to raise legal and factual defenses. His citation to the J6 Committee Report appears here merely to provide context regarding what appears to have likely motivated District Attorney Willis to pursue this indictment.

enterprise conspiracy itself. *See* Exh. A-1 at 15.

23.  In Act 98 of the indictment, the grand jury alleges that Mr. "Clark attempted

to commit the felony offense of **FALSE STATEMENTS AND WRITINGS**,

in violation of **O.C.G.A. § 16-10-20**, in Fulton County, Georgia, by knowingly

and willfully making a false writing and document knowing the same to

contain the false statement that the United States Department of Justice had

'identified significant concerns that may have impacted the outcome of the

election in multiple States, including the State of Georgia,' said statement

being within the jurisdiction of the Office of the Georgia Secretary of State

and the Georgia Bureau of Investigation, departments and agencies of state

government, and county and city law enforcement agencies[.]" *Id.* at 45.

24.  To read the indictment, one would think Mr. Clark had nothing to do with the

U.S. Justice Department, as it fails to refer to him at any time as the Assistant

Attorney General of the Environment and Natural Resources Division *or* as

the Acting Assistant Attorney General of the Civil Division (federal officer

roles he served in simultaneously). But this deliberate omission cannot obscure

the fact that Mr. Clark was a federal officer at the time of the allegations in the

indictment. Indeed, as to Mr. Clark, the indictment reads as if he were a private

citizen trying to deceptively lobby Justice Department officials to try to get

them to change a law enforcement, policy, or factual decision. In reality, of

course, Mr. Clark's participation in any legal, factual, or policy deliberations at the Justice Department were in his role as a senior official of that Department.

25. Act 98 further alleges that around the same time, Mr. Clark "sent an e-mail to Acting United States Attorney General Jeffrey Rosen and Acting United States Deputy Attorney General Richard Donoghue[11] and requested authorization to send said false writing and document to Georgia Governor Brian Kemp, Speaker of the Georgia House of Representatives David Ralston, and President Pro Tempore of the Georgia Senate Butch Miller, which constitutes a substantial step toward the commission of False Statements and Writings, O.C.G.A. § 16-10-20. This was an act of racketeering activity under O.C.G.A. § 16-14-3(5)(A)(xxii) and an overt act in furtherance of the conspiracy." *Id.*

26. Next, Act 99 of the indictment alleges that Mr. Clark asked Justice Department officials Jeffrey Rosen and Richard Donoghue to write to officials of the State of Georgia. *See id.* at 46. Such a communication, had it been sent (which it indisputably was not), would have been one from the United States government and could only have occurred because all three officials: Messrs.

---

[11] The indictment does not get Mr. Donoghue's title correct. He was not the Acting Deputy Attorney General at the time. He was the Principal Associate Deputy Attorney General ("PADAG") performing the duties of the Acting Attorney General. Mr. Donoghue was not Senate-confirmed and was not a Trump Administration appointee.

Rosen, Donoghue, and including Clark, were at the apex of the Justice Department, as federal officers, at the time. Act 111 makes substantially the same allegation, except that it asserts that Mr. Clark made a second and similar request on January 2, 2021. *See id.* at 50.

27. The Act 98 allegation ignores that the email was an internal communication, as was the draft letter allegedly sent inside the Justice Department's e-mail system, a federal government system Mr. Clark would have had access to only because he was a federal officer during the relevant timeframe.

28. Act 110 then alleges that "On or about the **2nd day of January 2021**, **SCOTT GRAHAM HALL**, a Georgia bail bondsman, placed a telephone call to **JEFFREY BOSSERT CLARK** and discussed the November 3, 2020, presidential election in Georgia. The telephone call was 63 minutes in duration. This was an overt act in furtherance of the conspiracy." *Id.*

29. The indictment never explains how Mr. Clark, as a federal government official, taking a phone call from a citizen could be anything other than protected conduct under the First Amendment of the U.S. Constitution's Petition Clause. Mr. Clark was a federal officer at the time of the alleged phone call. Mr. Clark is also entitled to his own opinions and to freedom of speech about them under the First Amendment.

30. Count 22 of the indictment alleges that Mr. Clark's conduct on December 28,

2020 and January 2, 2021—conduct inherently engaged in as a federal officer—violated O.C.G.A. §§ 16-4-1 & 16-10-20, as interpreted pursuant to O.C.G.A. § 17-2-1(b)(2). *See* Indictment at 83.

31.   This is the full extent of allegations of Mr. Clark's (a) purported criminal conduct, and (b) his purported participation in a criminal Georgia RICO enterprise. Every single word of the indictment, as it concerns him, applies to the time Mr. Clark was a federal officer. Moreover, it relates to a mere one-week period from December 28, 2020 to January 2, 2021. No conduct lasting for multiple years is alleged against Mr. Clark.

32.   The incontrovertible evidence that Mr. Clark was a federal officer during the time of the allegations against him are voluminous. Thus, we will only give a sampling here:

> (1) Mr. Clark appearing in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021) as "Jeffrey Bossert Clark, Acting Assistant Attorney General [of the Civil Division], Department of Justice;"

> (2) listing Mr. Clark as one of the "Assistant Attorneys General" [in this case, of the Environment and Natural Resources Division] in *United States Fish and Wildlife Service v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021);

> (3) *Trump v. New York*, 141 S. Ct. 530 (2021), listing Mr. Clark as Acting Assistant Attorney General [of the Civil Division];

> (4) listing Mr. Clark as personally arguing, when Assistant Attorney General of the Environment and Natural Resources Division, *United States v. Exxon Mobil Corp.*, 943 F.3d 1283 (9th Cir. 2019); and

> (5) Jeffrey Bossert Clark to President Trump, Resignation Letter (dated

January 12, 2021, to become effective January 14, 2021) (Exhibit C).

All of these pieces of evidence are judicially noticeable under Federal Rule of Evidence 201.

33. Moreover, in order to mount an effective defense on the facts, should that become necessary, Defendant will likely call witnesses who are themselves entitled, pursuant to 28 U.S.C. § 1442(d)(1), to remove proceedings, relating to the validity of any subpoenas issued to them, to federal court. Seeking their testimony will also trigger the complex *Touhy* process, similar potential privilege claims, and a need to adjudicate the constitutional and statutory rights of such subpoenaed witnesses. *See* 28 C.F.R. ch. 1, pt. 16, subpt. B. *See also United States ex re. Touhy v. Regan*, 340 U.S. 462 (1951).

34. On August 16, 2023 Ms. Willis even filed a motion to seek a trial date of March 4, 2024 for all defendants. She did this without serving her scheduling motion on Mr. Clark or, to our knowledge, on any of the defendants. *See* Exh. A-2 in the next consecutive docket entry.

35. Mr. Clark lodged an opposition to that motion on August 17, 2023. *See* Exh. A-3. Since then, an order for media access to the Courtroom was entered, and four consent bond Orders have been entered. But, as noted above, that website is not the equivalent of the federal PACER system of electronic case filing ("ECF") and whether there are other filings that are not yet publicly available

is not now at the time of filing.

36.   On January 24, 2022, the Chief Judge of the Fulton Superior Court issued an Order approving a request for a Special Purpose Grand Jury pursuant to O.C.G.A. § 15-12-100, *et seq.* (Exh. B-1(Filings from the SPGJ proceedings are in the second consecutive docket entry, numbered B-1 through B-174)). Thereafter, a Special Purpose Grand Jury ("SPGJ") was empaneled on May 2, 2022, and proceeded using Case No. 22-EX-000024 under the supervision of Judge Robert C. I. McBurney. The SPGJ began collecting evidence and taking testimony in June 2022 until it was dissolved by order of Judge McBurney on January 9, 2023. *See* recitals in Exh. B-142, pp. 1-2. The SPGJ issued a report, most of which remains under seal. *Id*. The released portions of the report showed that the SPGJ had recommended that certain unnamed persons be indicted for perjury. *See* Exh. B-143 at 8. There was no information in the publicly released portions of the report referring to Mr. Clark.

**REMOVAL JURISDICTION EXISTS OVER THIS CASE PURSUANT TO THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442.**

37.   The first basis for removing the matters included in the Notice of Removal to this Court arises because Defendant is being prosecuted for actions taken while he was a federal officer. As a result, this matter falls squarely within the removal jurisdiction of 28 U.S.C. § 1442, regardless of the nature of the relevant cause of action brought against Defendant or how any such action is

styled by its plaintiff or proponent. *See id.* § 1442(a)(1) (allowing removal of

actions filed against a federal officer "in an official *or* individual capacity")

(emphasis added).

38.   Section 1442(a)(1) provides as follows:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

39.   The Fulton County Action—the indictment—is plainly a criminal case. And

under Georgia precedent, the SPGJ Proceedings are civil. *Kenerly v. State*, 311

Ga. App. 190, 190 (2011) (special purpose grand juries may not issue criminal

indictments and are civil in nature); *State v. Bartel*, 223 Ga. App. 696, 698

(1996) (special purpose grand juries conduct civil investigations). At the very

least, the SPGJ Proceedings here are inextricably— and by the design of the

District Attorney—in fact tied to the criminal case. As noted above, the SPGJ

Proceedings are "ancillary" to the Fulton County Action. And under Section

1442(d)(1), proceedings merely ancillary to removable proceedings are also

removable. Accordingly, however the two matters are looked at (*i.e.,* the

Fulton County Action and the SPGJ Proceedings), they both constitute removable matters.

40. For purposes of Section 1442, this case was "commenced in a State Court." The Fulton County Superior Court is a Georgia state court. *See* Ga. Const. (1983, Rev. 2023) Art. VI, Section 2, Paragraph I; O.C.G.A. § 15-6-8 (jurisdiction and powers of superior courts); *see also* 28 U.S.C. § 1442(d)(5)-(6). And both the Fulton County Action narrowly defined and the SPGJ Proceedings were filed in the Fulton County Superior Court. On April 19, 2023, certain Media Intervenors into the SPGJ case filed a Notice of Appeal (Exh. B-149) to the Georgia Court of Appeals from the Superior Court's Order entered February 13, 2023 (Exh. B-142). That appeal is styled *In Re: 2 May Special Purpose Grand Jury*, Court of Appeals Case No. A23A1453. On August 4, 2023 President Trump filed a Notice of Appeal to the Georgia Supreme Court (Exh. B-172). That case does not yet appear to be docketed at the Georgia Supreme Court. Both appeals remain pending at this time.

41. Moreover, the definition of the terms "civil action" and "criminal action" embrace all of the proceedings being removed in this Notice of Removal. *See id.* at § 1442(d)(1) (included are "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued."). By

bringing the Fulton County Action narrowly defined, the District Attorney is inherently seeking an order imposing criminal punishment. And the SPGJ Proceedings clearly involved both the seeking and issuance of subpoenas to testify to the SPGJ. Approximately 43 Orders were issued in the SPGJ Proceedings, many relating to the issuance of subpoenas or motions to quash subpoenas and others relating to motions to disqualify the District Attorney or counsel for witnesses and or targets. For these reasons, both the Fulton County Action and the SPGJ Proceedings are removable proceedings under the federal officer removal statute.

42.   Moreover, both the Fulton County Action and SPGJ Proceedings are, in part, "against or directed to" Defendant, 28 U.S.C. § 1442(a), and relate to his conduct as "an[] officer . . . of the United States or of any agency thereof." *Id.* at § 1442(a)(1). As noted above, Mr. Clark was a double Assistant Attorney General at the United States Department of Justice.

43.   Section 1442 federal officer removal exists when the underlying conduct occurs while a defendant is in federal employ. *See*, *e.g.*, *Williams v. Lockheed Martin Corp.*, 990 F.3d 852 (5th Cir. 2021) (exercising civil removal jurisdiction over a former employee plaintiff exposed to asbestos while working for the predecessor corporation to Lockheed Martin, where that employee helped to build federal government rockets for NASA); *Kentucky v.*

*Long*, 837 F.2d 727 (6th Cir. 1988) (exercising removal jurisdiction as to a criminal action filed in 1986 against a former FBI agent, relating to actions undertaken when he was in federal employ from 1979 to 1981); *cf. De Busk v. Harvin*, 212 F.2d 143 (5th Cir. 1954) (allowing federal officer removal by defendant officials at the Lubbock Regional Office of the federal Veterans Administration of suit against them by a former federal officer).[12]

44.   There can be no dispute that former federal officers such as Mr. Clark are entitled to invoke the federal officer removal statute. "It would make little sense if this were not the rule, for the very purpose of the Removal Statute is to allow federal courts to adjudicate challenges to acts done under color of federal authority." *New York v. Trump*, No. 23 CIV. 3773 (AKH), 2023 WL 4614689, at *5 (S.D.N.Y. July 19, 2023).

45.   All that matters is that the Fulton County Action and SPGJ Proceedings are adverse to Mr. Clark and relate to his time in federal office, specifically focused on the one-week period December 28, 2000 to January 2, 2021. And they plainly do fit within his period of federal service.

46.   The Fulton County Action and SPGJ Proceedings also bring Mr. Clark's

---

[12] "The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding on this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc)." *Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377, 1381 n.1 (11th Cir. 2006).

conduct into question "[a] for or relating to any act under color of such office or [b] on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." 28 U.S.C. § 1442(a)(1) (allowing actions fitting this definition to be removed). The allegations against Mr. Clark and the lead-up SPGJ investigation also relate to potential actions pursuant to DOJ "authority claimed under any Act of Congress for the apprehension or punishment of criminals." 28 U.S.C. § 1442(a)(1). Any 2020 election investigations Mr. Clark wanted to conduct could potentially have led to federal criminal charges against those the Department was investigating during the Trump Administration.

47.   Defendant will assert a series of federal-law based objections to the Fulton County Action and SPGJ Proceedings, including defenses based on the Supremacy Clause, federalism, the lack of state court jurisdiction over federal officer conduct, especially that inside the sanctums of the White House and Justice Department, immunity, qualified immunity, the Opinion Clause, the Take Care Clause, and the First Amendment's Petition Clause, *inter alia*.

48.   To remove, Mr. Clark need show no more than that he has at least one "plausible" federal defense to the charges. *See Caver v. Central Ala. Elec. Coop.*, 845 F.3d 1135, 1145 (11th Cir. 2017). The allegations in this Notice of

Removal far exceed the minimalistic threshold for removal. During the brief, one-week period the indictment focuses on, Mr. Clark held two separate federal offices at the Justice Department, tracing his own authorities to a presidential commission issued to him through Attorney General Sessions after he was confirmed on a bipartisan basis by the Senate.

49.   "We must construe the statute liberally in favor of removal, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007), and 'we credit the [officer's] theory of the case for purposes of both elements of' the removal inquiry, [*Jefferson Cty, Ala. v.] Acker*, 527 U.S. [423,] 432 [(1999)]." *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 506 (D.C. Cir. 2020) (the two elements being (1) raising a colorable federal defense that (2) relates to any act under color of the removing federal official's office); *Georgia v. Heinze*, 637 F. Supp. 3d 1316 (N.D. Ga. 2022) ("to successfully remove a criminal prosecution under the federal officer removal statute, a defendant must show that: 1) he was an officer, or any person acting under that officer, of the United States; 2) he is facing criminal charges for or relating to any act under color of such office; and 3) that he has raised or will raise a colorable federal defense. *Mesa* [*v. California*], 489 U.S. [121,] 129 [(1989)]") (cleaned up)).

50.   Federal officers can remove both criminal and civil cases to federal court, as well as ancillary proceedings to either type of proceeding. Hence, Mr. Clark

can meet the requirements of federal officer removal because he is facing charges or claims against him for or relating to his acts under color of his office. This is because he will raise these colorable legal defenses (and likely more at the appropriate time): (1) Supremacy Clause, (2) federalism, (3) the lack of Georgia jurisdiction over federal officer conduct inside the sanctums of the White House and Justice Department, (4) immunity, (5) qualified immunity, (6) the Opinion Clause (as the President is entitled to ask Senate-confirmed officials in his Administration for their advice on legal questions and, when asked, they are obliged to respond), (7) the Take Care Clause, and (8) the First Amendment.

51.  Additionally, the second sentence of Section 1442(d)(1) does not apply because there is "[an]other basis for removal." Namely, the next basis for removal covered below concerning 28 U.S.C. §§ 1331 (pursuant to the doctrine of complete preemption) & 1441 (allowing removal of civil actions).

52.  Mr. Clark also hereby incorporates by reference the grounds for removal of the Fulton County Action, which is criminal in nature, as those grounds are stated by Mr. Meadows in his notice of removal. *See State of Georgia v. Meadows*, Dkt. #1.

**ORIGINAL JURISDICTION EXISTS PURSUANT TO THE FEDERAL QUESTION STATUTE (28 U.S.C. § 1331) UNDER THE DOCTRINE OF COMPLETE PREEMPTION AND THUS CIVIL REMOVAL JURISDICTION ALSO EXISTS PURSUANT TO 28 U.S.C. § 1441.**

53. Georgia is entirely fenced out of trying to regulate federal Justice Department lawyers engaged in internal deliberations or in their interactions with citizens seeking redress of grievances by the federal government. Therefore, that sphere of Georgia regulation is, in short, completely preempted. *See, e.g., Cunningham v. Neagle*, 135 U.S. 1, 76 (1890) (federal official engaging in his duties "is not liable to answer in the court of [a State]").

54. "In concluding that a claim is completely preempted, a federal court finds that Congress desired not just to provide a federal defense to a state-law claim but also to replace the state-law claim with a federal law claim and thereby give the defendant the ability to seek adjudication of the claim in federal court." Wright, Miller & Cooper, 14C FED. PRAC. & PROC. JURIS. § 3722.2, *Removal Based on Federal-Question Jurisdiction—Removal Based on Complete Preemption* (Rev. 4th ed. (updated as per Westlaw)). Here, the rationale for complete preemption is even stronger because regulating and investigating U.S. Justice Department lawyers is inherently a federal role—and not a state role. At least it is not a state role in the absence of a clear delegation to Georgia. And there is no such delegation to Georgia applicable here, or to Fulton County, and the Fulton County Action does not on its face even attempt to overcome this lack of authority.

55. 28 U.S.C. § 1441(a) provides as follows:

> Except as otherwise expressly provided by Act of Congress, any
> civil action brought in a State court of which the district courts of
> the United States have original jurisdiction, may be removed by
> the defendant or the defendants, to the district court of the United
> States for the district and division embracing the place where
> such action is pending.

56. As explained above, the Fulton County Action and the ancillary SPGJ

Proceedings that led up to it make it into a criminal-civil hybrid. As such,

Section 1441(a) applies here, for this proceeding is, at least in part, a "civil

action."

57. We reiterate that because the SPGJ Proceedings are civil in nature, this case is

thus in part a "civil action" which is pending in "a State Court," within the

meaning of Section 1441(a) as supplemented by Section 1451(1).

58. This District Court possesses original federal question jurisdiction over this

in-part "civil action" because the attempted civil inquiry into and regulation

of a Justice Department lawyer at issue here is completely preempted.

Complete federal preemption overrides invocations of the "well-pleaded

complaint rule." *See, e.g., Vaden v. Discover Bank*, 556 U.S. 49, 56 (2009).

59. The term "defendant" is not defined in Section 1441(a), but the Defendant

here, Mr. Clark, is clearly placed in a defensive posture as to the SPJG

Proceedings that were pursued by Georgia, however Mr. Clark may have been

referred to inside those proceedings—whether as a "co-conspirator," "hostile

potential witness," "member of a Georgia RICO conspiracy," etc.

### THE FULTON COUNTY SUPERIOR COURT (OR ANY GEORGIA STATE COURT) MAY NOT PROCEED FURTHER ON THIS MATTER, NOW THAT REMOVAL HAS OCCURRED.

60.   As noted above, this matter is a criminal-civil hybrid. As such, it must be governed by harmonizing the procedural removal statute for criminal actions (Section 1455) with the procedural removal statute for civil actions (Section 1446).

61.   Section 1455(b)(3) provides that "The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded." 28 U.S.C. § 1455(b)(3). *See also* 28 U.S.C. § 1455(b)(5) (in situations where "the United States district court does not order the summary remand of such prosecution," and once the "district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, ***which shall proceed no further***.") (emphasis added). We are hopeful that this Court will quickly issue that very type of notification to the Georgia state court, which will clearly bring a halt to all proceedings there, including any attempt by District Attorney Fani Willis to threaten or effectuate arrests under unilateral state judicial and ancillary executive power.

62.   But Section 1446(d) provides, even earlier, that once notice of removal is filed

with the clerk of the "State court," as to a civil action, and notice is given to adverse parties, then "***the State court shall proceed no further unless and until the case is remanded***." 28 U.S.C. § 1446(d). Section 1446(d)'s civil-side rule is thus an ***automatic stay*** and its application does not even need to await this Court's determination that the criminal-side removal shall be permitted.

63.    The only way to harmonize those two statutes, both of which apply to this removal, is for the State Court to be precluded from proceeding further with the matter "unless and until the case is remanded." *See, e.g., United States v. Fausto*, 484 U.S. 439, 453 (1988) ("we must engage in the classic judicial task of reconciling many laws enacted over time, and getting them to make sense in combination") (cleaned up). Otherwise, the civil-side rule, applicable because the removed SPGJ Proceedings are part of the litigation here now, would be entirely eviscerated.

64.    For these reasons, this Court should make clear that all Fulton County, Georgia Superior Court proceedings must be halted, including any efforts to use state or interstate processes to arrest any of the defendants or threaten them with arrest.

65.    Upon removal, this case is now governed exclusively by the Federal Rules of Criminal Procedure as to the Fulton County Action narrowly defined and by the Federal Rules of Civil Procedure as to review any improprieties of the

SPGJ Proceedings and their potential to have infected the Fulton County Action (*i.e.*, the criminal side of the case) and render it *ultra vires*. These interrelated proceedings are no longer governed by Georgia procedural law or criminal procedural process.

66. Additionally, Supreme Court case law makes clear that arrest powers under state or local processes are eliminated by removal. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007) (cleaned up) ("the removal statute's 'basic' purpose is to protect[s] the Federal Government from the interference with its operations that would ensue were a State able, for example, ***to arrest*** and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting within the scope of their authority.") (emphasis added).

67. Additionally, shortly after filing this Notice of Removal, we will contemporaneously file with the Court an emergency motion seeking (a) a stay of any state court process going forward, now that removal has occurred, especially including stay of the issuance of and/or execution of any arrest warrants; and (b) an administrative stay of ten days to allow the Court to keep the *status quo* in place pending its decision on removal, so that arrest warrants are not proceeded on further by District Attorney Willis or by the Fulton County Sheriff or any adjunct officials working for or with either of those two

officials, during that short period.

## NOTICE TO DISTRICT ATTORNEY WILLIS ON DISCOVERY AND DOCUMENT PRESERVATION

68.   Because this is a civil matter as well as a criminal matter, Mr. Clark hereby gives the earliest possible notice to the Fulton County District Attorney's Office and to the Georgia Attorney General that we will, at the appropriate juncture and in accord with this Court's scheduling orders, be seeking discovery against the Fulton County District Attorney's Office and against the State itself pursuant to the Federal Rules of Civil Procedure (in addition to our discovery rights under the Federal Rules of Criminal Procedure).

69.   For this reason, District Attorney Willis, her office, and the State of Georgia across any agency should preserve all documents (broadly defined to include all electronic media) that relate to either or both of the Fulton County Action narrowly defined, to the SPGJ Proceedings, or to the 2020 presidential election and investigations thereof, and should destroy no documents in either of those categories. *See* Fed. R. Civ. P. 34(a)(1); Fed. R. Civ. P. 37(e). *See also generally* Fed. Rs. Civ. P. 34 & 37.

## VENUE AND REMOVAL UNDER 28 U.S.C. § 1441(A)

70.   Venue is proper in this Court pursuant to 28 U.S.C. § 1446(a), as the United States District Court for the Northern District of Georgia is the District in which the State Court Action was pending.

71.  Moreover, venue is proper, specifically, in the Atlanta Division of this Court given that it arises out of Fulton County, Georgia.

72.  This matter is removable under 28 U.S.C. §§ 1441 and 1442 as, in part, a civil action over which the United States District Court for the Northern District of Georgia has original subject matter jurisdiction under 28 U.S.C. § 1331 and the doctrine of complete preemption.

73.  This matter is thus also removable under 28 U.S.C. § 1442 and § 1455 because the indictment is in-part a criminal prosecution that is pending within another jurisdiction, Fulton County, Georgia Superior Court, that falls within the geographic span of the United States District Court for the Northern District of Georgia.

**EFFECTUATION OF REMOVAL**

74.  Defendant hereby removes the Fulton County Action and the SPGJ Proceedings to the United States District Court for the Northern District of Georgia.

75.  Pursuant to 28 U.S.C. § 1446(a), copies of all pleadings, as well as copies of all process and other papers that we have been able to locate from the Fulton County Action are filed concurrently herewith as Exhibit A-1 through A-9. Additionally, all SPJG Proceedings we could locate are filed concurrently herewith as Exhibit B1 through B-174. As noted above, we were not obligated

to attach any papers in these two interrelated matters because no papers from either proceeding have been served on Mr. Clark at this time. We have done so largely for the convenience of the Court.

76. Undersigned counsel certifies that a notification of filing this Notice of Removal in this Case, along with a copy of this Notice of Removal, will be promptly filed with the Fulton County Superior Court and with the Georgia Court of Appeals with respect to the Notice of Appeal filed April 19, 2023 (Exh. B-149) and with the Georgia Supreme Court with respect to the Notice of Appeal filed August 4, 2023 (Exh. B-171) when that appeal is docketed. Defendant will also serve this filing on opposing counsel and those counsel for co-defendants of whom we are aware.

**REMOVAL OF ENTIRE ACTION INCLUDING ALL DEFENDANTS**

77. Pursuant to precedent from the Eleventh Circuit (and a straightforward reading of Section 1442(a) that "civil action[s] or criminal prosecution[s]" are removed as a general matter), this removal—as well as the removal by defendant Mark Meadows'[13] —have removed the entirety of the Fulton County Action.[14] *See, e.g., Morgan v. Bill Vann Co.*, Civ. A. 11-0535-WS-B,

---

[13] *See State of Georgia v. Meadows*, Case No. 1:23-cv-03621-SCJ (removed Aug. 15, 2023).

[14] There is one exception under the second sentence of Section 1442(d), which states: "If removal is sought for a proceeding described in the previous sentence, and there

2011 WL 6056083 (S.D. Ala. Dec. 6, 2011) ("***If one aspect of this case is***

***removable, then the entire case may be removed.*** *See Magnin* [*v. Teledyne*

*Continental Motors*], 91 F.3d [1424,] 1428 [(11th Cir. 1996)] ('If one question

of Federal character exists, if there be a single such ingredient in the mass, it

is sufficient. That element is decisive upon the subject of jurisdiction.)

[(cleaned up)]. Thus, whether federal removal jurisdiction could have hinged

on Morgan's failure to warn claims, or his claims arising from Coast Guard

service, are questions that simply need not be reached. The Court finds that

***this entire action*** was properly removable under the federal officer removal

statute.") (emphasis added).

78.   Numerous older authorities support this same conclusion. *See IMFC*

*Professional Servs. of Fla., Inc. v. Latin American Home Health, Inc.*, 676

F.2d 152, 158 (5th Cir. Unit B 1982) ("Section 1442(a)(1) authorizes removal

of the entire case even though only one of its controversies might involve a

---

is no other basis for removal, only that proceeding may be removed to the district
court." This is designed to allow subpoenas to third parties to be removed separately.
But here, no third-party subpoena is being removed.

There are also two other ways in which this sentence is irrelevant to this removal:
(1) there is another basis for removal than Section 1442 here, namely the Section
1441 removal under complete preemption, *see supra* at ¶¶ 54-60; and (2) Section
1442(d)'s second sentence allows only "that proceeding" to be removed and in this
Notice of Removal, we have defined the proceedings that are being removed, under
even Section 1442 standing alone, to include both the criminal Fulton County Action
and the civil SPGJ Proceedings.

federal officer or agency. *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965).").[15] *IMFC Professional*'s continuing applicability was specifically reaffirmed and applied in *Maseda v. Honda Motor Co.*, 861 F.2d 1248, 1251 (11th Cir. 1988); *see also Heinze*, 2022 WL 15265493, *2 (N.D. Ga. Oct. 25, 2022) ("It is well settled that if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims.")

79.   Moreover, District Attorney Willis has announced her intention to try all defendants together in one action, so she can hardly be heard to argue that removal occurs only on a piecemeal defendant-by-defendant basis. *See* Exh. A-2, Motion for Entry of Pretrial Scheduling Order.

80.   Mr. Clark does not object to other defendants seeking voluntary remands to state court, although as noted in the previous paragraph, District Attorney Willis may object to this as it defeats her announced goal of holding one trial encompassing all defendants.

81.   Moreover, Mr. Clark notes that his interests in removal here are particularly focused on two objectives that he can claim as a former federal officer: (1) his

---

[15] Unit B of the Fifth Circuit was comprised of the States Alabama, Florida, and Georgia and became the Eleventh Circuit, so *IMFC Professional Services of Florida* is binding precedent. *See* Thomas E. Baker, *A Primer on Precedent in the Eleventh Circuit*, 34 MERCER L. REV. 1175, 1179 (1983).

right to have an Article III court decide whether, as he contends, he is immune

from the Fulton County Action or that it is otherwise lacking a proper

jurisdictional basis, including as to any claim by the District Attorney that

Fulton County Superior Court or any federal court in Georgia could exercise

personal jurisdiction over Mr. Clark; and (2) to secure a federal forum to

review the unlawful acts occurring in the course of the SPGJ Proceedings and

the prospect that those proceedings (once they are fully unsealed and can be

examined) infected the Fulton County Action and rendered it *ultra vires*.

82.    At the time of his federal officer removal, Mr. Meadows alerted the Court of

his intention to file a motion to dismiss the indictment. *See State of Georgia v.*

*Meadows*, Dkt. # 1 at 2-3 & 9 n.2. Since that time, on August 19, 2023, Mr.

Meadows made good on that promise. *See id*. at Dkt. 16 and 16-1. Mr. Clark

understands Mr. Meadows' desire for expedition given the various ways that

the indictment of Mr. Meadows, Mr. Clark, and former President Trump are

illegal.

83.    However, Mr. Clark, noting that this entire case has been removed, recognizes

the large-scale management problems this case will create for this Court.

Additionally, while Mr. Clark has confidence in the grounds for dismissal that

Mr. Meadows presents, he wishes to present other grounds as well as to

dismissal of the case against him in particular. And we believe that Mr. Clark

(and all other defendants) should be allowed to file a motion to dismiss based on a non-rushed schedule that this Court establishes as it begins to get its arms around all that is involved in this case. One thing is certain: there is no objective basis for rushing adjudication of any of these matters in light of the two-and-a-half years District Attorney Fani Willis spent investigating this matter before filing the indictment.

84.   WHEREFORE, Defendant hereby removes this action to the United States District Court for the Northern District of Georgia.

\* \* \*

The Court should also accept both this criminal and civil removal in light of Mr. Clark's obvious status as a federal officer during the times relevant to the indictment and as to any investigated conduct in and by the SPGJ. And it should follow that rapid acceptance of federal removal jurisdiction by adjudicating, in motions practice, the dismissal of the indictment against Mr. Clark.

Mr. Clark believes that this Notice of Removal establishes the grounds for invocation of his federal officer removal rights, *as a matter of law*,[16] and thus that taking evidence on that issue should not be necessary. However, if this Court has

---

[16] Mr. Meadows requested an evidentiary hearing and has gotten one, set for August 28, 2023, *see State of Georgia v. Meadows*, Dkt. # 6. But elsewhere in his notice of removal, Mr. Meadows agrees with Mr. Clark's position here, namely that the entitlement of federal officers to remove the Fulton County Action is "clear and does not turn on any disputed facts." *State of Georgia v. Meadows*, Dkt. #1 at 13.

doubts on that matter or wishes to explore any of the relevant legal issues prior to

making a ruling on the existence of removal jurisdiction as to the matters removed

here, Mr. Clark respectfully requests that the Court grant oral argument.

This 21st day of August 2023.

Respectfully submitted,

*/s/ Harry W. MacDougald*
Harry W. MacDougald
Georgia Bar No. 463076

Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

Attorney for Jeffrey B. Clark

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

The undersigned hereby certifies that this filing was prepared in the Times

New Roman size 14 font, in compliance with L.R. 5.1.

This 21st day of August 2023.

*/s/ Harry W. MacDougald*
Georgia Bar No. 463076
*Attorney for Defendant*

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing *Notice of Removal* (and its accompanying

exhibits) was hereby filed on August 21, 2023 and served on the persons listed below

by the methods indicated. I sign consistent with Federal Rule of Civil Procedure 11.

By email:

>    Fani Willis, Esq.
>    Nathan J. Wade, Esq.
>    Fulton County District Attorney's Office
>    136 Pryor Street SW
>    3rd Floor
>    Atlanta GA 30303
>    fani.willisda@fultoncountyga.gov
>    nathanwade@lawyer.com
>
>    The Honorable Christopher M. Carr
>    Office of the Attorney General of Georgia
>    40 Capitol Square, S.W.
>    Atlanta GA 30334
>    ccarr@law.ga.gov

I have also served this filing by email on the following counsel who to my

knowledge are representing other defendants named in the underlying indictment:

Drew Findling- drew@findlinglawfirm.com;
Marissa Goldberg- marissa@findlinglawfirm.com;
Jennifer Little- jlittle@jllaw.com;
Dwight Thomas- dwightl654@gmail.com

Craig Gillen -cgillen@gwllawfirm.com>
Anthony Lake -aclake@gwllawfirm.com;
Holly Pierson -hpierson@piersonlawllc.com

Kieran Shanahan -kieran@shanahanlawgroup.com

Tom Bever- tbever@sgrlaw.com;
Amy Buice-abuice@sgrlaw.com

Bruce Morris- bmorris@fmattorneys.com
Don Samuel- dfs@gsllaw.com
Amanda Clark Palmer- aclark@gsllaw.com

Richard Rice - richard.rice@trlfirm.com;
Chris Anulewicz - canulewicz@bradley.com

Scott Grubman - SGrubman@cglawfirm.com;
Manny Arora- manny@arora-law.com

Charles Burnham - charles@burnhamgorokhov.com

Laura Hogue- laura@hogueandhogue.com,
Frank Hogue- frank@hogueandhogue.com

Lynsey Barron -lynsey@barron.law,
Andrew Hall -andrew@h3-law.com

Brian Rafferty Brafferty@bakerlaw.com
Brian McEvoy - bmcevoy@bakerlaw.com

David Warrington - dwarrington@dhillonlaw.com
Mike Columbo- mcolumbo@dhillonlaw.com

Steve Greenberg - steve@greenbergcd.com

George J. Terwilliger , III- gterwilliger@mcguirewoods.com
Joseph Matthew Englert- jenglert@mcguirewoods.com
Michael Lee Francisco- mfrancisco@mcguirewoods.com

   This 21st day of August 2023.

                              /s/ Harry W. MacDougald
                              Georgia Bar No. 463076
                              *Attorney for Defendant Jeffrey B. Clark*

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

# Exhibit C

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

STATE OF GEORGIA,

   v.

JEFFREY BOSSERT CLARK,

   DEFENDANT.

Case No. _____

(Related to:

Case No. 1:23-cv-03621-SCJ)

Judge Steve C. Jones

On removal from the Fulton County Superior Court

---

### DEFENDANT JEFFREY B. CLARK'S EMERGENCY MOTION TO CONFIRM APPLICABILITY OF AUTOMATIC STAY UNDER 28 U.S.C. § 1446(D) OR THE TRIGGERING OF THE STAY IN 28 U.S.C. § 1455(B)(5) OR BOTH — OR IN THE ALTERNATIVE FOR AN ADMINISTRATIVE STAY

Pursuant to Local Civil Rule 7.2(B) ("Emergency Motions"), 28 U.S.C. § 1446(d) (automatic stay of state court proceedings in removed civil cases), and 1455(b)(5) (requirement for prompt hearing of criminal removals), Defendant Jeffrey Bossert Clark respectfully requests the Court to enter an emergency stay. This stay would run against the underlying Fulton County proceedings, including any attempted issuance or execution of arrest warrants, pending the Court's determination of whether Mr. Clark's case is properly removed to this Court pursuant to 28 U.S.C. § 1442, as well as the other grounds set forth in the Notice of

Removal filed contemporaneously with this Motion. As the Notice of Removal spells out, the removed matters involve both (1) a civil process (the Special Purpose Grand Jury ("SPGJ") Proceedings) and (1) a criminal process pursuant to a Fulton County indictment.

The SPGJ Proceedings were used as an investigative tool and as a lead-in to the criminal charges and the two sets of proceedings are thus inextricably linked to one another. The federal officer removal statute permits the removal of ancillary proceedings (whether the civil proceedings are deemed "ancillary" to the criminal proceedings or *vice versa*). *See* 28 U.S.C. § 1442(d)(1). Moreover, as explained in the Notice of Removal, the removed case is a civil-criminal hybrid action, which means that the automatic stay in Section 1446(d) should apply to prevent any arrest warrants being acted upon unilaterally by Fulton County, since the issuance of all process to bring parties before the court has now transferred to the Northern District of Georgia pursuant to 28 U.S.C. § 1447(a).

The grounds for removal of this action under 28 U.S.C. § 1442, permitting federal officers to remove criminal prosecutions or civil actions to federal court, are set forth in Mr. Clark's Notice of Removal. At all times relevant to the underlying conduct charged in the Fulton County, Georgia indictment against Mr. Clark, he was the Senate-confirmed Assistant Attorney General for the Energy and Natural Resources Division in the U.S. Department of Justice, and was also the Acting

Assistant Attorney General for the Civil Division. All of the charged conduct with respect to Mr. Clark was for or relating to conduct under color of such office and in the course and scope of his performance of federal officer duties and he is therefore entitled to removal. *See* 28 U.S.C. § 1442(a)(1). In addition, Mr. Clark asserts immunities and defenses arising under the Supremacy Clause of the United States Constitution, as well as under federal immunity law, lack of state court jurisdiction over federal officer conduct, the Opinion Clause, Take Care Clause, and the First Amendment. *See* Notice of Removal at ¶ 50.

Mr. Clark's right to invoke federal officer removal is clear and compelling. In the interests of brevity we respectfully refer the Court to the Notice of Removal, which we incorporate by reference.

Included among Mr. Clark's defenses under federal law is a complete immunity from suit itself, which entirely bars the prosecution brought against him by the Fulton County District Attorney.[1] The immunity bars even Mr. Clark's arrest for the charges against him in the indictment. "[W]e are of opinion that the governor [of the soldier's home] was not subject to that [state] law, and the [state] court had no jurisdiction to hear or determine the criminal prosecution in question,

---

[1] Mr. Clark also possesses a substantial defense based on insufficient contacts with the State of Georgia to permit the assertion of personal jurisdiction over him under the Due Process Clause of the Fourteenth Amendment. We reserve that defense, however, for presentation by separate motion at the appropriate time.

because the act complained of was performed as part of the duty of the governor, as a federal officer, in and by virtue of valid federal authority, and in the performance of that duty he was not subject to the direction or control of the Legislature of Ohio." *Ohio v. Thomas*, 173 U.S. 276, 283 (1899) (affirming habeas relief for federal officer arrested by the State of Ohio). *See also Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007) (cleaned up) ("basic purpose is to protect the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arres[t]' and bring 'to trial in a State cour[t] for an alleged offense against the law of the State,' 'officers and agents' of the Government 'acting ... within the scope of their authority.'") (internal citations omitted).

The indictment's affront to the constitutional supremacy of the federal government, and to the constitutional immunities of Mr. Clark, could hardly be greater.

Indeed, in disregard of Mr. Clark's clearly established rights under the Constitution and laws of the United States to immunity from state law prosecution in this context, the District Attorney and her staff filed the indictment and have— without any attempt to alert Mr. Clark or his counsel before doing so and without any attempt at service of process—apparently procured a warrant for Mr. Clark's arrest.

We only learned about the arrest warrants based on press accounts. *See* Graham Massie, *Fani Willis Announces Arrest Warrants for Trump and 18 Co-Defendants with Deadline to Turn Themselves In*, THE INDEPENDENT, *available at* https://www.the-independent.com/news/world/americas/us-politics/trump-arrest-warrant-georgia-indictment-b2393096.html (Aug. 15, 2023) (last visited Aug. 20, 2023) (circa minute 2, 41-second mark in embedded video ("I am giving the defendants the opportunity to voluntarily surrender, no later than noon on Friday, the twenty-fifth day of August 2023.").

The District Attorney and the Fulton County Sheriff (working together with the District Attorney) are stripped of power to order, process, or threaten unilateral arrests without the approval of this Court given the automatic stay commanded by Section 1446(d). And even if the District Attorney and/or Sheriff had this power, no true grace is involved in permitting "voluntary surrender." The Fulton County Sheriff runs one of the worst jails in the United States, currently under federal investigation for systematic and horrific violations of the constitutional rights of its inmates, so appalling that several inmates have died in custody in the last few months, including one poor soul who was found dead in a filthy cell covered with insect bites. *See* Deena Zaru and Tesfaye Negussie, *Georgia Man Found Dead in Bed Bug-Infested Jail Cell Died of 'Severe Neglect': independent autopsy*, ABC NEWS, available at https://abcnews.go.com/US/georgia-man-found-dead-bed-bug-

infested-jail/story?id=99506592 (Aug. 20, 2023); Angelique Proctor, *Another Inmate Dies as DOJ Continues Probe of Fulton County Jail*,  FOX 5 ATLANTA, *available at* https://www.fox5atlanta.com/news/another-inmate-dies-as-doj-continues-probe-of-fulton-county-jail (Aug. 20, 2023). Given his entitlement to removal under 28 U.S.C. § 1442 and his immunities from suit under federal law, Mr. Clark should not be forced to enter and stay in that jail for any reason.

Moreover, the time remaining before the District Attorney's deadline for surrender on 12:00 PM on August 25, 2023 is potentially too short for briefing and decision on the propriety of Mr. Clark's removal under 28 U.S.C. §§ 1331, 1441, 1442, 1446, and 1455. *See* Removal Notice at 1. For example, Defendant Mark R. Meadows has separately removed the case against him to this Court on August 15, 2023, one day after the indictment was issued at 10:30 PM. *See State of Georgia v. Meadows*, No. 1:23-cv-03621-SCJ, Dkt. 1 (N.D. Ga.) (pending). Moving with great dispatch, the Court in Mr. Meadows' case found on August 16, 2023 that his removal met the threshold requirements for removal and set an evidentiary hearing for August 28, 2023. *Id*. at Dkt. 6. But even on that accelerated schedule, no decision will have been made by the time the District Attorney's deadline for surrender passes on

August 25, 2023. And since Mr. Clark's removal is filed six days after Mr. Meadows' removal, Mr. Clark's timeline is even more compressed.[2]

Therefore, to preserve both the overarching federal interests under the Supremacy Clause and Mr. Clark's constitutional immunities pending the Court's resolution of whether further state level proceedings are stayed pursuant to Section 1446(d)'s automatic stay applicable (1) to civil matters and/or (2) to the stay that will apply once this Court finds that Mr. Clark's and Mr. Meadows' removals are proper, Mr. Clark asks the Court either to grant a stay (or a temporary restraining order) against Fulton County **on or before 5 pm Tuesday, August 22, 2023** or to grant an administrative stay as we describe below. If the Court grants a stay or TRO that quickly, Mr. Clark would not need to be put the choice of making rushed travel arrangements to fly into Atlanta or instead risking being labeled a fugitive.

Alternatively, if the Court wishes more time to consider whether the automatic stay in Section 1446(d) applies or whether to make the determination that will impose the discretionary stay in Section 1455(b)(5), then we would request that the Court freeze the *status quo* by issuing a temporary administrative stay that would not expire until ***September 5, 2023***—the day after Labor Day. The proposed

---

[2] For the reasons explained in the Clark Notice of Removal, the earliest any removal notice would truly have been due would have been September 13, 2023. So District Attorney Willis is not providing a true grace period to former federal officers like Messrs. Clark and Meadows.

administrative stay would specifically apply to prevent the issuance of or execution of any arrest warrant against Mr. Clark, whether by extradition or otherwise.

Relatedly, Mr. Clark suggests that an emergency briefing schedule be ordered that fits within the additional days provided by granting an administrative stay. It is designed to allow the Court the necessary time to decide the matter such that either Mr. Clark is not required to book a flight to Georgia under such extreme time pressure (and potentially leading to District Attorney Willis making the argument that he has voluntarily accepted that he is subject to the criminal jurisdiction of Fulton County, which Mr. Clark decidedly does not accept), or to give Mr. Clark time to consider his appellate options. It would be inappropriate and unjust to allow District Attorney Willis to require Mr. Clark to surrender himself before noon on Friday, August 25, especially not before this Court has issued a considered decision on the issue of whether Section 1446(d) or Section 1455(b)(5)'s stay provisions (or both) apply or not.

The suggested briefing schedule is as follows:

1.      State Response to the Grounds for Removal Presented in Notice of Removal by **Thursday August 24, 2023**.

2.      Clark Reply in Support of Removal **by Monday August 28, 2023**.

3.      Hearing on **August 29 or 30, 2023** (where Mr. Clark would be represented by counsel and not travel to Atlanta to appear personally).

4.      Ruling by this Court by **Thursday August 31, 2023**.

5.      If an automatic stay is not confirmed under Section 1446(d) or the Section 1455(b)(5) stay is not triggered, Mr. Clark, would evaluate his interlocutory appeal options or alternatively decide to present himself to Fulton County personnel **on or before Tuesday September 5, 2023**, when the administrative stay would lapse.

## CONCLUSION

The emergency stay sought here, the request in the alternative for an administrative stay until September 5, 2023, and the proposed interim briefing schedule if the administrative stay option is granted by the Court are necessary to protect and preserve federal supremacy, pending a determination of whether the State may proceed at all with its prosecution of Mr. Clark.

This 21st day of August 2023.

Respectfully submitted,

*/s/ Harry W. MacDougald*
Harry W. MacDougald
Georgia Bar No. 463076

Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

*Attorney for Jeffrey B. Clark*

9

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

The undersigned hereby certifies that this filing was prepared in the Times

New Roman size 14 font in compliance with L.R. 5.1.

This 21st day of August 2023.

_/s/ Harry W. MacDougald_
Georgia Bar No. 463076
_Attorney for Defendant_

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing **_Emergency Motion to Confirm Applicability of Automatic Stay Under 28 U.S.C. § 1446(d) or Triggering of the Stay in 28 U.S.C. § 1455(b)(5) or Both — or in the Alternative for an Administrative Stay_** was hereby filed on August 21, 2023 and served on the persons listed below by the methods indicated.

By email delivery:

> Fani Willis, Esq.
> Nathan J. Wade, Esq.
> Fulton County District Attorney's Office
> 136 Pryor Street SW
> 3rd Floor
> Atlanta GA 30303
> fani.willisda@fultoncountyga.gov
> nathanwade@lawyer.com

> The Honorable Christopher M.  Carr
> Office of the Attorney General of Georgia
> 40 Capitol Square, S.W.
> Atlanta GA 30334
> ccarr@law.ga.gov

I have also served this filing by email on the following counsel who to my knowledge are representing other defendants named in the underlying indictment:

Drew Findling - drew@findlinglawfirm.com;
Marissa Goldberg - marissa@findlinglawfirm.com;
Jennifer Little - jlittle@jllaw.com;
Dwight Thomas - dwightl654@gmail.com

Craig Gillen - cgillen@gwllawfirm.com>
Anthony Lake - aclake@gwllawfirm.com;
Holly Pierson - hpierson@piersonlawllc.com

Kieran Shanahan - kieran@shanahanlawgroup.com

Tom Bever - tbever@sgrlaw.com;
Amy Buice - abuice@sgrlaw.com

Bruce Morris - bmorris@fmattorneys.com
Don Samuel - dfs@gsllaw.com
Amanda Clark Palmer- aclark@gsllaw.com

Richard Rice - richard.rice@trlfirm.com;
Chris Anulewicz - canulewicz@bradley.com

Scott Grubman - SGrubman@cglawfirm.com;
Manny Arora - manny@arora-law.com

Charles Burnham - charles@burnhamgorokhov.com

Laura Hogue - laura@hogueandhogue.com,
Frank Hogue -  frank@hogueandhogue.com

Lynsey Barron - lynsey@barron.law,
Andrew Hall - andrew@h3-law.com

Brian Rafferty - Brafferty@bakerlaw.com
Brian McEvoy - bmcevoy@bakerlaw.com

David Warrington - dwarrington@dhillonlaw.com
Mike Columbo - mcolumbo@dhillonlaw.com

Steve Greenberg - steve@greenbergcd.com

George J. Terwilliger , III - gterwilliger@mcguirewoods.com
Joseph Matthew Englert - jenglert@mcguirewoods.com
Michael Lee Francisco - mfrancisco@mcguirewoods.com

    This 21st day of August 2023.

        */s/ Harry W. MacDougald*
        Georgia Bar No. 463076
        *Attorney for Defendant Jeffrey B. Clark*

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **THE STATE OF GEORGIA,** | **CIVIL ACTION FILE** |
| **v.** | **No. 1:23-CV-03721-SCJ** |
| **JEFFREY BOSSERT CLARK,** | **RE: NOTICE OF REMOVAL OF FULTON COUNTY SUPERIOR COURT INDICTMENT NO. 23SC188947** |
| **Defendant.** | |

**<u>ORDER</u>**

This matter appears before the Court on Defendant Jeffery Clark's Emergency Motion to Confirm Applicability of Automatic Stay Under 28 U.S.C. § 1446(d) or the Triggering of the Stay in 28 U.S.C. § 1455(b)(5) or both—or in the alternative for an administrative stay.[1] Doc. No. [2]. Having received the Fulton County District Attorney's response in opposition (Doc. No. [8]) and upon its own review of the Motion, the Court **DENIES** Clark's Motion for an Emergency Stay.

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

On August 22, 2023, Clark filed a notice of removal of the criminal prosecution against him and of the Fulton County Special Purpose Grand Jury proceedings. Doc. No. [1], 1. Attached to the notice of removal is the indictment that was returned by a Fulton County regular Grand Jury on August 14, 2023. Doc. No. [1-1]. In his notice of removal, Clark argues that this Court has jurisdiction over these State proceedings because he is a federal officer (Doc. No. [1], 21–28). See 28 U.S.C. § 1442(a). Clark also indicates that he removes his case as both a civil and a criminal matter (or as a "criminal-civil hybrid" matter (id. at 31)) under both 28 U.S.C. § 1446 (for civil cases originating in state courts) and § 1455 (for criminal cases originating in state courts). Id. at 31–34. He asserts that the civil portion of this case arises from the Special Grand Jury Proceedings instigated as an investigative tool under O.C.G.A. § 15-12-100, *et seq.*, prior to the regular Grand Jury directly issuing the indictment against him. Id.; see also Doc. No. [2], 2 (indicating that the Special Purpose Grand Jury proceedings "were used as an investigative tool and as a lead-in to the criminal charges.").

Simultaneously with his notice of removal, Clark filed the instant Emergency Motion to Stay the State's criminal proceedings, namely to enjoin "any attempted issuance or execution of arrest warrants[.]" Doc. No. [2], 1. Clark

contends that the stay is appropriate first (as a civil matter) under Section 1446(d)'s automatic stay of the underlying state court proceedings, and under Section 1455(b)(5) (as a criminal matter) over which the Court can assume jurisdiction. Id. at 7–8. Alternatively, Clark asks the Court to issue a temporary administrative stay to maintain the status quo while the Court decides these issues. Id.

The Court denies Clark's Emergency Motion. Clark seeks a stay that "would run against the underlying Fulton County proceedings, including any attempted issuance or execution of arrest warrants." Doc. No. [2], 1. The instant Fulton County proceedings (including any arrest warrant against Clark), arise from the criminal indictment returned by the regular Grand Jury, not the Special Purpose Grand Jury. See Kenerly v. Georgia, 311 Ga. App. 190, 193, 715 S.E.2d 688, 691 (2011) (reviewing Georgia law and stating that "[t]here is no language in the[ ] [Georgia] Code sections granting a special grand jury the power to indict following its investigation").

Clark admits, and the Court agrees, that the indictment presents "plainly a criminal case." Doc. No. [1], 22. Under the statutory scheme for removal, however, criminal prosecutions are removed to federal courts only under

3

28 U.S.C. § 1455. See, e.g., Alabama v. Thomason, 687 F. App'x 874, 876 (11th Cir. 2017) (affirming a district court's reasoning that "the statutes pertaining to removal of civil actions were inapplicable to [a] criminal case."); California v. Abdel-Malak, No. CV420-232, 2020 WL 6342658, at *2 (S.D. Ga. Oct. 7, 2020), report and recommendation adopted, No. 4:20-CV-232, 2021 WL 96978 (S.D. Ga. Jan. 11, 2021) ("Civil and criminal cases, even if arising from a common nexus of events, are distinct creatures . . . [including] the separate statutes governing of civil and criminal removal . . . ." (citing 28 U.S.C. § 1446 (for civil cases) and § 1455 (for criminal cases)).

As the ongoing Fulton County criminal proceedings and forthcoming arrest warrant arise from the criminal indictment in a criminal action, Section 1455 governs. And Section 1455 specifically indicates that, until the federal court assumes jurisdiction over a state criminal case,[2] the state court retains jurisdiction over the prosecution and the proceedings continue despite

---

[2] As a general matter, a federal court assuming jurisdiction over a state criminal prosecution follows the statutory requirements in 28 U.S.C. § 1455(b), which requires determining if summary remand is appropriate and holding an evidentiary hearing to assess federal jurisdiction. The Court has not made these determinations or held an evidentiary hearing and thus denies as premature Clark's request to assume jurisdiction under Section 1455(b)(5).

the notice of the removal. <u>See</u> 28 U.S.C. § 1455(b)(3) ("The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further . . . ."). Indeed, the Court's research has found that Section 1455(b)(3) has been followed even in cases where a criminal defendant, who had filed a notice of removal in federal court, was required to proceed to trial in the state court. <u>Simmons v. City of Warren</u>, No. CV 19-11531, 2020 WL 520956, at *1 n. 2 (E.D. Mich. Jan. 6, 2020), <u>report and recommendation adopted</u>, No. 19-11531, 2020 WL 515866 (E.D. Mich. Jan. 31, 2020) ("[Defendant's] petition for removal did not preclude the trial from going forward . . . .").

Accordingly, the Court **DENIES** Clark's Emergency Motion for a Stay of the State's criminal proceedings (Doc. No. [2]), inclusive of the alternative motion for an administrative stay. The Court specifically finds that, pursuant to 28 U.S.C. § 1455(b)(3), the Fulton County proceedings remain ongoing at this time as there has been no triggering of a stay under 28 U.S.C. § 1455(b)(5). Moreover, the Court denies Clark's request to enter an administrative stay because Clark did not cite any authority for the Court to enter a temporary administrative stay (Doc. No. [2], 7–8), various abstention doctrines and principals of federalism counsel

against a federal court entering a stay of a state court's judicial proceedings (see

Doc. No. [8], 9–12), and Section 1455's statutory framework indicates the Fulton

County proceedings should presently continue despite the notice of removal.

Finally, at this time, the Court declines to comment further on Clark's arguments

relating to the purported civil removal of the Special Grand Jury Proceedings or

the consequences of such determination under 28 U.S.C. § 1446.[3]

IT IS SO ORDERED this __23rd__ day of August, 2023.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

---

[3] The Court acknowledges, however, that the District Attorney disputes that the Special
Grand Jury Proceedings were civil in nature. Doc. No. [8], 6–7.

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **THE STATE OF GEORGIA** | **CIVIL ACTION FILE** |
| **v.** | **No. 1:23-CV-03721-SCJ** |
| **JEFFREY BOSSERT CLARK,** | **RE: NOTICE OF REMOVAL OF FULTON COUNTY SUPERIOR COURT INDICTMENT NO. 23SC188947** |
| **Defendant.** | |

## ORDER

This matter appears before the Court following Defendant Jeffrey Bossert Clark's Notice of Removal.[1] Doc. No. [1]. The Court enters the following Order to satisfy the statutory requirements for the removal of state criminal prosecutions. See 28 U.S.C. § 1455(b). For the following reasons, the Court concludes that summary remand under 28 U.S.C. § 1455(b)(4) is not required based on the face of Clark's Notice of Removal and its attachments, and that an evidentiary hearing will be held under 28 U.S.C. § 1455(b)(5).

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

## I.    BACKGROUND

Clark is one of 19 Defendants named in the Superior Court of Fulton County, Georgia indictment (filed on August 14, 2023) arising from election-related activities in Georgia for the 2020 Presidential election. Clark is charged with being part of a Georgia Racketeer Influenced and Corrupt Organizations Act (RICO) conspiracy and for Criminal Attempt to Commit False Statements and Writings. Doc. No. [1-1], 14, 84. At the time of the acts alleged in the indictment, Clark served as an Assistant Attorney General for the United States Department of Justice (DOJ) in two divisions. Doc. No. [1], 6. The allegations against Clark specifically involve soliciting the Attorney General and the Deputy Attorney General (through email correspondence and at a meeting) to authorize a document with a false statement that DOJ had "identified significant concerns that may have impacted the outcome of the election in multiple State's, including the State of Georgia" to transmit to various Georgia public officials. Doc. No. [1-1], 46 (RICO Act 98), 47 (RICO Act 99), 51 (RICO Act 111), 84 (Count 22); see also id. at 51 (alleging, as RICO Act 110, that Clark participated in a phone call with co-Defendant Scott Graham Hall regarding the Presidential election in Georgia).

2

On August 21, 2023, Clark filed his Notice of Removal of the Criminal Indictment in this Court.[2] Doc. No. [1]. Clark asserts federal jurisdiction under 28 U.S.C. § 1442(a)(1), contending that he was a federal officer acting under the color of his office at the time of the acts alleged in the indictment.[3] Id. at 15 (indicating that Clark "served as the Assistant Attorney General over two federal Department of Justice Divisions in the rough time frame of December 28, 2020 to January 3, 2021"), 19 ("The incontrovertible evidence that Mr. Clark was a federal officer during the time of the allegations against him are voluminous.").

The Court now must determine if it clearly lacks subject matter jurisdiction over Clark's removal action, which would require summary remand. See 28 U.S.C. § 1455(b)(4).

---

[2] Clark simultaneously filed an emergency motion seeking to stay the state proceedings, which the Court denied. Doc. Nos. [2]; [9].

[3] Clark raises additional jurisdictional arguments, including that this removal is a "criminal-civil hybrid" due to the Special Grand Jury Proceedings which investigated the acts in the indictment and thus the case can be removed under 28 U.S.C. § 1446. As Clark clearly seeks to remove the State criminal prosecution against him, the Court must consider 28 U.S.C. § 1455. In this Order, the Court does not comment on Clark's other assertions of jurisdiction. The Court, however, expects to hear evidence and argument on all Clark's bases of jurisdiction in the responsive briefing on Clark's notice of removal and at the evidentiary hearing.

## II.    LEGAL STANDARD[4]

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). One such jurisdictional statute provides federal jurisdiction over "any officer (or any person acting under that officer) of the United States" for "any act under color of such office." 28 U.S.C. § 1442(a)(1). Federal officer removal "is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." Florida v. Cohen, 887 F.2d 1451, 1453 (11th Cir. 1989) (citing Willingham v. Morgan, 395 U.S. 402, 405 (1969)). Section 1442(a)(1) removal requires "first, the case must be against any officer, agency, or agent of the United States for any act under color of such office; and second, the federal actor or agency being challenged must raise a colorable defense arising out of its duty to enforce federal law." Id. at 1453–54. "[R]egardless of whether the federal court would have had jurisdiction over the matter had it originated in federal

_____

[4]  The same legal standard applies to this Court's Order on Clark's removal action as the Court set forth in the prior summary remand order in co-Defendant Mark Randall Meadows's case. See Georgia v. Mark Randall Meadows, No. 1:23-cv-03621-SCJ (N.D. Ga.), ECF No. [6] (Summary Remand Order).

court, once the statutory prerequisites to § 1442(a)(1) are satisfied, § 1442(a)(1) provides an independent jurisdictional basis." Id. at 1454.

28 U.S.C. § 1455 allows specifically for the removal of a state criminal prosecution under certain conditions. Procedurally, the notice of removal must be filed "not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier" and must contain "all grounds for such removal." 28 U.S.C. § 1455(b)(1)–(2). Upon receiving the notice of removal, the federal district court must "examine the notice promptly" and determine if summary remand ought to be granted based on a clear lack of jurisdiction from "the face of the notice and any exhibits annexed thereto . . . ." Id. § 1455(b)(4). If summary remand is not ordered, then the district court must "promptly" hold an evidentiary hearing to determine "disposition of the prosecution as justice shall require." Id. § 1455(b)(5). Moreover, the filing of a notice of removal of a criminal prosecution under Section 1455 "shall not prevent the State court in which such prosecution is pending from proceeding further" even though a "judgment of conviction" cannot be entered until the prosecution is remanded. 28 U.S.C. § 1455(b)(3).

5

## III.   ANALYSIS

The Court first determines that Clark's removal action meets the procedural prerequisites of 28 U.S.C. § 1455(b)(1) and (2). Clark removed this criminal proceeding one-week after the indictment had been filed and before his arraignment. He thereby satisfies the timing requirements of Section 1455(b)(1). His notice of removal, moreover, contains the basis for removal and federal jurisdiction as required of Section 1445(b)(2).

The Court must also determine if Clark's basis of federal jurisdiction survives the summary remand inquiry. Cf. Maine v. Counts, No. 22-1841, 2023 WL 3167442, at *1 (1st Cir. Feb. 16, 2023) ("28 U.S.C. § 1455 'merely provides procedures that must be followed in order to remove a criminal case from state court when a defendant has the right to do so under another provision.'" (quoting Kruebbe v. Beevers, 692 F. App'x 173, 176 (5th Cir. 2017)). Specifically, the Court must look to see "if it *clearly appears* . . . that removal should not be permitted." Id. § 1455(b)(4) (emphasis added). If a removing party fails to adequately show the requirements of the underlying basis for federal jurisdiction, then the state criminal prosecution cannot be removed to federal court. See, e.g., United States v. Raquinio, No. CV 23-00231 JMS-WRP, 2023 WL

6

3791638, at *2 (D. Haw. June 2, 2023) (rejecting removal under Section 1455 based on federal officer jurisdiction because the removing party failed to allege that he was a federal officer or agent); cf. also Hammond v. Georgia, No. 1:18-CV-5553-CAP-AJB, 2018 WL 10626009, at *2 (N.D. Ga. Dec. 21, 2018), report and recommendation adopted, No. 1:18-CV-5553-CAP, 2019 WL 8375921 (N.D. Ga. Jan. 16, 2019). Gilmore v. Glynn Cnty. Superior Ct., No. 2:18-CV-68, 2018 WL 6531685, at *2 (S.D. Ga. Dec. 12, 2018), report and recommendation adopted, No. 2:18-CV-68, 2019 WL 339629 (S.D. Ga. Jan. 28, 2019).

Here, the Court is satisfied that Clark's Notice of Removal and its attachments (including the Indictment) do not require summary remand. Clark asserts federal jurisdiction based on federal officer removal under 28 U.S.C. § 1442. For federal officer jurisdiction, "the case must be against any officer, agency, or agent of the United States for any act under color of such office" and "the federal actor or agency being challenged must raise a colorable defense arising out of its duty to enforce federal law." Cohen, 887 F.2d at 1453–54.

Clark submits that he was a federal officer because he was the Assistant Attorney General in two DOJ divisions (the Environment and Natural Resources Division and the Civil Division). Doc. No. [1], 15–16. As evidence, Clark cites to

Supreme Court cases indicating his status in the DOJ and his resignation letter to President Trump. Id. at 19–20. Clark further contends that the acts of soliciting the allegedly false document to send to Georgia public officials "were in his role as a senior official of [the Justice] Department" (id. at 17) and that the communications between himself and the Attorney General and Deputy Attorney General occurred "at the apex of the Justice Department, as federal officers" (id. at 18). Clark also purports to raise a number of defenses to these charges, including (among others) Supremacy Clause immunity, the Opinion Clause, the Take Care Clause, and the First Amendment Petition Clause. Id. at 26.

The foregoing assertions are sufficient to withstand summary remand under Section 1455(b)(4). The Court emphasizes that this Order offers no opinion on the Court's ultimate determination of its subject matter jurisdiction over this case or Clark's federal defenses. Pursuant to 28 U.S.C. § 1455(b)(5), the Court will make its final determination on these matters once they have been completely argued and briefed and are ripe for the Court's full review. To reiterate, this Order's limited conclusion is that the Court, based solely on the face of the Notice of Removal and its attachments, does not clearly lack subject matter jurisdiction.

Thus, the Court will proceed with an evidentiary hearing pursuant to 28 U.S.C. § 1455(b)(5).

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes the face of the Notice of Removal (Doc. No. [1]) and its attachments do not clearly indicate that summary remand of this matter is required. No opinion is being made at this time about whether removal will be permitted or if any of Clark's federal defenses are meritorious.

Pursuant to 28 U.S.C. § 1455(b)(5), the Court **ORDERS** that the Parties participate in an evidentiary hearing concerning the Notice of Removal of the Indictment against Jeffrey Bossert Clark on **Monday, September 18, 2023**, at **9:30 A.M.** at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia, in Courtroom 1907.

The Fulton County District Attorney's Office may submit a written response to Clark's Notice of Removal no later than **Tuesday September 5, 2023**. Any response submitted must not exceed **25 pages** in length.[5]

---

[5] On August 23, 2023, an amicus curiae filed a Motion for Leave to File a Brief by Former Judges, Prosecutors, and State and Federal Executive Officials. Doc. No. [13]. The Court

In the interim, pursuant to 28 U.S.C. § 1455(b)(3), proceedings may continue in the Superior Court of Fulton County, Georgia.

IT IS SO ORDERED this ___24th___ day of August, 2023.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

---

ORDERS any opposition response to the amicus curiae motion be filed by **Monday, August 28, 2023**. As this motion is still pending, the Court has not relied on its contents in this summary remand Order.

# Exhibit F



FILED IN OFFICE

AUG 2 9 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| IN RE 2 MAY 2022 SPECIAL PURPOSE GRAND JURY -- SUBPOENA FOR GOVERNOR KEMP | 2022-EX-000024 |

## ORDER DENYING MOTION TO QUASH

On 20 January 2022, the District Attorney of Fulton County, the elected official responsible for investigating, charging, and prosecuting felony criminal offenses in this Circuit, petitioned the Chief Judge of the Superior Court of Fulton County to convene the entire Superior Court bench to consider the District Attorney's request for a special purpose grand jury. That grand jury's charter, if approved, would be to conduct a criminal investigation into "the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia" and to prepare a report and recommendation for the District Attorney advising her whether she should seek to prosecute anyone for such potential crimes. On 24 January 2022, the Chief Judge, having received a majority of the twenty judges' assent, issued an Order authorizing the convening of a special purpose grand jury for this criminal investigation.[1]

On 2 May 2022, the special purpose grand jury was selected and sworn in; in June 2022 it began receiving evidence and investigating the possibility of criminal interference in the 2020 general election. On 4 August 2022, the District Attorney issued a subpoena to Governor Brian Kemp; that subpoena, just like those received by the Attorney General

---

[1] Nothing in the convening request (or the subsequent convening Order) indicated that the District Attorney, the Superior Court bench, or the special purpose grand jury would be considering civil violations or the possibility of bringing any civil action. The focus and purpose were and have been ever since to investigate *criminal* violations and consider *criminal* charges.

1

and the Secretary of State, directed the Governor to appear before the special purpose grand jury so that that investigative body could learn more about whether criminal conduct had occurred in connection with alleged efforts to interfere with the 2020 general election in Georgia.  According to both the pleadings from and the lawyers for the Governor and the District Attorney, this subpoena came only after weeks of tortured and tortuous negotiations over obtaining an interview with the Governor -- the details of which do not bear repeating here, other than to note that both sides share responsibility for the torture and the tortuousness.

The date of the Governor's subpoenaed appearance before the special purpose grand jury was changed at least once, at his lawyer's request.  On the eve of the most recently agreed-upon date for the Governor to appear, his lawyers filed a motion to quash the subpoena.  The motion invoked sovereign immunity and asserted that this Court lacked jurisdiction to issue, enforce, or even consider the subpoena.  The State promptly responded and, on 25 August 2022, the Court held a public hearing on the matter.  Having considered the pleadings, oral arguments, and relevant case law, the Court finds that it does enjoy jurisdiction and that the subpoena should not be quashed; the motion is DENIED.  However, the Court will delay the Governor's appearance before the special purpose grand jury until some date soon after the 8 November 2022 general election.

*        *        *

In Georgia, one cannot sue "the State" unless the State has enacted a specific waiver, legislative or constitutional, that permits a particular species of civil claim -- tort, contract, declaratory judgment, etc. -- to be brought against it.  That is, the State and its agencies and agents (of which the Governor is one) enjoy sovereign immunity, a constitutional doctrine that "forbids our courts to entertain a lawsuit against the State

2

without its consent." *Lathrop v. Deal*, 301 Ga. 408, 408 (2017); *see also* Ga. Const. art. I, § 2, ¶ IX(e). Absent that consent, Georgia's courts lack jurisdiction to consider the claim brought against the State. *McConnell v. Dept. of Labor*, 302 Ga. 18, 18-19 (2017) (if sovereign immunity applies, a court "lacks authority to decide the merits of a claim that is barred"); *see also City of Coll. Park v. Clayton Cnty.*, 306 Ga. 301, 314-15 (2019).

Both sides agree with the foregoing -- as they should, as it is well-settled law. Where they diverge is whether sovereign immunity applies in the context of this special purpose grand jury's criminal investigation. The Governor insists he is immune to the subpoena because there is no waiver, legislative or constitutional, that would allow the grand jury to require him (or, presumably, any other state agent, including the Secretary of State and Attorney General[2]) to appear in what he characterizes as a civil proceeding. The District Attorney argues that sovereign immunity does not apply in this context because, first, there is no lawsuit being brought against the State (or the Governor), and second, sovereign immunity simply has no application in criminal matters.

The Governor relies primarily on *State v. Bartel,* 223 Ga. App. 696 (1996), in support of his claim that what this special purpose grand jury is doing is conducting a civil investigation.[3] *Bartel* does not provide the support his claim needs because *Bartel* does

[2] Who, interestingly, is the lead signatory on the Governor's motion seeking quashal (despite having himself appeared before the special purpose grand jury without incident, objection, or invocation of the doctrine of sovereign immunity).

[3] He additionally relies on two cases that establish that a grand jury cannot conduct *civil* investigations of state offices and officials; rather, a grand jury's civil authority is limited by statute -- and likely by sovereign immunity, although these cases do not reach that doctrine -- to investigations of county-level entities. These cases are inapposite because this special purpose grand jury is engaged in a criminal investigation. Moreover, one of the two cases, *Floyd Cnty. Grand Jury v. Dep't of Family & Children Servs.*, 218 Ga. App. 832 (1995), suggests, albeit in dicta, that had the grand jury in that case been engaged in a criminal investigation, it would have been authorized to subpoena state agents. The Governor's legal team also points the Court to *Kenerly v. State*, 311 Ga. App. 190 (2011), but that case merely reaffirmed what the District Attorney has always acknowledged: special purpose grand juries do not have the authority to issue indictments. *Kenerly* in no way prohibits special purpose grand juries from engaging in criminal investigations and indeed the special purpose grand jury impanelment statute explicitly allows it. O.C.G.A.

3

not say what he says it does. In *Bartel*, a witness who had appeared before a special purpose grand jury in Floyd County was later prosecuted for allegedly having perjured himself while testifying. The *Bartel* special purpose grand jury was convened to conduct a civil investigation into "alleged irregularities in the operations of the Floyd County Hospital Authority." 223 Ga. App. at 696. Contrary to the Governor's presentation at the hearing on his motion to quash, the court in *Bartel* did *not* "conclude[] that special purpose grand juries conduct only civil investigations." (Movant's PowerPoint at Slide 3). No such language can be found in *Bartel*, which dealt with the nature of the oath the witnesses took before testifying.[4] It is correct to say that the special purpose grand jury in *Bartel* had, as its purpose, a civil investigation. It is incorrect to say that the Court of Appeals in *Bartel* in any way concluded that the *only* purpose a special purpose grand jury can have is civil.

Which brings us back to *this* special purpose grand jury. As described at the outset of this Order, its purpose is unquestionably and exclusively to conduct a criminal investigation: its convening was sought by the elected official who investigates, lodges, and prosecutes criminal charges in this Circuit; its convening Order specifies its purpose as the investigation of possible criminal activities; and its final output is a report recommending whether criminal charges should be brought. Unlike the special purpose grand jury in *Bartel*, it is not investigating "irregularities" in hospital administration. It

---

§ 15-12-100(a) ("The chief judge of the superior court of any county ... on his or her own motion [or] on motion or petition of the district attorney ... may request the judges of the superior court of the county to impanel a special grand jury for the purpose of investigating any alleged violation of the laws of this state....). That a special purpose grand jury engaged in a criminal investigation cannot issue an indictment does not diminish the criminal nature of its work or somehow transmogrify that criminal investigation into a civil one. Police officers, too, lack the authority to indict anyone, but their investigations are plainly criminal.

[4] Indeed, hopefully due only to inadvertence, the Governor's legal team, in its visual presentation making this unfounded claim about the holding of *Bartel*, directed the Court via citation to a page of the opinion (699) that does not exist.

will not be recommending whether anyone should be sued or should be referred for civil administrative proceedings; it will be recommending whether anyone should be prosecuted for crimes. Put simply, there is nothing about this special purpose grand jury that involves or implicates civil practice.[5]

Because neither the special purpose grand jury nor the District Attorney has brought (or is even contemplating) a lawsuit (*i.e.*, a civil proceeding) against the Governor, his office, or any of his agents, there is no sovereign immunity to invoke. Again, to quote *Lathrop*, that doctrine "forbids our courts to entertain a lawsuit against the State without its consent." 301 Ga. at 408. It is clear that the Governor is not consenting to this subpoena. It is also clear that his lack of consent is of no jurisdictional moment to this Court because there is before it no civil proceeding, suit, or action. The Governor must honor the subpoena -- as have the Secretary of State and the Attorney General and many other agents of the State in these criminal proceedings. Sovereign immunity wards off civil actions, not criminal ones.[6]

Given that decision, the Court turns next to the process concerns raised by the Governor: about what must he testify and when? As with several other witnesses who, in response to their lawful subpoenas, raised concerns about various privileges, the Governor's questioning will have limits. Neither the District Attorney nor the grand

---

[5] The one exception to date has been the lack of civility among the attorneys involved. As the streams of publicly revealed e-mails demonstrate, that all-too-common and always unwelcome aspect of civil litigation has intruded upon these criminal proceedings.

[6] That this is so was made all the more plain at the hearing by (1) the fact that *every* sovereign immunity case the Governor's well-resourced legal team cited in court and in its motion to quash involved civil proceedings; (2) the Court's observation that "the State" is the ultimate instigator of any legal proceedings that will flow from this investigation (*i.e.*, an indictment styled "The State of Georgia versus Defendant X"), which would explain why there are no "criminal" sovereign immunity appellate cases asserting that the State is immune from itself; and (3) the District Attorney's apt example of what would happen in a world in which sovereign immunity applied to criminal actions: police officers could flout subpoenas, GBI forensic experts could resist summonses on the basis that they work at the State level and not the "local" level, etc.

jurors may ask the Governor about the contents of any attorney-client privileged communications. The Court is aware of several conversations of interest to the investigation in which the Governor participated and to which the attorney-client privilege applies. As with those other witnesses, questioning must cease about the contents of the communications if the privilege is validly raised. Undoubtedly, other issues will arise that do not fall neatly into this category of privilege. If they cannot be resolved by the fleet of lawyers on each side, they should be brought to the Court for resolution (or at least helpful direction).[7]

Remaining is the question of when the Governor will need to honor his subpoena. The answer is after the 8 November 2022 general election. The Governor is in the midst of a re-election campaign and this criminal grand jury investigation should not be used by the District Attorney, the Governor's opponent, or the Governor himself to influence the outcome of that election. The sound and prudent course is to let the election proceed without further litigation or other activity concerning the Governor's involvement in the special purpose grand jury's work. Once the election is over, the Court expects the Governor's legal team promptly to make arrangements for his appearance.[8]

SO ORDERED this 29th day of August 2022.

_Judge Robert C.I. McBurney_
Judge Robert C.I. McBurney
Superior Court of Fulton County
Atlanta Judicial Circuit

---

[7] The Court declines the Governor's invitation to import wholesale into Georgia law the concept of executive privilege. Its time may come, but this is not it.

[8] The Court also declines to issue a certificate of immediate review of this decision because it is clear that sovereign immunity does not apply to criminal matters. _See Rivera v. Washington_, 298 Ga. 770, 777 (2016) (recommending issuance of certificate of immediate review when resolution of immunity issue is not clear).