**No. 23-13368**

# In the United States Court of Appeals for the Eleventh Circuit

THE STATE OF GEORGIA

*Plaintiff-Appellee,*

v.

JEFFREY B. CLARK

*Defendant-Appellant*

On Appeal from the United States District Court
for the Northern District of Georgia, Atlanta Division,
No. 1: 23-cv-03721-SCJ

## BRIEF FOR DEFENDANT-APPELLANT JEFFREY B. CLARK

**CALDWELL, CARLSON, ELLIOTT & DELOACH, LLP**

HARRY W. MACDOUGALD
Georgia Bar No. 463076
Two Ravinia Drive
Suite 1600
Atlanta, GA 30346
(404) 843-1956
hmacdougald@ccedlaw.com

**BERNARD & JOHNSON, LLC**

CATHERINE S. BERNARD
Georgia Bar No. 505124
5 Dunwoody Park, Suite 100
Atlanta, Georgia 30338
Direct phone: 404.432.8410
catherine@justice.law

*Counsel for Defendant-Appellant Jeffrey B. Clark*

## CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

To the best of Appellant's knowledge, no associations of persons, partnerships, or corporations have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock.

The following is a list, in alphabetical order, of all trial judges, attorneys, law firms, and persons with an interest in this appeal by virtue of their appearance in the underlying criminal matter in Fulton Superior Court:

1. Alksne, Cynthia, *amicus* below

2. Anulewicz, Christopher Scott, attorney for Robert David Cheeley

3. Arora, Manubir, attorney for Kenneth John Chesebro

4. Aul, Francis, attorney for Mark R. Meadows

5. Ayer, Donald B., *amicus* below

6. Barron, Lynsey M., attorney for Scott Graham Hall

7. Beckermann, Wayne R., attorney for Robert David Cheeley

8. Bernard, Catherine S., attorney for Defendant Jeffrey B. Clark

9. Bever, Thomas Dean, attorney for Shawn Micah Tresher Still

10. Bittman, Robert, attorney for Mark R. Meadows

11. Bondurant Mixson & Elmore LLP

i

12. Carr, Christopher M., Attorney General of the State of Georgia

13. Cheeley, Robert David, Defendant in Georgia v. Trump

14. Chemerinsky, Erwin, *amicus* below

15. Chesebro, Kenneth John, Defendant in Georgia v. Trump

16. Christenson, David Andrew, *pro se*, denied intervention below

17. Clark, Jeffrey Bossert, Defendant in Georgia v. Trump

18. Cohen, Darryl B., attorney for Trevian C. Kutti

19. Copeland, Amy, *amicus* below

20. Cromwell, William Grant, attorney for Cathleen Alston Latham

21. Cross, Anna Green, Fulton County District Attorney's Office

22. Cross Kincaid LLC

23. Durham, James D., attorney for Mark R. Meadows in Georgia v. Trump

24. Eastman, John Charles, Defendant in Georgia v. Trump

25. Ellis, Jenna Lynn, Defendant in Georgia v. Trump

26. Englert, Joseph Matthew, attorney for Mark R. Meadows

27. Farmer, John J. Jr., *amicus* below

28. Floyd, Harrison William Prescott, Defendant in Georgia v. Trump

29. Floyd, John Earl, Fulton County District Attorney's Office

30. Francisco, Michael Lee, attorney for Mark R. Meadows

31. Fried, Charles A., *amicus* below

32. Fulton County District Attorney's Office

33. Gerson, Stuart M., *amicus* below

34. Gillen, Craig A., attorney for David James Shafer

35. Giuliani, Rudolph William Louis, Defendant in Georgia v. Trump

36. Griffin Durham Tanner & Clarkson LLC

37. Grohovsky, Julie, *amicus* below

38. Grubman, Scott R., attorney for Kenneth John Chesebro

39. Hall, Scott Graham, Defendant in Georgia v. Trump

40. Hampton, Misty (a/k/a Emily Misty Hayes), Defendant in Georgia v. Trump

41. Harding, Todd A., attorney for Harrison William Prescott Floyd

42. Hogue, Franklin James, attorney for Jenna Lynn Ellis

43. Hogue, Laura Diane, attorney for Jenna Lynn Ellis

44. Jody Hunt, lawyer for Samford University and former counsel for Cassidy Hutchinson

45. Jones, Steve C., U.S. District Court Judge for the Northern District of Georgia

46. Kammer, Brian S., attorney for *amici* below

47. Kelley, Emily E., attorney for Mark R. Meadows

48. Kutti, Trevian C., Defendant in Georgia v. Trump

49. Lake, Anthony C., attorney for David James Shafer

50. Latham, Cathleen Alston, Defendant in Georgia v. Trump

51. Lee, Stephen Cliffgard, Defendant in Georgia v. Trump

52. Little, Jennifer L., attorney for Donald J. Trump

53. Luttig, J. Michael, *amicus* below

54. MacDougald, Harry W., attorney for Jeffrey B. Clark

55. McAfee, Scott, Fulton County Superior Court Judge

56. McFerren, William Coleman, attorney for Shawn Micah Tresher Still

57. McGuireWoods, LLP

58. Meyer, Joseph Michael, attorney for *amici* below

59. Moran, John S., attorney for Mark R. Meadows

60. Morgan, John Thomas III, attorney for *amici* below

61. Morris, Bruce H., attorney for Ray Stallings Smith, III

62. Ney, Adam, Fulton County District Attorney's Office

63. Novay, Kristen Wright, attorney for Ray Stallings Smith, III

64. Palmer, Amanda, attorney for Ray Stallings Smith, III

65. Parker, Wilmer, attorney for John Charles Eastman

66. Pierson, Holly Anne, attorney for David James Shafer

67. Powell, Sidney Katherine, Defendant in Georgia v. Trump

68. Rafferty, Brian T., attorney for Sidney Katherine Powell

69. Ragas, Arnold M., attorney for Harrison William Prescott Floyd

70. Raul, Alan Charles, *amicus* below

71. Rice, Richard A., Jr., attorney for Robert David Cheeley

72. Roman, Michael A., Defendant in Georgia v. Trump

73. Rood, Grant H., Fulton County District Attorney's Office

74. Sadow, Steven H., attorney for Donald J. Trump

75. Saldana, Sarah R., *amicus* below

76. Samuel, Donald Franklin, attorney for Ray Stallings Smith, III

77. Shafer, David James, Defendant in Georgia v. Trump

78. Smith, Ray Stallings, III, Defendant in Georgia v. Trump

79. Still, Shawn Micah Tresher, Defendant in Georgia v. Trump

80. Terwilliger, George J., III, attorney for Mark R. Meadows

81. Trump, Donald J., Defendant in Georgia v. Trump

82. Twardy, Stanley A. Jr., *amicus* below

83. Volchok, Daniel, attorney for *amici* below

84. Wade, Nathan J., Fulton County District Attorney's Office

85. Joycelyn Wade

86. Wade & Campbell Firm

87. Wakeford, Francis McDonald IV, Fulton County District Attorney's Office

88. Waxman, Seth P., attorney for *amici* below

89. Weld, William F., *amicus* below

90. Wertheimer, Fred, attorney for *amici* below

91. Willis, Fani T., Fulton County District Attorney's Office

92. Wilmer Cutler Pickering Hale and Dorr LLP

93. Wooten, John William, Fulton County District Attorney's Office

94. Wu, Shan, *amicus* below

95. Young, Daysha D'Anya, Fulton County District Attorney's Office

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Jeffrey B. Clark respectfully requests oral argument using one of the two modes set out below:

(1) <u>Initial Hearing En Banc:</u> This case poses many issues that overlap with those presented in the petition for rehearing filed by Defendant-Appellant Mark R. Meadows in No. 23-12958 (pending). Simultaneously with this brief, we have filed a petition for this appeal to be heard initially en banc pursuant to Federal Rule of Appellate Procedure 35(c). The *Georgia v. Meadows* rehearing petition and the FRAP 35(c) petition filed in this case should be consolidated and the two cases should be argued or reargued at the same time.

**OR**

(2) <u>Ordinary Panel Oral Argument:</u> In the alternative, if the FRAP 35(c) petition in this case is denied (without prejudice, of course, to filing a post-panel decision rehearing petition), oral argument should still be granted by the panel in this case. One reason for this is that this appeal presents issues that are not present in the *Georgia v. Meadows* appeal.

# TABLE OF CONTENTS

Certificate of Interested Parties and Corporate Disclosure Statement ...................... i

Statement Regarding Oral Argument ...................................................... vii

Table of Contents ...................................................................... viii

Table of Authorities .....................................................................x

Introduction ..............................................................................1

Statement of Jurisdiction................................................................4

Statement of the Issues..................................................................5

Statement of The Case ...................................................................5

    I.   Proceedings and Dispositions Below ...........................................6

        A.  Special Purpose Grand Jury Proceedings, January 24, 2022 to September 8, 2023 ...............................................................6

        B.  The Indictment, August 14, 2023................................................8

        C.  Notice of Removal, August 21, 2023 ...........................................9

        D.  Removal Litigation, August to Mid-September 2023........................10

        E.  The Evidentiary Hearing, September 18, 2023 ...............................15

        F.  The Remand Order, September 29, 2023, and Its Aftermath ............20

    II.  Statement of Facts .........................................................26

    III. Standards of Review ......................................................32

Summary of the Argument................................................................32

Argument....................................................................................34

I.   The *Meadows* Panel Erred in Not Recognizing the Binding Eleventh Circuit Precedent of *Caver*, Pursuant to Which Mr. Clark Could Properly Remove This Case as a Former Federal Officer. ........................34

   **A.**  The *Meadows* Panel Decision Should Not Be Allowed to Displace Prior Established Supreme Court and Circuit Precedent. ..................34

   **B.**  The *Meadows* Panel Decision Is Wrong in a Host of Respects. .........37

II.  The District Court Erred In Rejecting Federal Officer Removal. .............40

   **A.**  The District Court's Evidentiary Rulings Were an Abuse of Discretion. ......................................................................................40

   **B.**  The District Court's Federal Officer Removal Rulings Are Incorrect............................................................................................41

III. The District Court Erred in Rejecting Removal of the Civil Special Purpose Grand Jury Proceedings Under 28 U.S.C. §§ 1331 & 1441. .......48

Conclusion ........................................................................................................53

Certificate of Compliance ..............................................................................55

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Manypenny*, 451 U.S. 232 (1981)............................................45

*BP plc v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532 (2021)................4

*Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir.1999) ............51

*Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 780–81 (11th Cir. 2005) .....32

*Chugtai v. Obama*, 153 F. Supp. 3d 765 (E.D. Pa. 2015) ......................................48

*Colorado v. Symes*, 286 U.S. 510 (1932) ................................................................41

*Cunningham v. Neagle*, 135 U.S. 1, 76 (1890)........................................................49

*Dietzsch v. Huidekoper*, 103 U.S. 494 (1880)........................................................46

*Florida v. Cohen*, 887 F.2d 1451 (11th Cir. 1989)..................................................21

*Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957)....................39

*Georgia v. Heinze*, 637 F. Supp. 3d 1316 (N.D. Ga. 2022)....................................44

*Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770 (E.D. Pa. 2010)......................40

*Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187 (D. Mass. 2008)........40

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) ........................................................45

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457 (3d Cir. 2015) ......................................46

*Jefferson County v. Acker*, 527 U.S. 423 (1999) .................................. 21, 32, 38, 43

*Kenerly v. Georgia*, 311 Ga. App. 190, 715 S.E.2d 688 (2011)...................... 11, 49

*Klayman v. Obama*, 125 F. Supp. 3d 67 (2015).......................................................48

*Kolibash v. Committee on Legal Ethics of the W. Va. Bar*, 872 F.2d 571 (4th Cir. 1989) ...........................................................................................14

*Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99 (D. Conn. 2007)....................40

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819) .......................................48

*Mesa v. California*, 489 U.S. 121 (1989)..................................................... 35, 37, 42

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987)...................................................51

*Mitchum v. Foster*, 407 U.S. 225 (1972) ................................................................46

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982).......................................................... 37, 48

*Osborn v. Haley*, 549 U.S. 225 (2007) ....................................................................43

*Stallings v. Georgia-Pac. Corp.*, No. 3:12- CV-00724-H, 2013 WL 1563231 (W.D. Ky. Apr. 12, 2013)........................................................................................40

*State of Georgia v. Meadows,* 88 F.4th 1331 (11th Cir. 2023)1, 2, 3, 4, 5, 21, 32, 33, 34, 35, 36, 37, 38, 39, 48

*Tennessee v. Davis*, 100 U.S. 257 (1880) .......................................................... 41, 49

*Texas v. Kleinert*, 855 F.3d 305 (5th Cir. 2017) .....................................................43

*United States v. Armstrong*, 517 U.S. 456 (1996) ...................................................47

*United States v. Nixon*, 418 U.S. 683, 693 (1974)...................................................47

*United States v. Pate*, 84 F.4th 1196 (11th Cir. 2023)............................................39

*Vaden v. Discover Bank*, 556 U.S. 49 (2009) ..........................................................49

*Willingham v. Morgan*, 395 U.S. 402 (1969) .................................................. 21, 34, 41

**Statutes**

28 U.S.C. § 1442 ........................... 1, 2, 3, 4, 5, 10, 13, 22, 26, 33, 34, 37, 38, 39, 41

28 U.S.C. § 1442(a) ............................. 1, 2, 3, 10, 13, 22, 26, 33, 34, 37, 38, 39, 41

28 U.S.C. § 1442(b) .............................................................................................3, 38

28 U.S.C. § 1446(d) ..........................................................................................10, 15

28 U.S.C. § 1447(d) .................................................................................................4

28 U.S.C. § 1455(b)(4).................................................................11

28 U.S.C. § 1455(b)(5) .................................................. 10, 40, 53

28 U.S.C. § 2283 ........................................................................46

Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545 ................38

**Other Authorities**

Neil Thomas Proto, *Opinion Clause and Presidential Decision-Making*, 44 MISSOURI L. REV. 185 (1979) ...............................................47

Saikrishna Prakash, *The Chief Prosecutor*, 73 GEO. WASH. L. REV. 521 (2005)....47

Seth P. Waxman and Trevor W. Morrison, *What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 YALE L.J. 2195, 2233-34 (200 ...............................................44

**Rules**

Fed. R. Civ. P. 43(c)..................................................................40

Fed. R. Cr. P. 43 ........................................................................16

Federal Rule of Appellate Procedure 36 .................................36

Internal Operating Procedure 2 ..............................................36

**Treatises**

Erwin Chemerinsky, FEDERAL JURISDICTION, § 11.2.............................46

Wright, Miller & Cooper, 14C FED. PRAC. & PROC. JURIS. § 3722.2, *Removal Based on Federal-Question Jurisdiction—Removal Based on Complete Preemption* ...............................................50

**Constitutional Provisions**

U.S. Const. art. II § 1, cl. 8.......................................................47

U.S. Const. art. II § 2, cl. 2.......................................................48

U.S. Const., art. II, § 2, cl. 1 ....................................................47

**Other References**

Kyle Cheney & Josh Gerstein, *Trump Signals Intent to Block Testimony in Jeff Clark Disciplinary Proceedings*, POLITICO (Jan. 16, 2024) ...............................25

## INTRODUCTION

This case involves removal by a former federal officer of proceedings brought against him by Fani Willis, District Attorney of Fulton County. The case was removed on two grounds including federal-officer removal under 28 U.S.C. § 1442(a). Defendant-Appellant Jeffrey Clark, a former Assistant Attorney General at the U.S. Justice Department who ran two of DOJ's seven litigating Divisions during the Trump Administration, is the removing federal official.

Mr. Clark's case for removal of the criminal case against him is even stronger than that of former White House Chief of Staff Mark Meadows, (*see* Case No. 23-12958), as Mr. Clark was involved only in quintessential federal government functions—giving legal advice and debating that advice inside the walls of DOJ and the White House. Mr. Clark was not engaged in any political campaign activity (even assuming *arguendo* that could defeat Mr. Meadows' removal). But make no mistake: Absent the close affiliation of Clark and Meadows with President Trump, and certainly if they had served any other President, we have no doubt their removals would have been treated as "no brainers" and both would already be in the federal forum that Congress was at pains to afford them.

The day before Mr. Clark's brief would otherwise have been due—on December 18, 2023—a panel of this Court decided *State of Georgia v. Meadows,* 88 F.4th 1331 (11th Cir. 2023), surprisingly holding that ***former*** federal officers cannot

1

use 28 U.S.C. § 1442(a) to remove state court cases. This ruling upends the entire history of federal removal doctrine and practice and represents a shock to the system of federal officer removal. We submit that the main reason run-of-the-mill federal officer removal precedent is being fundamentally rethought in this Circuit at this time is because President Trump and the controversies surrounding him are seen as a brooding omnipresence. That approach is contrary to a neutral application of the law (which should be President-blind) and, if it is not reversed by this Court en banc, we are confident it will eventually be reversed by the Supreme Court.

Moreover, Mr. Clark presents another ground for removal not present in *Meadows*, namely that the removal below was also proper under 28 U.S.C. § 1441 because Mr. Clark removed not just the indictment against him, but the Special Purpose Grand Jury ("SPGJ") proceedings used as a prelude to the indictment, since those SPGJ proceedings were civil in nature. This alternate ground for removal is not negatively impacted by the *Meadows* decision. Nevertheless, in order to fully preserve our appellate options to secure complete review (if necessary) by the U.S. Supreme Court (as we cannot agree that *Meadows* was correctly decided), we address below not just the grounds for removal that differentiate this case from *Meadows* but the reasons why we think that case was wrongly decided.

We are well aware that the panel assigned to this case may view itself as bound by the *Meadows* precedent, absent some form of rehearing being granted there, or

absent an initial grant of en banc review in this case pursuant to Federal Rule of Appellate Procedure 35(c), or both. *See* Petition for Initial En Banc Hearing (filed concurrently with this brief). However, we believe the panel here could just as likely conclude that the *Meadows* panel erred by failing to follow *Caver v. Central Alabama Electric Cooperative*, 845 F.3d 1135, 1142 (11th Cir. 2017) ("The first question for federal officer removal is whether CAEC ***was a person "acting under" a federal officer when it took the actions complained of in this case***." (Emphasis added). *Caver* struck first. Hence, out of an abundance of caution, we opted ***both*** to file this brief ***and*** to file our Rule 35(c) request for initial hearing en banc.

Part I of the Argument explains why the *Meadows* decision is erroneous, including that it violates Supreme Court precedent and is contrary to the plain text of the statute, interpreted without structural reference to 28 U.S.C. § 1442(b)—which is situated next to Section 1442(a) only because of choices made by U.S. Code codifiers, not by the actual lawmakers in Congress. Part II of the Argument next explains why the District Court's remand order was erroneous, including that it held a mini-trial on the merits that intruded upon the province of a future jury (if, once in federal court, the District Judge did not grant a pretrial motion to dismiss). Finally, Part III of the Argument explains why the District Court was wrong to reject the alternative ground for removal—*i.e.,* removing the preliminary SPGJ proceedings as a civil matter pursuant to Sections 1331 and 1441. The District Court erred in its

consideration of the alternate ground for removal by conflating Section 1441 with Section 1442.

\* \* \*

Putting aside the complexities arising out of the new *Meadows* decision and the alternate ground for removal, and simply viewing the case as a vanilla federal officer removal under Section 1442, Mr. Clark plainly meets the three-part test this Circuit has traditionally applied: (1) he was a federal officer as to the charges brought against him; (2) his actions were taken under color of his federal office; and (3) he presented multiple, colorable legal defenses. *See Caver*, 845 F.3d at 1142. The remand decision below should be reversed.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over the removed criminal proceedings under 28 U.S.C. § 1442 and over the removed SPGJ civil proceedings under 28 U.S.C. §§ 1331 and 1441. And this Court has appellate jurisdiction over the entirety of this case pursuant to 28 U.S.C. § 1447(d) as interpreted in *BP plc v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532 (2021) (holding all grounds for removal go up on interlocutory appeal when just one of those grounds is Section 1442).

The order of remand was entered on September 29, 2023 and the notice of appeal was filed on October 9, 2023 (10 days after entry of the order). Hence, this appeal is timely under the Federal Rules of Appellate Procedure regardless of

whether Mr. Clark was obliged to remove within 30 days or instead could wait up to 60 days to remove as a federal officer.

## STATEMENT OF THE ISSUES

1. Did the panel in *Meadows* err in not recognizing that the binding prior precedent of this Court was *Caver* and that *Caver* requires reversal of the District Court's order of remand?

2. Relatedly, did the District Court, based on its own pre-*Meadows* rationale, legally err in remanding this federal officer case back to state court?

3. Did the District Court err in rejecting the alternate ground for removal under Sections 1331 and 1441 by (a) conflating Sections 1441 and 1442; and (b) holding that removal of the civil Special Purpose Grand Jury proceedings was moot?

## STATEMENT OF THE CASE

Many would conceive of this case as beginning August 14, 2023 with DA Willis' indictment of President Trump, former Chief of Staff Mark Meadows, Mr. Clark, the Appellant here, and 16 other defendants. In reality, the case begins much earlier—at the start of 2022—with the creation of a Special Purpose Grand Jury ("SPGJ"), Fulton County Superior Court Case No. 22-EX-000024.

## I.   PROCEEDINGS AND DISPOSITIONS BELOW

### A.   Special Purpose Grand Jury Proceedings, January 24, 2022 to September 8, 2023

The SPGJ was authorized by the Fulton County Superior Court on January 24, 2022. Dkt.#1-11 (noting that "[t]he special purpose grand jury … may make recommendations concerning criminal prosecution as it shall see fit"). On May 2, 2022, the SPGJ was selected and sworn in and in June 2022 began receiving evidence. Dkt.#1-55 at 1.

SPGJ proceedings did not end, however, until the SPGJ final report was issued on Friday September 8, 2023, but that was *18 days after* we had already removed on August 21, 2023.[1] *See* Dkt.#32-1.[2] Additionally, the SPGJ docket reflects that, on

---

[1] The SPGJ was ordered dissolved on January 9, 2023, Dkt.#1-138 (Order Dissolving Special Purpose Grand Jury and Setting Hearing on Question of Publication), but the proceedings still continued, as numerous Fulton County Superior Court docket entries in the matter occur after that point. *See, e.g.*, Dkt.#1-154 (Order Entering Portions of Special Purpose Grand Jury's Final Report Into Court Record) (Feb. 16, 2023); Dkt.#1-156 (President Trump's motion to quash the final report and any evidence derived from it) (Mar. 20, 2023); Dkt.#1-161 (media intervenors appeal seeking access to final report) (Apr. 19, 2023). And the final report was not released until September 8, 2023 (post removal). *See infra* n.2.

[2] The Fulton County Superior Court does not maintain an electronic system like PACER. Hence, it is cumbersome to find documents from state court proceedings there for purposes of attaching them to removal notices. We used best efforts to do so as we described in the Declaration of Harry W. MacDougald. Dkt.#10; *see also* Dkt.#1 at 14 n.9. In any event, since the final SPGJ report had not issued as of the time we removed this case, we could not have included a future event as part of the Notice of Removal. We did not file it with the Court as the Supplement to the August 21, 2023 Notice of Removal, Dkt.#31-1; *see also* Dkt.#31, however.

6

August 16, 2023, certain media intervenors wanting to get their eyes on the final report of the SPGJ as soon as possible filed a motion for release of that report. Dkt.#1-186. That motion, filed only 4 days prior to the removal here, could not have been mooted until September 8, 2023, which again fell after the Notice of Removal had already been filed shifting exclusive jurisdiction to the Northern District of Georgia.

Mr. Clark had no direct visibility into the SPGJ Proceedings prior to the indictment. He was not subpoenaed to testify before the SPGJ. Nor was he issued a "target letter" by the DA's Office, nor otherwise notified that he was a target or subject of the SPGJ proceedings, though others were. Dkt.#1 at 12. We pleaded in the Notice of Removal that the SPGJ proceedings were "inextricably linked to the indictment action." *Id.* We also pleaded that the August 14, 2023 indictment was the first "paper" that started the removal clock under 28 U.S.C. § 1446(b)(3) even as to the SPGJ proceedings because Mr. Clark was in the dark about being a target of those proceedings prior to the indictment. *Id.* at 13.

Many of the SPGJ proceedings involved fights over subpoenas. For instance, several members of the Georgia General Assembly moved to quash a subpoena issued to them on June 27, 2022. Dkt.#1-15. *See also* Dkt.#1-18 (State's response, filed June 30, 2022). The provisions of the Uniform Act to Secure the Attendance of Witnesses from Without the State were also invoked for a number of out-of-state

witnesses. *See, e.g.,* Dkt.#1-23 (re: Jenna Ellis, Esq.); Dkt.#1-26 (re Senator Lindsey Graham); Dkt.# 1-86 (re Mark Meadows).

The Fulton DA was disqualified from proceeding against Georgia Lieutenant Governor (then candidate Burt Jones) because she had violated conflict-of-interest rules by holding a fundraiser for Jones' political opponent. Dkt.#1-42 (motion to disqualify) (July 15, 2022); Dkt.#1-55 (Order disqualifying the Fulton DA's Office) (July 25, 2022).

Certain SPGJ subpoenas were also removed to federal court. Dkt.#1-43 (removal of Congressman Jody Hice); Dkt.#1-57 (removal of Senator Graham).

**B.     The Indictment, August 14, 2023.**

President Trump, Mark Meadows, Mr. Clark, and 16 other defendants were charged with crimes by the Fulton DA in a 98-page indictment on August 14, 2023. Dkt.#1, launching an unprecedented prosecution under the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO"). The DA took augmented the powers of an ordinary grand jury in Georgia with the powers of a special purpose grand jury to carry out the underlying investigation. For the first time in U.S. history, the President of the United States was charged with running a criminal organization—including while he still in office.

Count 1 of the 41-Count indictment alleges that Mr. Clark is part of a vast Georgia RICO conspiracy running from November 4, 2020 to September 15, 2022.

Dkt.#1-1 at 20, 71. But Mr. Clark sent his resignation letter from his position at DOJ to President Trump on January 14, 2021 and had no connection to Georgia election matters since that time.

Mr. Clark is referenced in only three "Acts" of the indictment: (1) Act 98, where he is claimed to have made false statements in a draft letter that was never sent to Georgia or anywhere outside of DOJ or the White House; (2) Act 99, where he is alleged to have written to other federal DOJ officials at about the draft unsent letter; and (3) Act 110, where he took a phone call from a Georgia Bail Bondsman on January 2, 2021. *Id.* at 45, 46, and 50.

Other than his purported participation in a 19-defendant, multi-state Georgia RICO conspiracy, Mr. Clark is charged with only one count (Count 22) for an "attempted false writing," whatever that is, allegedly violating O.C.G.A. §§ 16-4-1 & 16-10-20, as interpreted pursuant to O.C.G.A. § 17-2-1(b)(2). *Id.* at 83. Mr. Clark's alleged conduct runs from December 28, 2020 to January 2, 2021 (five days).

### C.    Notice of Removal, August 21, 2023

As the Notice of Removal points out, the strategically framed indictment leaves out many obvious points: (1) it ignores a January 3, 2021 Oval Office meeting where President Trump declined to send the unsent draft letter (making the letter a lousy act in furtherance of the conspiracy), Dkt.#1 at 15; (2) no specific allegations are made as to how Mr. Clark joined the ostensible multi-state conspiracy; (3) the

indictment leaves out that Mr. Clark was serving at the time as both the Assistant Attorney General of the Environment and Natural Resources Division and the Acting Assistant Attorney General of the Civil Division (the only Assistant Attorney General running two of DOJ's seven litigating Divisions), *id.* at 16-17; (4) Mr. Clark is alleged to have proposed a course of action to his DOJ superiors in part using DOJ's internal email system, *id.* at 17-18; and (5) the indictment never explains how taking a call from a private citizen, Mr. Hall, could possibly be a criminal act as opposed to protected First Amendment Petition Clause activity, *id.* at 18.

Mr. Clark's Notice of Removal (as noted above) pleaded two theories: (1) he was entitled to remove under Section 1442(a) because he was a federal officer during the relevant period of December 28, 2020 to January 2, 2021 (*id.* at 21-28); and (2) the SPGJ proceedings were civil in nature because they could not, of their own force and without handing off the product of their investigation to an ordinary criminal grand jury, result in an indictment (*id.* at 28-30).

### D.    Removal Litigation, August to Mid-September 2023

We filed an emergency motion for a stay, Dkt.#2, confirming that the automatic stay in 28 U.S.C. § 1446(d) applied, as that provision indicates that Section 1441 removals establish that once removal is effectuated "the State court shall proceed no further unless and until the case is remanded." We also sought a stay pursuant to 28 U.S.C. § 1455(b)(5) and an administrative stay to allow Mr. Clark

time to oppose extradition from Virginia to Georgia. Dkt.#2. The District Court denied the emergency stay motion on August 23, 2023, despite recognizing that SPGJ proceedings in Georgia are civil in nature pursuant to limitations on the powers of such a body. Dkt.#9. at 3 ("*Kenerly v. Georgia*, 311 Ga. App. 190, 193, 715 S.E.2d 688, 691 (2011) (reviewing Georgia law and stating that '[t]here is no language in the[ ] [Georgia] Code sections granting a special grand jury the power to indict following its investigation').")

The District Court concluded on August 24, 2023 that the Notice of Removal made out a facial case supporting removal and that a summary remand under 28 U.S.C. § 1455(b)(4) was not appropriate. Dkt.#15. The same order set an evidentiary hearing for September 18, 2023 and a briefing schedule leading up to same. *Id.* at 9.

The Fulton DA filed a document styled "State of Georgia's Response to Defendant Jeffrey Bossert Clark's Notice of Removal" on September 8, 2023 (quite coincidentally the same day that the Fulton County Superior Court released the final SPGJ report to the public). Dkt.#28. The Fulton DA argued that Mr. Clark was acting outside the color of his office with the gravamen of that argument being that Mr. Clark headed up two litigating Divisions of DOJ that did not have authority over election matters. *Id.* at 1-2; *see also id.* at 9-15. Despite this, the Response indicated that when Mr. Clark raised concerns inside DOJ about the 2020 election he was authorized by his superiors to consult with BJay Pak, the U.S. Attorney for the

11

Northern District of Georgia, an authorization that would make no sense if were not acting under the color of his office and the supervision of his superiors (*i.e.*, at certain times, prior to Mr. Clark's direct contacts with the President, giving him a whole other, higher level of authorization to act). *Id.* at 6.

Even more peculiarly, despite the indictment steering clear of the topic, the Response recounts that Mr. Clark was in direct contact with the President, who was interested in appointing Mr. Clark as Acting Attorney General—points that also indicate that Mr. Clark was acting within the color of his office.[3] *Id.* at 6-7. The Response also indicates that Mr. Clark was offered the position of Acting Attorney General by the President and that he had accepted it. *Id.* at 7. This inherently placed Mr. Clark's actions and his expression of views about how election investigations and correspondence should be handled in the zone of Mr. Clark's official duties. Ultimately, as the Response indicates, the President decided on January 3, 2021 (the day scrupulously omitted from the indictment) not to send any election correspondence to the State of Georgia and to leave Jeffrey Rosen in place as Acting Attorney General. *Id.* And, as noted above, the indictment does not allege that Mr.

---

[3] The Response did argue that Mr. Clark's contacts with President Trump were over the objections of his DOJ superiors. Dkt.#28 at 6. But this Court will be well aware that the President of the United States is the head of the entire Executive Branch established under Article II of the Constitution. It inverts that constitutional order to imagine that President Trump cannot speak with and directly give instructions to one of his Senate-confirmed appointees like Mr. Clark.

Clark took any further 2020 election-related actions after the President made his January 3, 2021 decision.

The Response also argued that Mr. Clark could not mount any colorable federal defenses to the indictment. *Id.* at 15-21. But this argument collapsed back into the argument that Mr. Clark had been acting outside the color of his office. *See id.* at 16 (defendant does not "cite authority explaining how those defenses relate to any lawful federal activities"). *See also, e.g.*, *id.* at 16-17 (attempting to defeat Supremacy Clause immunity as a colorable defense by arguing that defendant was "offering blatant falsehoods in an area outside of his defined scope of responsibilities"). Relatedly, the Response erroneously ignores that under *Caver*, Mr. Clark does not have to win, at the threshold removal inquiry, on his immunity defenses in order to secure the federal court forum Congress gave him under Section 1442(a); he merely had to plead a "colorable" defense. The Response repeatedly proceeds as if offering conclusory statements from congressional committees that did not afford Mr. Clark due process rights to cross examine witnesses can be taken as definitive proof and thereby defeat removal, even before defenses can be offered for resolution by the federal factfinder. *See id.* at 15-21. That is not how removal works or else notices of removal would be prolix documents equivalent to trial orders of proof.

13

Finally, the Response argues that Mr. Clark could not remove the case under Section 1441 because SPGJ proceedings are not civil actions. *See id.* at 21-22. This ignores *Kennerly* (binding Georgia state precedent), which the District Court itself had acknowledged.

The Response also argued that because the Washington, D.C. District Court had concluded that a bar disciplinary action brought in the District of Columbia was not removable by Mr. Clark as a "civil action," the SPGJ proceedings were also not removable. *See id.* at 22. Beyond the fact that such disciplinary matters bear no resemblance to SPGJ proceedings, the Fulton DA ignores that the D.C. ruling they relied on was (and still is) on appeal, *see In re Clark*, No. 23-7073 (lead case) (D.C. Cir.) (pending), and that the D.C. District Court remand order conflicts with *Kolibash v. Committee on Legal Ethics of the W. Va. Bar*, 872 F.2d 571 (4th Cir. 1989) (allowing removal of a bar discipline case against a U.S. Attorney).

Next, the Response argued that Fulton County Superior Judge McBurney had found SPGJ proceedings to be criminal rather than civil. *See* Dkt.#28 at 23. But Judge McBurney's rulings are not Georgia precedent and the Response did not answer the District Court's own recognition that *Kennerly* was Georgia precedent. This led the Response to argue that the SPGJ proceedings were moot because the final report had issued. *See id.* at 23. Of course, the Response did not acknowledge that the final report had been issued the selfsame day. It was not issued prior to the

August 21, 2023 date of removal. Hence, the power over the SPGJ proceedings transferred under 28 U.S.C. § 1446(d) to the Northern District of Georgia on August 21 and any subsequent actions by Judge McBurney were void and could not have mooted the removal.

We filed a document styled "Reply in Support of Removal" on September 14, 2023. Because the Response to removal filed by the Fulton DA had made clear it was proceeding as if Mr. Clark needed to **prove** that he was acting within the color of his undisputed offices at the Justice Department, we filed a declaration by Mr. Clark, accompanied by 9 exhibits. Dkt.#42 & Dkt.##42-1 to 42-9. We also filed a declaration by Attorney General Meese describing how internal disputes work inside DOJ and how DOJ interacts with the President. Dkt.#48. We further filed another collection of 21 other supporting exhibits. Dkt.#43 & Dkt.## 41-1 to 43-21. We unpack those 30+ exhibits in the Statement of Facts below but suffice it to say to complete the procedural picture, they further explained Mr. Clark's theory of the case for removal and why he was colorably acting within the scope of his position as a high-ranking officer of the United States having direct contact with the President and thus able to offer proposals to and engage in debates with his DOJ superiors.

### E. The Evidentiary Hearing, September 18, 2023

Fully intending to preserve his Fifth Amendment rights, as he is being charged with Georgia state crimes, Mr. Clark's lawyers arrived for the September 18, 2023

evidentiary hearing. The facts that Mr. Clark intended to rely on were set out in his documentary filings that were placed into the record before the evidentiary hearing.

Lawyers for the Fulton DA objected that Mr. Clark was not present and District Judge Jones suggested that he might cancel the hearing (which he clearly saw as necessary) if Mr. Clark did not file a waiver of appearance under Federal Rule of Criminal Procedure 43. *See* Tran. at 49. This caused one of Mr. Clark's lawyers to have to step out of the hearing, contact Mr. Clark, and then prepare and file a waiver of appearance. *See* Dkt.#49. But this was error. The hearing was on the threshold question of whether the case was removable—a civil case—making the Federal Rules of Criminal Procedure inapplicable. Moreover, Rule 43 itself specifies that it applies only to the "initial appearance, the initial arraignment, and the plea," "at every trial stage, including jury impanelment and the return of the verdict," and "sentencing." Fed. R. Cr. P. 43(a)(1)-(3). The removal hearing was none of these things, though its application by the District Court shows that it was conceptualizing removal as if it were a trial-like process. *See also id.* at 43(b)(3) (no need to appear at hearings on questions of law).

Clearly anticipating use of a trial process, the District Court denied the admission of Mr. Clark's declaration:

> MR. MACDOUGALD: Your Honor, in our reply brief we cited Federal Rule of Evidence 1101, that in preliminary proceedings the Court can take the evidence on declarations and affidavits. And we cited a number of

cases around the country in which removal was found sufficiently demonstrated based on declarations and affidavits.

THE COURT: I'm not going allow Mr. Clark's declaration in. I note your objection for the record.

Tran. at 49:25 to 50:7.

The District Court also initially refused to allow the declaration of former Attorney General Edwin Meese into evidence, despite Federal Rule of Evidence 1101, though the Court was less clear about whether this was a blanket ruling or instead applicable only to parts of it. *See id.* at 50:12 to 52:5. The Court then took a short break and, when it returned, it announced, upon reconsideration, that it "will allow it in and give it whatever weight it's due." 52:25 to 53:1. The Court also announced a more modest reconsideration of its ruling as to the admissibility of Mr. Clark's declaration, stating "there are aspects in Mr. Clark's declaration, like his commission, that might qualify to come in. But right now, it's a whole packet, so that whole packet is not going to be allowed in." *Id.* at 53:5-8. The Court acted on the Meese and Clark declarations in this way because "there are two declarations in Meadows I allowed in. So I think it's only fair." *Id.* 53:10-12.

The Fulton DA then called Jody Hunt, former Assistant Attorney General of DOJ's Civil Division during the Trump Administration, as a live witness.[4] Mr. Hunt

---

[4] The Court should be aware that Mr. Hunt has been, at times (likely until March 2023, when he became general counsel of Samford University), a private lawyer for Cassidy Hutchinson. Tran. 77:1-2, 10-12. Ms. Hutchinson is among the most

was one of Mr. Clark's predecessors in running the Civil Division. Mr. Hunt left DOJ in July 2020, before the 2020 election. *Id.* at 60; 78:10-15.

Mr. Hunt testified, in essence, that Assistant Attorney Generals of the Civil Division lack authority over offensive election matters (*i.e.,* criminal enforcement against election fraud and the like). *Id.* at 61-65. He also testified that there is a Justice Department memo from former Attorney General Holder that centralizes contacts with the President to the Attorney General, Deputy Attorney General, and Associate Attorney General. *Id.* at 67-68. Mr. Hunt did not testify, however, that the Holder memo could possibly restrict the powers of the President to contact his subordinates. He phrased matters carefully:

> Based on my experience, the purpose and intent of it [the Holder contacts memo] is to avoid situations where ***people within the White House*** are calling individual officials or officers in the Department of Justice and asking them to do things or directing them to do things, because when you get a call from the White House, understandably somebody thinks, well, I better do what I'm being asked to do.

*Id.* 69:15-21 (emphasis added). Mr. Hunt also construed a memo from former White House Counsel Don McGahn as restricting "***White House staff*** to the proper communication protocols with the Department of Justice." *Id.* at 70:24-25 (emphasis added). The President is not White House staff or just any person to be found on the

---

celebrated witnesses that testified against President Trump to the House Select Committee on January 6. This therefore makes Mr. Hunt self-interested in election-related disputes concerning President Trump, Mr. Clark, and the other defendants in the indictment, as he is aligned with the other side to the dispute.

White House complex.

The concluding topic of Mr. Hunt's testimony concerned a case filed by former Congressman Gohmert and several contingent electors from Arizona against Vice President Pence, trying to control how he would exercise his discretion (in a pro-Trump direction) as to 2020 election certification on January 6, 2021. Mr. Clark was charge of defending that suit, which he did vigorously and successfully (which runs entirely contrary to the Fulton DA's theory that Mr. Clark joined a nefarious conspiracy to keep Mr. Trump in office). Responding to our point that DOJ's lines of authority, even as a default matter, are complex and Mr. Clark clearly was involved in a highly significant piece of election litigation, Mr. Hunt argued that Mr. Clark was involved because he was ***defending*** the Vice President in his capacity as a federal official. *See* Tran. at 72:4 to 72:19.

Mr. Hunt conceded on cross that Justice Department officials can and do disagree with each other. *Id.* at 80:9-25. More specifically, he conceded that the Attorney General would host meetings where multiple components of DOJ hashed out issues with one another, *id.* at 81:15-20, that such debates could result in briefs or memos or letters not being sent, *id.* at 82:23-25 to 83:1-3, and finally that he was not aware of any such situation leading to a participant in such an internal debate ever being subjected to state criminal prosecution, *id.* at 83:4-7.

The hearing concluded with oral argument presented in favor of removal by one of Mr. Clark's lawyers. *Id.* at 85-110. In light of the District Court's method of conducting removal analysis in a trial-like mode, we submitted a post-hearing demand for a jury trial for Mr. Clark. Dkt.#54. The removal analysis is meant to be a threshold analysis, not the equivalent of a trial, and the factual questions, consistent with the Sixth Amendment, must be resolved by a jury if the defendant so wishes. By focusing on live testimony at the removal stage, excluding Mr. Clark's declaration, and down-weighting Attorney General Meese's declaration, the District Court strained Mr. Clark's Fifth Amendment rights not to testify in matters with potential criminal consequences and his Sixth Amendment rights to have facts found by a jury. Proper removal analysis does not impinge on in any way, let alone strain against those constitutional rights.

### F.    The Remand Order, September 29, 2023, and Its Aftermath

The District Court issued its remand order on September 29, 2023. Dkt.#55. The opening of the order is telling, as it suggests that the court was, in part, (erroneously) making a discretionary determination: "[T]he Court **DECLINES** to assume jurisdiction over the State's criminal prosecution of Clark under 28 U.S.C. § 1455, **DENIES** Clark's Notice of Removal of the Special Grand Jury Proceedings under 28 U.S.C. § 1446, and **REMANDS** the case to Fulton County Superior Court." *Id.* at 1-2 (emphasis in original).

20

In terms of the three-part test of *Caver* ((1) federal officer, (2) acting under color of his/her office, and (3) presenting a colorable federal defense), the District Court began by finding that "Clark undisputedly served as an Assistant Attorney General (AAG) for the United States Department of Justice (DOJ)." Dkt.#55 at 2, 10. The court agreed that the draft letter to Mr. Clark was never sent. *Id.* at 3. As to Attorney General Meese's declaration, the District Court discounted Meese's description of his experience running DOJ and interacting with the President because that occurred decades before Mr. Clark's service in the Trump Administration from 2018-2021, even though there have been no amendments to the Constitution reducing the President's power over DOJ in the intervening period. *Id.* at 3 n.4.

The District Court began with the doctrine of federalism but recognized that what controls are the terms of the federal-officer removal statute, which operates as an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989) (citing *Willingham v. Morgan*, 395 U.S. 402, 405 (1969)). Dkt.#55 at 6.

The Court acknowledged that it had to credit the removing defendant's theory of the case under *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999). Dkt.#55 at 8. It also recognized that in light of a procedural development in the *Meadows* appeal, some Judges on the Eleventh Circuit were thinking about whether Section

1442(a) removal rights extended to former federal officers like Mr. Clark, but in a footnote declined to address that dispute. *Id.* at 10 n.8.

The remand order reads ambiguously when set against the oral court pronouncements at the September 18, 2023 hearing, but the District Court, by the time of its order, appears to have decided that it could allow Mr. Clark's documentary evidence into the proceeding. Dkt.#55 at 12-13 (conceding that removal does not require "an airtight case on the merits"). This is especially true because the District Court reiterated that it was excluding Mr. Clark's declaration, though it quickly followed up with a footnote suggesting in the alternative that it would give the declaration little weight. *Id.* at 14 & n.11. The District Court gave a rationale for those times when it stated it was excluding Mr. Clark's declaration—it "was excluded or assigned little weight [again, more ambiguity] because the witness was not available for cross-examination." *Id.* at 15. At no point, however—not in open court on September 18, 2023, nor in its September 29, 2023 remand order— did the District Court cite any authority (constitutional, statutory, or pursuant to case law) that Mr. Clark had to make himself available for cross-examination. Indeed, Mr. Clark's right and desire to preserve his Fifth Amendment privilege is a constitutional principle that runs directly contrary to any possible judicial conclusion that removal (or removal evidence) must be disregarded if it cannot be subjected to cross-examination.

Next, the District Court ruled that Mr. Clark had not "met his burden to show a causal connection between his federal office and the acts alleged in the criminal prosecution." Dkt.#55 at 16. As we explain below, this is legal error because the 2011 amendments to the federal officer removal statutes created a "relating to" test, displacing causation analysis, as we noted at the outset of this brief.

The District Court construed Mr. Clark to be arguing that (1) he was acting within the color of his office at the Civil Division; and that (2) he was not limited to acting in his roles running two litigating Divisions, rejecting both arguments. Dkt.#55 at 18. The court accepted the offensive-defensive distinction offered by Mr. Hunt. *Id.* It reinforced that conclusion by citing the "Justice Manual," a guidance document maintained on the Internet by DOJ. *See* https://www.justice.gov/jm/justice-manual (last visited Jan. 18, 2024). Dkt#55 at 19-20. In a footnote, the District Court held that the Civil Division's authority over international matters was insufficient to meet the color-of-office test. Dkt.#55 at 19-20 n.16.

The testimony of Mr. Clark's former superiors to congressional committees were cited by the District Court against Mr. Clark (ironically, despite the fact that none of those committee processes afforded Mr. Clark the ability to cross-examine those witnesses—something the District Court thought was a critical right to afford the Fulton DA's attorneys at the removal hearing). *Id.* at 20-21. The Court also sliced

the onion quite thinly and rejected arguments that the *Gohmert* litigation gave Mr. Clark a seat at the table on how to investigate and deal with issues involving the 2020 election, classifying that case as something other than an investigation of election fraud. *Id.* at 22.

The District Court next dealt with Mr. Clark's argument that he could be assigned additional duties as an Assistant Attorney General by the Attorney General or the President. It was in this vein that Mr. Clark interacted with the President, was authorized to interact with Mr. Pak, and was allowed to receive a national security briefing and review a classified report from the intelligence community about potential foreign election interference. The District Court could not stack much to resist this tide of arguments—supported as it was by the Meese declaration— concluding: "As required, the Court credits Clark's theory of the case (i.e., that he engaged in these activities while at the DOJ and the President could have reassigned or delegated duties to Clark within the scope of DOJ's broader delegation)." Dkt.#55 at 24.

Nevertheless, the District Court held that Mr. Clark could not meet his burden to remove because he had to show that the President had ***specifically directed him to write a letter to Georgia***. *Id.* at 24-25. These conclusions are infected by an insufficient appreciation that Mr. Clark is bound by executive privilege, deliberative

process privilege, law enforcement privilege, and attorney client privilege.[5] Even if

that conclusion were correct (which we dispute), the District Court acknowledged

that the draft letter was discussed and debated in front of the President on January 3,

2021. *Id.* at 25. There is no evidence that the President considered the discussion he

hosted in the Oval Office to be outside of Mr. Clark's lane at DOJ. Mr. Clark could

not even have attended the meeting had the President not authorized him to be there

and discuss the topic. Nor did the District Court consider the implication of its

holding that Mr. Clark could not remove unless he introduced evidence the President

instructed him to prepare a particular letter. This is a remarkable proposition and

presupposes that the President is hamstrung by boxes on an organizational chart and

cannot consult his Senate-confirmed officials to discuss their ideas and proposals for

presidential action.

In light of its holding on the issue of the *Caver* color-of-office prong, the

District Court declined to consider whether colorable federal defenses were shown.

Dkt.#55 at 28.

---

[5] Indeed, Mr. Clark has recently received a renewed instruction from President
Trump's lawyer Todd Blanche, to maintain all of these privileges in litigation. *See,
e.g.,* Kyle Cheney & Josh Gerstein, *Trump Signals Intent to Block Testimony in
Jeff Clark Disciplinary Proceedings*, POLITICO (Jan. 16, 2024) (citing letter
available here: https://s3.documentcloud.org/documents/24362071/ex-1.pdf) (last
visited Jan. 18, 2024). Removal should be equally available to lawyers made
defendants in state court actions where those lawyers do as they should, and act to
protect legal privileges, especially when the holder of those privileges is the
President of the United States.

The District Court also rejected the alternate theory for removal of the prelude-to-indictment SPGJ proceedings under Section 1441, conflating that theory for removal with its rejection of removal under Section 1442(a). Dkt.#55 at 29. Turning to the topic of complete preemption, the District Court found that any applicable preemption was only defensive in nature. *Id.* at 30. But this ignores that the field of privileged and confidential internal DOJ policy discussions and debates is not a field where there is ***any role*** for state regulation. It is, by definition, exclusively the purview of the Article II branch of the federal government in which a state has no cognizable regulatory interest. To bolster its decision rejecting removal of the SPGJ proceedings, the District Court observed that those proceedings were concluded at the time of the remand order. *Id.* That ignores, of course, that the proceedings were still live when the case was removed.

Ten days after the remand order was issued, on October 9, 2023, Mr. Clark noticed the appeal. Dkt.#58. A stay motion filed that same day (Dkt.#59) was denied about one month later on November 9, 2023. Dtk.#68. This Court next denied a motion for a stay pending appeal on December 21, 2023, Doc. 26, and denied as moot a motion to supplement that motion for stay on January 4, 2023. Doc. 28-1.

## II.    STATEMENT OF FACTS

We devote this Section to describing the significant body of evidence Mr. Clark submitted to support removal of this case pursuant to Section 1442(a),

including a description of the Clark declaration that the District Court largely seemed to exclude but made ambiguous pronouncements about.

The Clark declaration establishes that Mr. Clark was a federal officer. Dkt.#42 at 2. He attached a copy of his Commission, issued after he was confirmed on a bipartisan basis by the Senate of the United States. Dkt. 42-1. The Commission refers to Mr. Clark being appointed, generally, as "an Assistant Attorney General" (not as being confined to any particular area at DOJ). *Id.* The declaration also establishes that Mr. Clark's duties were expanded from the Division he primarily went on to supervise—the Environment and Natural Resources Division—to also encompass supervision of a second litigating Division beginning in 2020: the Civil Division. Dkt.#42-2. The press release by Attorney General Barr announcing that assignment stated: "I also want to thank Jeff Clark, who has done a fantastic job leading the Department's Environment and Natural Resources Division, for stepping in to lead the Civil Division after [a] departure …." *Id.*

The Clark declaration averred that Mr. Clark's duties were fluid. That he wrote regulations issued by the Executive Office of the President, part of the White House. Dkt.#42 at 4. (By contrast, there is no evidence Mr. Hunt ever was assigned or discharged any duties at the White House.) The declaration cites a news story Mr. Clark vouched for that he defended the *Gohmert* litigation—something Vice President Pence applauded in a book he wrote (noting that President Trump was less

pleased with that aspect of Mr. Clark's action). *Id.* at 5. The declaration notes that Mr. Clark won the *Gohmert* litigation on New Year's Day 2021. His participation in the *Gohmert* litigation and its outcome are both judicially noticeable matters.

Mr. Clark's original privilege instructions are referenced in the declaration in the form of an August 2, 2021 letter, Dkt.#42 at 6, which was recently modified on January 4, 2024 by another lawyer for President Trump, taking account of current circumstances, *supra* n.6. The fact of discussions occurred (but not the content of those privileged discussions) between Mr. Clark, Congressman Scott Perry of Pennsylvania, and President Trump about election integrity were set out in the declaration based on Mr. Perry giving an interview to the press. Dkt.#42-9. Finally, the Clark declaration averred that Mr. Clark did not take part in any Trump campaign events and at all times acted consistent with his Justice Department duties and other assignments. Dkt.#42 at 9-10.

Additional facts were introduced into the record via a Notice of Filing attaching 21 exhibits. We summarize their content and import here:

Exh. 1: A November 9, 2020 Attorney General Barr memorandum to, among others, all U.S. Attorneys (recall it is undisputed that Mr. Clark was connected to Mr. Pak, a U.S. Attorney, to discuss election issues) entitled "Post-Voting Election Irregularity Inquiries." Dkt.#43-1.

Exh. 2: An email request sent by Mark Meadows, President Trump's Chief of Staff to Acting Attorney General Rosen asking for Mr. Clark to look at signature-match irregularities in Fulton County, GA. Standing alone, this would seem to be more than sufficient evidence to support removal. Dkt.#43-2.

Exh. 3: DOJ official Richard Donoghue notes of a conversation with Mr. Clark and Acting Attorney General Rose held on the 6th floor of Main Justice's SCIF to discuss classified and unclassified election matters. Dkt.#43-3. The conversation would not have included Mr. Clark or even occurred if Mr. Clark were not authorized to participate in it.

Exh. 4: The Executive Order issued directing the intelligence community to produce a report on potential foreign election interference, which Mr. Clark was cleared to review and discuss. Dkt.#43-4.

Exh. 5: The unclassified version of the potential foreign election interference report. Mr. Clark was authorized to review a classified version of that report. Dkt.#43-5.

Exh. 6: The unclassified version of Director of National Intelligence Ratcliffe dissenting from the intelligence community majority's conclusions. Dkt.#43-6. Mr. Clark was permitted to review a classified draft of that report and to have a classified briefing with DNI Ratcliff that was held on January 2, 2021. Notes from the

conversation among Messrs. Clark, Rosen, and Donoghue on the 6th floor SCIF of DOJ later that day is Exhibit 3 above. Dkt.#42-6.

Exh. 7: The unclassified version of the intelligence community Analytic Ombudsman Barry Zulauf opinion differing from the intelligence community majority. Mr. Clark was authorized to review a classified version of this separate opinion. Dkt.#43-7.

Exh. 8: A description of the role of the Cyber Security and Infrastructure Security Agency ("CISA") in U.S. elections, negating the Fulton County DA's argument (which it especially pressed against Mark Meadows) that the 2020 presidential election in Georgia was exclusively a matter for Georgia and not the federal government. Dkt.#43-8.

Exh. 9: A statement by former Homeland Security Secretary Jeh Johnson on critical election infrastructure and the federal role in defending it. Dkt.#43-9.

Exh. 10: A CISA and FBI joint bulletin that America's adversary, Iran, had obtained access to voter registration data, dated November 3, 2020. Dkt.#43-10.

Exh. 11: A CISA bulleting describing vulnerabilities affecting Dominion Voting Systems ImageCast X, dated June 3, 2022. Dkt.#43-11. As officers of the Court we vouch that Mr. Clark had become aware of computer election system vulnerabilities because in 2019 he attended the D.C. Circuit's judicial conference, which was focused on that issue. It was held in Cambridge, MD.

Exh. 12: A description of risk-limiting audits based on a computer tool developed with Homeland Security Department support. Dkt.#43-12.

Exhs. 13 & 14: Materials describing the federal role in the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") and how UOCAVA interacts with States. Dkt.##43-13 & 43-14.

Exh. 15: A list of the activities of multiple federal agencies under the Help America Vote Act ("HAVA"). Dkt.#43-15.

Exh. 16: A basic description of the federal Election Assistance Commission ("EAC"). Dkt.#43-16. Again, these materials were submitted to rebut the Fulton County DA's position that Georgia exclusively controlled its elections and there was no federal role—something the District Court stressed in its decision remanding the Meadows removal.

Exh. 17: A listing of EAC studies and reports on U.S. elections. Dkt.#43-17.

Exh. 18: USA.Gov's profession that elections in the United States trace to the U.S. Constitution. Dkt.#43-18.

Exh. 19: An Executive Order issued to control the use of guidance documents, which are themselves not law. Dkt.#43-19. This was introduced to rebut the Fulton County DA's reliance on the Justice Manual to try to constrain the President's supervisory powers and contacts with DOJ officials.

31

Dkt. 20: A related Executive Order also controlling guidance documents. Dkt.#43-20.

Exh. 21: A copy of 52 U.S.C. § 20701, which makes it a crime to fail to preserve presidential election records for 22 months—a factor in the Meadows email instruction to Acting AG Rosen to have Mr. Clark look at how Fulton County had handled the 2020 presidential election.

## III. STANDARDS OF REVIEW

This Court conducts *de novo* review of the district court's determination on jurisdiction and removal. *See Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 780–81 (11th Cir. 2005); *Jefferson Cnty. v. Acker*, 137 F.3d 1314, 1316 (11th Cir. 1998).

## SUMMARY OF THE ARGUMENT

Error suffuses both the panel decision in *Meadows* and the District Court's remand order below. Part I of the Argument explains why the *Meadows* decision is erroneous on a host of grounds, including that it runs afoul of Supreme Court and Circuit precedent and that it violates the expansive "relating to" test for removal established in 2011 in Congress. At all times, Congress has responded to attempts to cut back on federal officer removal by broadening its terms.

Part II of the Argument next explains why the District Court's remand order was erroneous. This is true for several reasons: (1) the District Court's order wrongly

tries to turn a light-touch and threshold jurisdictional inquiry into a mini-trial on the underlying merits, failing to recognize that it will almost always be the case that those challenging federal officer actions in state court will argue that the federal officer was acting *ultra vires,* so that fact alone cannot defeat removal or Section 1442 would shrink to pygmy status; (2) the District Court overemphasized its mini-trial with live testimony offered by prosecutors, giving short shrift to the documentary evidence Mr. Clark offered, including from former Attorney General Edwin Meese, whereas Meese's testimony, standing alone, should have been more than enough to create a colorable defense authorizing removal; (3) the District Court misunderstood the purpose of Section 1442(a) removals, instead putting a heavy thumb on the scales against removal using an inapposite federalism rationale; (4) the District Court made the same errors as the *Meadows* panel in ignoring the 2011 statutory amendments creating a very roomy, if not capacious "relating to" test for removal and failing to credit Mr. Clark's theory of removing the case.

Part III of the Argument explains why the District Court was wrong to reject the alternative ground for removal—removing the preliminary SPGJ proceedings as a civil matter pursuant to Sections 1331 and 1441. The District Court held that its rejection of the Section 1442 ground for removal necessarily doomed Section 1441 removal. But that does not logically follow. Section 1442 embraces removal of civil cases, criminal cases, and indeed all forms of "proceedings." Civil cases falling

within Section 1442 do not make Section 1441 irrelevant. Additionally, the District Court erred in holding that the SPGJ proceedings could not be removed because they were over as of when the remand order was issued. That ignores that the removal here was perfected before those proceedings were concluded. The District Court should not have strained to shield the flawed civil SPGJ proceedings from review, as the SPGJ proceedings are what the Fulton County DA used as a necessary first investigative step that allowed her to bring the indictment.

## ARGUMENT

I.    THE *MEADOWS* PANEL ERRED IN NOT RECOGNIZING THE BINDING ELEVENTH CIRCUIT PRECEDENT OF *CAVER*, PURSUANT TO WHICH MR. CLARK COULD PROPERLY REMOVE THIS CASE AS A FORMER FEDERAL OFFICER.

### A.    The *Meadows* Panel Decision Should Not Be Allowed to Displace Prior Established Supreme Court and Circuit Precedent.

Federal officers are given the option to remove any civil action or criminal prosecution (or other proceeding) filed against them in state court "for or relating to any act under color of such office." 28 U.S.C. §1442(a)(1). This is the latest evolution in a statute that goes back to the 1833 Force Act wherein the Supreme Court has repeatedly told lower courts that they should avoid "a narrow, grudging interpretation of §1442(a)." *Willingham*, 395 U.S. at 407. The *Meadows* panel itself acknowledged that "in the 190-year history of the federal officer removal statute, no

court has ruled that former officers are excluded from removal." *Meadows*, 88 F.4th at 1342.

The *Meadows* panel ruling conflicts with the Supreme Court's opinion in *Mesa v. California*, 489 U.S. 121, 123 (1989), which states that federal officer removal is permissible whenever a case relates to official acts by officers or those acting on their behalf "at the time of the incidents." The test for removal is not temporarily limited but functionally defined. The issue is whether the acts were official acts. These acts have their own metes and bounds that have some relation to time in office but which are not defined predominantly by that timespan. What we mean by that is this: (1) while Mr. Clark was in office in 2019, if he refused to pay for an oil change for his personal vehicle, that would not be a contract dispute arising under color of federal office and thus Mr. Clark could not remove a state court suit against him filed by the mechanic; and (2) on any day after Mr. Clark resigned his political appointment at DOJ, *i.e.,* on January 15, 2021 and beyond, if he engaged in ***any act*** it would inherently be acts undertaken in his private capacity and any suits against him for conduct in that period would not be official acts and thus would not be removable. However, if the Fulton County DA challenges actions Mr. Clark took while in office, unless he were engaged in a true frolic and detour that had absolutely no colorable official basis preventing satisfaction of one of *Caver*'s prongs, Mr.

Clark can, without doubt, remove that suit. The *Meadows* decision to the contrary is wrong—and contrary to *Mesa*.

It is also contrary to *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (someone "acting under" an officer may remove if, "in carrying out the 'act[s] that are the subject of the petitioners' complaint, [he] ***was acting*** under any agency or officer of the United States.") (emphasis added) (cleaned up). Actions under those who were federal officials at the time create the removal touchpoint, not whether the federal official has left federal service or whether he has changed jobs so that he no longer supervises a particular federal contractor. *Caver* is to the same effect, as it permits removal when a defendant "***was*** a person acting under a federal officer ***when it took*** the actions complained of in this case," 845 F.3d at 1142 (cleaned up) (emphasis added).

*Caver* is binding precedent that the panel should have followed rather than creating a new rule, for first time in 190 years, disallowing removal by former federal officers. Under this Court's Internal Operating Procedure 2 on Federal Rule of Appellate Procedure 36, "*published opinions are binding precedent*." (Emphasis in original.) And *Caver* was published, ergo the new *Meadows* rule violates that published precedent—thereby justifying one or more of these forms of relief: (1) the panel assigned to this case opting to follow *Caver*, as opposed to *Meadows*, as the

first-decided, binding precedent; (2) granting the Meadows rehearing petition; or (3) granting the FRAP 35(c) petition for initial en banc review of this case.

**B.    The *Meadows* Panel Decision Is Wrong in a Host of Respects.**

There a slew of reasons going to why the *Meadows* panel decision is dead wrong:

(1) The decision runs afoul of numerous Supreme Court decisions including *Watson* and *Mesa* as shown in Argument Section I.A above.

(2) There is no separate temporal component separating former from current federal officer removals Section 1442(a) —removal depends simply on whether the actions being challenged in state court were actions taken under color of law. No action by Mr. Clark alleged in the indictment was taken by Mr. Clark after he left federal office—when he inherently lost the power to act under color of law.

(3) The core purpose of Section 1442(a) is defeated if it is not applied to former federal officers, as doing so improbably imagines Congress wanted to allow current federal officers to pull their federal immunity defenses over into federal court but leave the very same sorts of immunity defenses to be adjudicated in state court when former federal officers are involved. Immunity defenses protect federal ***interests***, as they are presented in litigation against federal officers, and those interests and the reasons for protecting them continue even after the officers leave office. *See, e.g., Nixon v. Fitzgerald*, 457 U.S. 731 (1982).

Assigning the resolution of federal defenses to state charges or civil claims based on a federal officer's current or former status makes no sense. Immunity is enjoyed as to acts undertaken in office. The whole point of the statute is to guarantee that federal courts designed to protect federal immunity will resolve such issues, rather than state courts potentially inhospitable to defensive claims by the superior sovereign that their federal law trumps inferior state law.

(4) The test of causality applied by the *Meadows* panel ("causal nexus") is contrary to Section 1442(a)(1)'s broad "relating to" test created in 2011 congressional amendments to the statute. *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545.

(5) The *Meadows* panel decision violates the principle that the removing officer's theory of the case is to be credited. *See Acker*, 527 U.S. at 432.

(6) Section 1442(a) allows federal contractors to remove cases and the removal of such suits would be entirely unworkable if the right of removal ceased once the federal contracting officer left government service or the contract's term formally ended, even if disputes about actions taken under the contract remain live. Cases like *Caver* were premised on such a benighted approach.

(7) Section 1442(b)'s "is, or at the time the alleged action accrued was, a civil officer of the United States" language cannot be used to interpret the meaning of Section 1442(a) because Sections 1442(a) and (b) were not adopted at the same time

and were instead stuck together by codifiers, not legislators. *See Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 227-28 (1957) (the rearrangements of the1948 codification of Title 28 lacks substantive effect).

(8) This Court's decision in *United States v. Pate*, 84 F.4th 1196 (11th Cir. 2023) (en banc) is highly distinguishable and does not command the result reached in *Meadows*. *Pate* involved a criminal statute strictly construed consistent with the Due Process and the rule of lenity. *See Pate*, 84 F.3d at 1210 (Rosenbaum, J., concurring along with Chief Judge Pryor*,* who authored the *Meadows* panel decision). By contrast, the federal-officer removal statute is to be construed broadly. *See, e.g., Symes*, 286 U.S. at 157.

> ***AND***

(9) The policy consequences of the *Meadows* ruling are unthinkable and cannot be feasibly limited to skewering only President Trump or officers who served him. The first day after the Biden Administration ends or, alternatively, officials in its Department of Homeland Security leave federal service, they could (for instance) be indicted for their dereliction of duty in protecting the border of the United States against incursions by tens of millions of illegal aliens. The resolution of federal immunity defenses was not intended to be left to a political game of federalism ping-pong, but instead were tied to resolution in the federal forum, achieved through mechanism of Section 1442(a) removal.

## II. THE DISTRICT COURT ERRED IN REJECTING FEDERAL OFFICER REMOVAL.

### A. The District Court's Evidentiary Rulings Were an Abuse of Discretion.

Under Federal Rule of Evidence 1101(d)(3), evidence rules are relaxed in "miscellaneous proceedings." The hearing contemplated by 28 U.S.C. § 1455(b)(5) is such a miscellaneous proceeding. *See Stallings v. Georgia-Pac. Corp.*, No. 3:12-CV-00724-H, 2013 WL 1563231, at *3 (W.D. Ky. Apr. 12, 2013) ("Defendants can meet their evidentiary obligations to sustain their notice of removal with declarations and affidavits, depending on the content and source of the information contained therein.").[6] *See* Fed. R. Civ. P. 43(c) (Evidence on a Motion. When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions."). The Notice of Removal also removed the civil SPGJ proceedings, making FRCP 43(c) applicable as well.

The District Court never grappled with these authorities, instead charting its own course demanding proceeding by way of a mini-trial on removal and penalizing Mr. Clark for exercising his Fifth Amendment right not to be compelled to testify at

---

[6] *See also Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 773 (E.D. Pa. 2010) (affidavits sufficient to establish removal in federal contractor case); *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 196–97 (D. Mass. 2008); *Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99, 103 (D. Conn. 2007) (using affidavits in removal).

a hearing with potential criminal law consequences and his Sixth Amendment right to a jury trial to find the facts concerning Fulton County's indictment. "[A]n evidentiary ruling on an erroneous view of the law constitutes an abuse of discretion per se." *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc*., 389 F.3d 1339, 1345 (11th Cir. 2004). For these reasons, the District Court's evidentiary rulings concerning federal office removal questions applied the wrong legal standard and were an abuse of discretion. Those findings can be afforded no deference on either a *de jure* or on a *de facto* basis.

> **B.     The District Court's Federal Officer Removal Rulings Are Incorrect.**

The federal officer removal statute shields the supremacy of the federal government against encroachment and incursions by state and local governments. "It scarcely need be said that such measures [i.e., the federal officer removal statute] are to be ***liberally construed*** to give full effect to the purposes for which they were enacted." *Colorado v. Symes*, 286 U.S. 510, 517 (1932) (emphasis added). "In cases like this one, Congress has decided that federal officers, and indeed the federal government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham,* 395 U.S. at 407. *See also Tennessee v. Davis*, 100 U.S. 257, 262- 63 (1879). "'[T]he removal statute 'is broad enough to cover ***all cases*** where federal officers can raise a colorable defense arising out of their duty to enforce federal law.  In fact, one of the

most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'" *Mesa v. California*, 489 U.S. 121, 133 (1989) (emphasis added) *citing Willingham*, 395 U.S. at 406-07.

All three prongs of the *Caver* removability analysis is easily met here:

***1. Mr. Clark Is a Federal Officer.*** The District Court conceded that Mr. Clark was a federal officer. Dkt.# 55 at 10.

***2. Mr. Clark Was Acting Within the Color of His Federal Office.*** The District Court erred, however, in concluding that Mr. Clark's responsibilities were limited to running the Environment and Natural Resources and Civil Divisions at DOJ. Mr. Clark was one of the ten "fungible" Assistant Attorney Generals. *See* 28 U.S.C. § 506; Meese Declaration, Dkt.# 48, pp. 5-7. Mr. Clark had previously been assigned duties at the White House and the President had directly consulted with him about the 2020 election, as it was undisputed Congressman Perry told the press.

Most critically, Mark Meadows specifically directed the Acting Attorney General to have Mr. Clark investigate Fulton County, Georgia signature matching problems and the Acting Attorney General both authorized Mr. Clark to receive a national security briefing and review a classified report about potential foreign interference in the 2020 election and to discuss law enforcement matters concerning the election with U.S. Attorney Pak. Dkt.# 30-1, p. 129-130; 153. For these reasons, it was an error of law and fact for the District Court to hold that Mr. Clark could not

meet the light, "relating to" test applicable to the color-of-law prong of the *Caver* federal officer removal analysis. *Caver*, 845 F.3d at 1144 ("The hurdle erected by this requirement is quite low ...").

While the District Court purported to credit Mr. Clark's theory of the case, in reality, the District Court erroneously credited the State's theory of the case by emphasizing Mr. Hunt's testimony (even though Mr. Hunt knew nothing of the particular facts involving Mr. Clark, as he had left DOJ months before the 2020 election). Dkt.#55 at 5, 18-20. The District Court also wrongly relied on the Justice Manual to keep Mr. Clark tied to a stovepipe, ignoring evidence that Mr. Clark had been given particular authorities by virtue of the President's discussions with him and by specific directive of the Acting Attorney General, which expanded Mr. Clark's authorities beyond the Justice Manual (which in any event can have no binding effect on the President's ultimate Take Care Clause authority, *see* U.S. Const., art. II, § 3, cl. 8). Supreme Court authority requires crediting the officer's theory of the case. *See Osborn v. Haley*, 549 U.S. 225, 249–50 (2007); *Jefferson Cnty. Ala. v. Acker*, 527 U.S. 423, 432 (1999); *Texas v. Kleinert*, 855 F.3d 305, 312 (5th Cir. 2017). *Acker* prohibits District Courts from denying removal by effectively prejudging the merits. *See Acker*, 527 U.S. at 432 ("To choose between those readings of the Ordinance [the officer's versus a county's] is to decide the merits of this case.").

Here, both the indictment and Mr. Clark's Notice of Removal show that he is being state prosecuted for or *relating to* acts under the color of his office—actions he took as a double Assistant Attorney General in composing a draft letter—sending it to and discussing it with his superiors at DOJ under highly privileged and confidential circumstances.

The District Court in this case also created an internal District Court split by refusing to apply the correct approach used in *Georgia v. Heinze*, 637 F. Supp. 3d 1316 (N.D. Ga. 2022), which rebuffed opposition to removal by the Fulton County DA operating on the same theories Judge Jones adopted here as pushed by the same DA's Office:

> *The Court finds that this argument [that the defendants had violated the* ***Fourth Amendment]*** *concerns the* <u>***merits***</u> *of the criminal charges against the Defendants* <u>***and is irrelevant***</u> *to whether the Defendants acted under the color of federal authority for removal purposes. See e.g. Screws v. United States*, 325 U.S. 91, 111 (1945) ("Acts of officers who undertake to perform their official duties are included [under the color of law] ***whether they hew to the line of their authority or overstep it***."); [see also] *United States v. House*, 684 F.3d 1173, 1200 (11th Cir. 2012).

*Heinze*, 637 F. Supp. 3d at 1324 (emphasis added).

The test is not whether the federal officer's conduct violated state law; it is whether it fell within his federal authority. *See* Seth P. Waxman and Trevor W. Morrison, *What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 YALE L.J. 2195, 2233-34 (2003). And Mr. Clark's actions

as a lawyer recommending a course of action and debating it in privileged confines was well within his federal authority.

The District Court repaired at several junctures to federalism principles when it "decline[d] to assume jurisdiction over the State's criminal prosecution," Dkt.#55 at 1. This traces back to how the District Court dealt with the Meadows removal, where it stated that "[t]here is a "'strong judicial policy against federal interference with state criminal proceedings.' *Arizona v. Manypenny*, 451 U.S. 232, 243 (1981) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 600 (1975))." But the Supreme Court did not say this to block, condition, or narrow a federal officer removal, but only to emphasize that States could appeal the merits when they lost on immunity in removed federal officer cases. *See Manypenny*, 451 U.S. at 243 ("No further purpose of the removal statute would be served by denying the State a right to seek review when that very right is available under applicable state law.").

In opposing our request for emergency relief to avoid Mr. Clark having to travel to Georgia to submit to arrest, the State argued (without rebuttal because we were denied a reply brief) that staying Mr. Clark's arrest (contrary to cases above on federal immunity) would violate *Younger* abstention and the Anti-Injunction Act. Dkt.#8 a 9-12. Both assertions are dead wrong—and they are responsible for misleading the District Court. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 475 n.10 (3d Cir.

2015) ("The Commonwealth has pointed us to no courts that have exercised *Younger* abstention where the federal officer removal statute grants jurisdiction."); Erwin Chemerinsky, FEDERAL JURISDICTION, § 11.2, at 775-76 *Injunctions in Aid of Jurisdiction* (6th ed. 2012) (explaining removal expressly authorizes injunctions and thus falls outside of the Anti-Injunction Act) (citing 28 U.S.C. § 2283 (Reviser's Note) & *Mitchum v. Foster*, 407 U.S. 225, 234-37 (1972) (removal as a situation where there is an express authorization of injunction); *Dietzsch v. Huidekoper*, 103 U.S. 494 (1880) (removal as exception to the Anti-Injunction Act)"). There is no basis for engaging in an inapposite federalism-balancing analysis. The issue is conclusively resolved by federal supremacy and approximately 200 years of removal statutes and case law.

***3. Mr. Clark Possesses One or More Colorable Federal Defenses.*** The District Court declined to reach the third prong under *Caver* (whether Mr. Clark had pleaded a colorable defense). But it should have been reached because District Courts should not be permitted to piecemeal out rulings on the three prongs of federal-officer removal analysis, thereby allowing a state prosecution to keep advancing down the tracks as a removal dispute pings up and down on each prong of the removal test. In any event, the record and the Notice of Removal contain more than enough information to meet the "quite low" bar to meet this prong.

Under the U.S. Constitution, the President of the United States, not the Attorney General is the chief law enforcement officer under the Take Care Clause because he alone is head of the entire Executive Branch. The Constitution vests all federal law enforcement power and prosecutorial discretion in the President. The President's discretion in these areas has long been considered "absolute," and his decisions exercising this discretion are presumed regular and are generally deemed non-reviewable. *See, e.g., United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *see generally* Saikrishna Prakash, *The Chief Prosecutor*, 73 GEO. WASH. L. REV. 521 (2005). To assist the President, he has the right to receive full and frank advice from his advisors. The Opinion Clause imposes on senior federal officers like Mr. Clark a reciprocal duty to provide such advice upon request. *See* U.S. Const., art. II, § 2, cl. 1 (Opinion Clause); *see generally* Neil Thomas Proto, *Opinion Clause and Presidential Decision-Making*, 44 MISSOURI LAW REVIEW. 185 (1979).

In this case, the U.S. Constitution does not allow any state/local government to examine or otherwise regulate the internal deliberations that occur on a daily basis among the President, his office, and senior government officials, including the Acting Attorney General, officials in the Deputy AG's Office, or any Assistant Attorneys General. Review of the content, direction, and wisdom of policy discussions falls within the President's exclusive sphere, U.S. Const. art. II § 1, cl. 8

(Take Care Clause); art. II § 2, cl. 1 (Opinion Clause); art. II § 2, cl. 2 (Appointments Clause). *See also Nixon v. Fitzgerald*, 457 U.S. 731 (the President's "absolute immunity" extends to acts "within the 'outer perimeter' of his official duties"); *Klayman v. Obama*, 125 F. Supp. 3d 67 (2015) (sovereign immunity bars RICO action against President and former Secretaries of State for actions taken in their official capacities); *Chugtai v. Obama*, 153 F. Supp. 3d 765 (E.D. Pa. 2015) (President and Air Force officials absolutely immune from Title VII and tort claims).

The Supremacy Clause therefore bars enforcement of any state's criminal law against Mr. Clark based on the content of his confidential internal deliberations at the Department of Justice or with the President. This element of federal supremacy has been clear since *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819).

## III. THE DISTRICT COURT ERRED IN REJECTING REMOVAL OF THE CIVIL SPECIAL PURPOSE GRAND JURY PROCEEDINGS UNDER 28 U.S.C. §§ 1331 & 1441.

This case was properly removed under 28 U.S.C. §§ 1331 & 1441, making this Court's recent *Meadows* decision, even if it were correctly decided, insufficient to require remand to state court.

28 U.S.C. § 1441(a) provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Section 1441(a) applies here, for this proceeding is, at least in part, a "civil action."

48

This is true because Georgia law itself characterizes SPGJ proceedings as civil in nature under *Kenerly*—a point the District Court never disputed.

This District Court possesses original federal question jurisdiction over this in-part "civil action" because the attempted civil inquiry into and regulation of a Justice Department lawyer at issue here is completely preempted. Complete federal preemption overrides invocations of the "well-pleaded complaint rule." *See, e.g., Vaden v. Discover Bank*, 556 U.S. 49, 56 (2009).

More specifically, Georgia is entirely fenced out of trying to regulate federal U.S. Justice Department lawyers engaged in internal deliberations or in their interactions with citizens seeking redress of grievances by the federal government. *See, e.g., Cunningham v. Neagle*, 135 U.S. 1, 76 (1890) (federal official engaging in his duties "is not liable to answer in the court of [a State]"). *See also Tennessee v. Davis*, 100 U.S. 257, 266-67 (1880) ("The removal of cases arising under those [federal laws] laws from state into federal courts is therefore no invasion of state domain."). *See also id.* at 262-63 ("If, when thus acting and within the scope of their authority, those officers can be arrested and brought to trial in a state court for an alleged offense against the law of the state, yet warranted by the federal authority they possess, and if the general government is powerless to interfere at once for their protection — ***if their protection must be left to the action of the state court — the***

*operations of the general government may at any time be arrested at the will of one*

*of its members.*") (emphasis added).

"In concluding that a claim is completely preempted, a federal court finds that Congress desired not just to provide a federal defense to a state-law claim but also to replace the state-law claim with a federal law claim and thereby give the defendant the ability to seek adjudication of the claim in federal court." Wright, Miller & Cooper, 14C FED. PRAC. & PROC. JURIS. § 3722.2, *Removal Based on Federal-Question Jurisdiction—Removal Based on Complete Preemption* (Rev. 4th ed. (updated as per Westlaw)). Here, the rationale for complete preemption is even stronger because regulating and investigating U.S. Justice Department lawyers is inherently a federal role—and not a state role. At least it is not a state role in the absence of a clear delegation to Georgia. And there is no such delegation to Georgia applicable here, or to Fulton County, and at no time did the Fulton DA attempt to overcome this staggering gap in her authority.

Preemption as a defense is involved only where it is plausible that a State possesses concurrent jurisdiction over a particular subject matter. Only exceptionally comprehensive statutory regimes like the Employee Retirement Income Security Act of 1974 ("ERISA") can overcome the ordinary presumption that, in economic matters where Congress regulates pursuant to the Commerce Clause, the States are concurrently allowed to wield their police powers. *See Butero v. Royal Maccabees*

*Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir.1999) ("When Congress comprehensively occupies a field of law, 'any civil complaint raising this select group of claims is necessarily federal in character' and thus furnishes subject-matter jurisdiction under 28 U.S.C. § 1331.") (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)).

But the Justice Department is part of the Article II Executive Branch of the federal government! Its internal deliberations are not subject to any kind of presumption of state police power regulation. Allowing state regulation to intrude into that area would breach the Supremacy Clause and put the federal government under the thumb of state governments. Additionally, complete preemption cases ordinarily arise, as *Butero* notes, when **Congress** acts to occupy the field. But here it is the Constitution, pursuant to which the Justice Department exercises the delegated Take Care Clause powers of the President to enforce the laws of the United States, which occupies the field and dictates that federal questions are unavoidably involved in the Fulton DA's actions directed at Mr. Clark, thereby ineluctably placing them within the span of Section 1331 federal question jurisdiction.

The issue here is not whether a statute bars Georgia's civil SPGJ proceedings but whether the Constitution bars the intrusion. For this reason, the District Court erred in holding that "[h]ere, Clark did not cite to any federal statute or congressional action that would completely preempt the State's SGJP." Dkt.#55 at 30. Moreover,

congressional action was never the basis for the complete preemption argument we made below. Article II of the Constitution's occupation of the field was the basis of the argument. It is for good reason that there has never been a case in the annals of American law in which the actions of a U.S. Department of Justice lawyer (especially a high-ranking, Senate-confirmed lawyer) were ever questioned in a state civil proceeding, deployed as a prelude to a state criminal prosecution, attempting to penalize internal DOJ deliberations that never projected power inside state borders.

Finally, the District Court also erred in holding that the SPGJ proceedings were moot, Dkt.#55 at 30, because they were not moot at the time of removal. Hence, the Fulton County Superior Court lacked the power, post-removal, to terminate the proceedings. After removal was effectuated, only the District Court had the power to terminate those proceedings and Mr. Clark (and all parties to the case) would have had the power to contest the termination. Moreover, the District Court failed to apprehend that the removal of the SPGJ proceedings brought the Federal Rules of Civil Procedure into play, which would have granted Mr. Clark and other defendants the right to seek discovery into those proceedings—including by filing interrogatories, seeking admissions, and taking depositions to get more visibility into how those proceedings were conducted.

## CONCLUSION

The District Court's September 29, 2023 remand order should be reversed with instructions to notify the Fulton County Superior Court to halt all further action in the prosecution initiated by the indictment pursuant to 28 U.S.C. § 1455(b)(5). Additionally, this Court should instruct the District Court that the Federal Rules of Civil Procedure are applicable to the removed Special Purpose Grand Jury proceedings and that, as a party targeted in those proceedings, Mr. Clark may use those processes to inquire into same and otherwise seek relief against them.

Respectfully submitted, this 19 day of January, 20244.

**CALDWELL, CARLSON,**
**ELLIOTT & DELOACH, LLP**

/s/ Harry W. MacDougald
Harry W. MacDougald
Ga. Bar No. 463076
Two Ravinia Drive
Suite 1600
Atlanta, GA 30346
(404) 843-1956
hmacdougald@ccedlaw.com

**BERNARD & JOHNSON, LLC**

/s/ Catherine S. Bernard
Catherine S. Bernard
Ga. Bar No. 505124
5 Dunwoody Park, Suite 100
Atlanta, Georgia 30338
Direct phone: 404.432.8410
catherine@justice.law

*Attorneys for Jeffrey B. Clark*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was hereby filed on this 19 day of January 2024 with the Court's electronic filing system, which causes service to be made upon all counsel of record.

This 19 day of January, 20244.

/s/ Harry W. MacDougald
Georgia Bar No. 463076
Attorney for Defendant

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 12,975 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1), according to the count of Microsoft Word.

I certify that this brief complies with the typeface and type-style requirements of Fed. R. App. P. Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced 14-point font, Times New Roman.


*/s/ Harry W. MacDougald*

Harry W. MacDougald
Caldwell, Carlson,
  Elliott & DeLoach LLP
Suite 1600 Atlanta
Two Ravinia Drive
Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com