No. 23-13368

# In the United States Court of Appeals for the Eleventh Circuit

THE STATE OF GEORGIA

*Plaintiff-Appellee,*

v.

JEFFREY B. CLARK

*Defendant-Appellant*

On Appeal from the United States District Court
for the Northern District of Georgia, Atlanta Division,
No. 1: 23-cv-03721-SCJ

## REPLY BRIEF FOR DEFENDANT-APPELLANT JEFFREY B. CLARK

**CALDWELL, CARLSON,
ELLIOTT & DELOACH, LLP**

HARRY W. MACDOUGALD
Georgia Bar No. 463076
Two Ravinia Drive
Suite 1600
Atlanta, GA 30346
(404) 843-1956
hmacdougald@ccedlaw.com

*Counsel for Defendant-Appellant
Jeffrey B. Clark*

# CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT

To the best of Appellant's knowledge, no associations of persons, partnerships, or corporations have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock.

The following is a list, in alphabetical order, of all trial judges, attorneys, law firms, and persons with an interest in this appeal by virtue of their appearance in the underlying criminal matter in Fulton Superior Court:

1. Alksne, Cynthia, *amicus* below

2. Anulewicz, Christopher Scott, attorney for Robert David Cheeley

3. Arora, Manubir, attorney for Kenneth John Chesebro

4. Aul, Francis, attorney for Mark R. Meadows

5. Ayer, Donald B., *amicus* below

6. Barron, Lynsey M., attorney for Scott Graham Hall

7. Beckermann, Wayne R., attorney for Robert David Cheeley

8. Bernard, Catherine S., attorney for Defendant Jeffrey B. Clark

9. Bever, Thomas Dean, attorney for Shawn Micah Tresher Still

10. Bittman, Robert, attorney for Mark R. Meadows

11. Bondurant Mixson & Elmore LLP

12. Carr, Christopher M., Attorney General of the State of Georgia

13. Cheeley, Robert David, Defendant in Georgia v. Trump

14. Chemerinsky, Erwin, *amicus* below

15. Chesebro, Kenneth John, Defendant in Georgia v. Trump

16. Christenson, David Andrew, *pro se*, denied intervention below

17. Clark, Jeffrey Bossert, Defendant in Georgia v. Trump

18. Cohen, Darryl B., attorney for Trevian C. Kutti

19. Copeland, Amy, *amicus* below

20. Cromwell, William Grant, attorney for Cathleen Alston Latham

21. Cross, Anna Green, Fulton County District Attorney's Office

22. Cross Kincaid LLC

23. Durham, James D., attorney for Mark R. Meadows in Georgia v. Trump

24. Eastman, John Charles, Defendant in Georgia v. Trump

25. Ellis, Jenna Lynn, Defendant in Georgia v. Trump

26. Englert, Joseph Matthew, attorney for Mark R. Meadows

27. Farmer, John J. Jr., *amicus* below

28. Floyd, Harrison William Prescott, Defendant in Georgia v. Trump

29. Floyd, John Earl, Fulton County District Attorney's Office

30. Francisco, Michael Lee, attorney for Mark R. Meadows

31. Fried, Charles A., *amicus* below

32. Fulton County District Attorney's Office

33. Gerson, Stuart M., *amicus* below

34. Gillen, Craig A., attorney for David James Shafer

35. Giuliani, Rudolph William Louis, Defendant in Georgia v. Trump

36. Griffin Durham Tanner & Clarkson LLC

37. Grohovsky, Julie, *amicus* below

38. Grubman, Scott R., attorney for Kenneth John Chesebro

39. Hall, Scott Graham, Defendant in Georgia v. Trump

40. Hampton, Misty (a/k/a Emily Misty Hayes), Defendant in Georgia v. Trump

41. Harding, Todd A., attorney for Harrison William Prescott Floyd

42. Hogue, Franklin James, attorney for Jenna Lynn Ellis

43. Hogue, Laura Diane, attorney for Jenna Lynn Ellis

44. Jody Hunt, lawyer for Samford University and former counsel for Cassidy Hutchinson

45. Jones, Steve C., U.S. District Court Judge for the Northern District of Georgia

46. Kammer, Brian S., attorney for *amici* below

47. Kelley, Emily E., attorney for Mark R. Meadows

48. Kutti, Trevian C., Defendant in Georgia v. Trump

49. Lake, Anthony C., attorney for David James Shafer

50. Latham, Cathleen Alston, Defendant in Georgia v. Trump

51. Lee, Stephen Cliffgard, Defendant in Georgia v. Trump

52. Little, Jennifer L., attorney for Donald J. Trump

53. Luttig, J. Michael, *amicus* below

54. MacDougald, Harry W., attorney for Jeffrey B. Clark

55. McAfee, Scott, Fulton County Superior Court Judge

56. McFerren, William Coleman, attorney for Shawn Micah Tresher Still

57. McGuireWoods, LLP

58. Meyer, Joseph Michael, attorney for *amici* below

59. Moran, John S., attorney for Mark R. Meadows

60. Morgan, John Thomas III, attorney for *amici* below

61. Morris, Bruce H., attorney for Ray Stallings Smith, III

62. Ney, Adam, Fulton County District Attorney's Office

63. Novay, Kristen Wright, attorney for Ray Stallings Smith, III

64. Palmer, Amanda, attorney for Ray Stallings Smith, III

65. Parker, Wilmer, attorney for John Charles Eastman

66. Pierson, Holly Anne, attorney for David James Shafer

67. Powell, Sidney Katherine, Defendant in Georgia v. Trump

68. Rafferty, Brian T., attorney for Sidney Katherine Powell

69. Ragas, Arnold M., attorney for Harrison William Prescott Floyd

70. Raul, Alan Charles, *amicus* below

71. Rice, Richard A., Jr., attorney for Robert David Cheeley

72. Roman, Michael A., Defendant in Georgia v. Trump

73. Rood, Grant H., Fulton County District Attorney's Office

74. Sadow, Steven H., attorney for Donald J. Trump

75. Saldana, Sarah R., *amicus* below

76. Samuel, Donald Franklin, attorney for Ray Stallings Smith, III

77. Shafer, David James, Defendant in Georgia v. Trump

78. Smith, Ray Stallings, III, Defendant in Georgia v. Trump

79. Still, Shawn Micah Tresher, Defendant in Georgia v. Trump

80. Terwilliger, George J., III, attorney for Mark R. Meadows

81. Trump, Donald J., Defendant in Georgia v. Trump

82. Twardy, Stanley A. Jr., *amicus* below

83. Volchok, Daniel, attorney for *amici* below

84. Wade, Nathan J., Fulton County District Attorney's Office

85. Joycelyn Wade

86. Wade & Campbell Firm

87. Wakeford, Francis McDonald IV, Fulton County District Attorney's Office

88. Waxman, Seth P., attorney for *amici* below

89. Weld, William F., *amicus* below

90. Wertheimer, Fred, attorney for *amici* below

91. Willis, Fani T., Fulton County District Attorney's Office

92. Wilmer Cutler Pickering Hale and Dorr LLP

93. Wooten, John William, Fulton County District Attorney's Office

94. Wu, Shan, *amicus* below

95. Young, Daysha D'Anya, Fulton County District Attorney's Office

# TABLE OF CONTENTS

Certificate of Interested Parties and Corporate Disclosure Statement ...................... i

Table of Contents ................................................................................................. vii

Table of Authorities ........................................................................................... viii

Argument ................................................................................................................ 1

    I.   Introduction .............................................................................................. 1

    II.  Factual Matters and Related Procedure. ...................................................... 6

    III. The Meadows Decision Is Erroneous and Should Not Be Followed Because It Runs Contrary to Supreme Court and Eleventh Circuit Precedent. .............................................................................................. 17

    IV. The District Court's Non-Meadows Approach to Remanding This Case Is Also Legally Flawed. ............................................................................ 22

    V.  The SPGJ Matter Is Removable under 28 U.S.C. §§ 1331, 1441 and 1446. .................................................................................................... 22

Conclusion ........................................................................................................... 26

Certificate of Compliance ..................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Florida v. Cohen*, 887 F.2d 1451 (11th Cir. 1989).......................................... ii, 7, 18

*In re Clark*, No. 22-mc-0096, 2023 U.S. Dist. LEXIS 100128,((D.D.C. June 8, 2023).....................................................................................................................24

*In Re: Jeffrey B. Clark*, D.C. Circuit Case No. 23-7073 ........................................24

*Jefferson County v. Acker*, 527 U.S. 423 (1999) ......................................... 4, 7, 8, 24

*Kenerly v. Georgia*, 311 Ga. App. 190 (2011) ........................................................25

*Kentucky v. Long*, 837 F.2d 727 (6th Cir. 1988) ............................................. 20, 22

*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020).......................18

*Magnin v. Teledyne Continental Motors*, 91 F.3d 1424 (11th Cir. 1996)..............19

*Marley v. Elliott Turbomachinery Co.*, 545 F. Supp. 2d 1266 (S.D. Fla. 2008) .....18

*Mayo v. United States*, 319 U.S. 441 (1943) .............................................................5

*McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316 (1819) .......................................5, 6

*Osborn v. Haley*, 549 U.S. 225 (2007) .....................................................................7

*Ruppel v. CBS Corp.*, 701 F.3d 1176 (2012) ..........................................................18

*State v. Meadows*, 88 F.4th 1331 (11th Cir. 2023), *reh'g denied* (11th Cir. Feb. 28, 2024) ........................... i, ii, iii, iv, v, 1, 2, 3, 4, 5, 6, 15, 17, 18, 19, 20, 21, 22

*United States v. Pate*, 84 F.4th 1196 (11th Cir. 2023)............................................21

*Willingham v. Morgan*, 395 U.S. 402 (1969) ....................................... 1, 2, 4, 6, 7, 8

## Statutes

28 U.S. C. § 1442.............................................. 1, 2, 3, 5, 6, 7, 17, 18, 20, 21, 25

28 U.S.C. § 1331 ..................................................................... 1, 5, 22, 24

28 U.S.C. § 1441 ................................................................. 5, 6, 22, 24, 25

28 U.S.C. § 1446 ...................................................................... 22, 24

28 U.S.C. § 1455 ...............................................................................26

**Rules**

Federal Rule of Civil Procedure 43 .........................................................22

Federal Rule of Evidence 1101 ...................................................... 15, 22

**Other References**

Laurence H. Tribe, *Intergovernmental Immunities in Litigation, Taxation, and Regulation: Separation of Powers Issues in Controversies About Federalism*, 89 HARV. L. REV. 682 (1976) ...........................................................1

Stanley Dunlap, *Georgia Oversight Panel Ruminates on 2020 Election Hiccups as 2024 Showdowns Loom*, GA. RECORDER (May 7, 2024)..................................3

# ARGUMENT

## I. INTRODUCTION

The removal rights that Congress afforded to federal officers are the indivisible handmaiden of the immunity rights granted to federal officials to be free of intergovernmental interference or interrogation directed at how they perform their federal duties. *See generally* Laurence H. Tribe, *Intergovernmental Immunities in Litigation, Taxation, and Regulation: Separation of Powers Issues in Controversies About Federalism*, 89 HARV. L. REV. 682 (1976). Indeed, the test for removal is not just supposed to be coterminous in its protection with immunity defenses, but **broader** than federal officer immunities. This is because the purpose of removal is to allow immunity defenses to be tested in a federal forum that avoid inhospitable state forums, even where the immunity defenses might not win:

> [The Tenth Circuit wrongly] held that the test for removal was 'much narrower' than the test for official immunity . . . and accordingly that petitioners might have to litigate their immunity defense in the state courts. The Government . . . argues that the removal statute is an incident of federal supremacy, and that one of its purposes was to provide a federal forum for cases where federal officials must raise defenses arising from their official duties. ***On this view, the test for removal should be broader, not narrower, than the test for official immunity. We agree***.

*Willingham v. Morgan*, 395 U.S. 402, 405 (1969) (emphasis added).

Against this backdrop, this Court, in *State v. Meadows*, 88 F.4th 1331 (11th Cir. 2023), *reh'g denied* (11th Cir. Feb. 28, 2024) (unpublished), erred in two respects in construing and applying Section 1442:

*First*, the Court construed former White House Chief of Staff Meadows' argument for removal under *Willingham* as making removal "coextensive" with immunity, when in reality, as noted above, the Supreme Court held that removal rights (in order to guarantee federal forum review of immunity) must be famed ***even more broadly*** than immunity. ***Second***, the Court responded to Meadows' *Willingham* argument with the *non sequitur* that there is "no authority suggesting that state courts are unequipped to evaluate federal immunities." *Id.* at 1343. But jurisdiction over immunity defenses is ***inherently concurrent*** and, even more importantly, removal is a procedural option; it is not mandatory. Actions can be brought by States against federal officials (removal would make no sense otherwise) and thus federal court jurisdiction is nonexclusive. But this does not negate *Willingham*'s holding or defeat the argument that removal rights were designed by Congress to be broad and that, contrary to Supreme Court law, this Circuit has given 28 U.S.C. § 1442 a narrow and grudging interpretation that ***cuts off removal rights in an entire category of cases*** against federal officers—*i.e.*, where state officials act to bring prosecution or suit only after the federal officer has left office. There is nothing in the logic of federal immunity or the text of Section 1442 (read properly) to support such a result.

Additionally, we must address the elephant in the room in this case. The litigation against Mr. Clark (as well as President Trump and Mark Meadows) is part

of an unprecedented "lawfare" (litigation conducted in the manner of scorched-earth warfare) campaign against President Trump and his perceived allies. As tempting as it may be for some to want to credit narratives crafted by the House Select January 6 Committee, this Court must interpret Section 1442 and its associated case law as it finds it.[1] It cannot assume that President Trump, Mr. Meadows, or Mr. Clark acted improperly and re-construe and mis-construe Section 1442 to deprive them of the federal forum. And this is especially true as more and more evidence emerges of irregularities in the 2020 presidential election in Georgia. President Trump and Messrs. Meadows and Clark had a good-faith basis for raising questions about the 2020 election in Georgia.[2] And that is enough, under the plain text of Section 1442(a) and (d), to permit removal to federal court.

The District Court below did not adopt the no-former-federal-officer construction of Section 1442 adopted in *Meadows*. Instead, it violated the principle that Section 1442 is to be interpreted broadly, in line with the ***officer's theory of***

---

[1] The entire Introduction of the red brief from the State is free of any citations to the record below - it is the product of mere allegations against Mr. Clark drawn from non-judicial sources. The State proceeds as if all of these allegations have been proven, which is untrue.

[2] *See, e.g.,* Stanley Dunlap, *Georgia Oversight Panel Ruminates on 2020 Election Hiccups as 2024 Showdowns Loom*, GA. RECORDER (May 7, 2024) ("The Georgia Election Board voted Tuesday to reprimand Fulton County and appoint an independent monitor for the 2024 election for violating state law while conducting a recount of the 2020 presidential election.").

**removal** not the allegations of an indictment, *see Jefferson County v. Acker*, 527 U.S. 423, 432 (1999). The District Court did this by holding that while the President could expand Mr. Clark's duties as an Assistant Attorney General running two of DOJ's litigating divisions to other matters, Mr. Clark had to prove that President Trump had specifically assigned him a role of writing a letter to the State of Georgia. Dkt.#55, pp. 26-27. This runs afoul of executive, law enforcement, deliberative process, and attorney client privileges. What President Trump instructed Mr. Clark is, respectfully, none of the State of Georgia's business as an inferior sovereign. Removal does not hinge on privileges being surrendered. Again, from *Willingham*: "The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham*, 395 U.S. at 407.

The main error made by the District Court below in both Mr. Clark's and Mr. Meadows' case is that it construed the removal statute as requiring a mini-trial on the circumstances of the conduct alleged by the State of Georgia against them. That is simply not how federal officer removal works. If it did work that way, it would assign resolving immunity disputes designed to protect against state incursions to the wrong court system. *See, e.g., McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316

(1819).[3] "[T]he activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943). If Section 1442 were construed narrowly or grudgingly, then States would be able to "retard, impede, burden, or in [some] manner control the operations" of the superior federal government. Indeed, even beyond the merits, privileges rooted in federal law, whether executive, law enforcement, deliberative process, or attorney-client cannot be burdened by state action. If that is allowed to occur, States are acting entirely outside of their proper sphere. The District Court erred in requiring Mr. Clark to prove specific facts in order to remove—especially in advance of a trial before a federal Article III court, with a properly formed federal jury.

Finally, Mr. Clark properly removed this case on a ground not addressed in the *Meadows* decisions. Namely, the State of Georgia here (through District Attorney Willis) opted to proceed here initially via Special Purpose Grand Jury ("SPGJ") (a civil procedural device). This was her choice. The bitter of that choice for the State of Georgia comes with the sweet. It gave the State additional investigative powers but it also opened up this case to removal as a civil matter pursuant to 28 U.S.C. §§ 1331 and 1441. The State in its red brief fails to rehabilitate

---

[3] "[T]he States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the General Government. This is, we think, the unavoidable consequence of that supremacy which the Constitution has declared." *McCulloch*, 17 U.S. at 426.

the District Court decision, which wrongly conflates Section 1441 analysis with Section 1442 analysis.

The *Meadows* panel worked a profound change in the law at odds with *Willingham* and decisions as venerable as the great Justice John Marshall's *McCulloch*, as Section 1442 is designed to operate, when invoked, to pull all immunity defenses (and thus entire cases) into federal court. By contrast, *Meadows* is a complete outlier in the 190-year history of federal officer removal. For that reason, as we pointed out, this case should be heard initially by the Court en banc (the denial of the en banc petition in the *Meadows* case itself, notwithstanding—as that denial could have been based on a finding not applicable to Mr. Clark that Mr. Meadows (who did not stand on privilege defenses but took the stand) engaged in political conduct outside his duties as Chief of Staff).

We submit that Section 1441 removal should also be heard initially en banc because if we can remove and secure discovery into use of the device, we will be able to show the SPGJ was used to penetrate into confidential federal deliberations.

## II.    FACTUAL MATTERS AND RELATED PROCEDURE.

The State proceeds as if the indictment it secured from an ordinary grand jury are facts established in this proceeding. *See* State Br. 3-5. That is not the case and this Court cannot accept that approach as it violates the governing Supreme Court law that the federal officer's theory of the case must be credited, not the facts alleged

in the indictment. *See, e.g., Acker*, 527 U.S. at 432 ("we credit the judges' theory of the case **for purposes of both elements of our jurisdictional inquiry** and conclude that the judges have made an adequate threshold showing that the suit is 'for a[n] act under color of office.' 28 U.S.C. § 1442(a)(3)."); *see also Osborn v. Haley*, 549 U.S. 225, 249–50 (2007) (similar); *Florida v. Cohen*, 887 F.2d 1451, 1453-54 (11th Cir. 1989) (also accepting and applying the *Willingham* point made above and holding that the purpose of immunity goes both backwards in time and forwards in time). At no point, has the State argued that the notice of removal filed by Mr. Clark failed to assert a theory on which removal could occur. Instead, as noted, the State sought to dispute the facts alleged there in a mini-trial.

Next, the State assails that Mr. Clark did not attend the evidentiary hearing that was held in the case. *See* State Br. at 7. This is irrelevant for three reasons. **First**, the District Court did not order Mr. Clark to appear at the hearing. **Second**, the District Court did insist that Mr. Clark file a waiver of appearance at the hearing. We explained in the Opening Brief on page 16 why this was an erroneous construction and application of Federal Rule of Criminal Procedure 43. The State offers no response to that point. **Third**, the State stresses the hearing appearance point because it presumes Section 1442 requires a mini-trial, ignoring *Acker.* This is the only possible basis for the State asserting that it has a right to cross examine Mr.

Clark (State Br. at 7) as to the issues involved in removal. But there is no such right and the State cites no authority establishing such a right.

The State argues against the affidavit of former Attorney General Meese, *id.* at 7-8, but we submit that our discussion of the District Court's confused, flip-flop rulings on the Meese affidavit are more accurately set out in the Opening Brief at 15-17. Georgia argues that the Meese affidavit should be given little weight because it is self-interested. State Br. at 8. Again, this runs afoul of the pleading-standard approach adopted by Acker as focused on the theory of removal **as enunciated by the removing federal officer**. Removals will inherently be self-interested. There is no prohibition on such removals as the whole point of removal according to *Willingham* is to allow federal officers a federal forum in which to present their immunity defenses. Perhaps the State thinks that immunity defenses should be ignored because they are also "self interested."

Next, the State argues that the testimony of former Assistant Attorney General Hunt should block removal because he opined that the Civil Division did not work on election matters, only the Civil Rights and Criminal Divisions. *See* State Br. at 8-9. There are several reasons why this factual argument fails as well.

**First**, Mr. Clark's theory of removal, as reflected in the Meese affidavit and the former Assistant Attorney General Ted Olson opinion in DOJ's Office of Legal Counsel, is that most Assistant Attorney Generals have fungible duties and that they

8

can be given additional or different duties (subject to some irrelevant constraints) by the President or the Attorney General, his delegate. Dkt.#66, pp. 20-21.

***Second***, Mr. Hunt was not at DOJ or with the Executive Branch of the U.S. government during the timeframe covered by the indictment; thus, he is wholly unaware (except by reading media and biased January 6 Committee accounts) of Mr. Clark's interactions with President Trump.

***Third***, the District Court recognized that there was evidence in the record that Mr. Clark was given additional duties by the President, but opined that Mr. Clark had to prove that those duties included drafting a letter to Georgia. But, in addition to the points made above, the District Court profoundly misunderstands the role of high-ranking officials like Mr. Clark. The President does not micromanage their duties. It is sufficient that the President had Mr. Clark investigating the 2020 election. Without Mr. Clark breaching any privileges, it is also sufficient to note that high-ranking officials are expected to use their independent judgment to make recommendations to the President. There is no record evidence to the contrary. There is just the District Court's call, essentially, that he wanted more—material that inherently would have required waiving privileges to explain. Mr. Clark is not arguing that he is entitled to a directed verdict. He is arguing at this stage, under what the State itself admits is a "low burden" (and one primarily embodied in the theory set out in the notice of removal), State Br. at 2, only that he is entitled to

remove. Once removal occurs, should it become necessary if Mr. Clark's immunity defenses are overcome, then and only then is Mr. Clark potentially required to come forward with affirmative evidence of the propriety of his acts at trial.

Still relying on Hunt, the State argues that only the Attorney General could expand Mr. Clark's DOJ duties and that Mr. Clark's contacts with President Trump violated a White House contacts policy set out by former Attorney General Holder. This represents a failure to understand how Article II of the U.S. Constitution works. The President is the Chief Law Enforcement Officer of the United States, not the Attorney General. The was evidence in the record that Mr. Clark was asked to investigate election issues. The Holder policy is not a constitutional provision (or even based on one); it is not a statute; it is not a regulation; it is a mere guidance document incompetent to bind any President, including President Trump. Former Attorney General Meese explained all of this in his affidavit and Mr. Hunt's views, even if they were to the contrary (which is unclear at best), are not as powerful as General Meese's. And they certainly do not comport with the Constitution.

It is at this point that the State turns to transcripts it imported from the January 6 Committee and put before the District Court. *See* State Br. at 9-12. For several reasons, these materials also cannot block removal.

***First***, they are *ex parte* testimony that none of Mr. Clark's lawyers were given the opportunity to cross examine.

***Second***, the State cannot blow hot and cold on cross-examination rights, arguing that Mr. Clark was forced to testify at the removal evidentiary hearing but ignore that Mr. Clark's attorneys could not probe Messrs. Rosen, Donoghue, and Klukowski at the hearing.

***Third***, the January 6 Committee did not include a ranking member selected in accord with House Resolution 503 from the 117th Congress and thus it also did not include a minority counsel chosen by that ranking member. Thus, Mr. Clark did not even receive the benefit of proxy examinations by Republican House Members that might have poked holes in the stories told by those individuals. At all times, the January 6 Committee voted as a monolithic bloc of 9 members. There were ostensible Republican Members but they were not appointed by the Republican Conference and followed in lock-step with Democrat Chair Bennie Thompson.

***Fourth***, there is a reason that the State did not call Messrs. Rosen, Donoghue, or Klukowski to the stand. Namely, it appears that the State sought DOJ's permission to bring at least one of those witnesses into one or more of the grand juries it opened in this case. The *New York Times* itself (despite its cheerleading for the January 6 Committee) reported that the Biden DOJ denied such permission to Fani Willis's office. *See* Glenn Thrush, *et al.*, *Trump's Next Legal Threat Could Be in Georgia. That May Be Tricky for Federal Prosecutors*, NEW YORK TIMES (Apr. 7, 2023) ("Last year, Ms. Willis's office sought to interview two key figures who had served

in the Justice Department: Richard Donoghue, the acting deputy attorney general in the waning days of the Trump administration, and Jeffrey Clark, an assistant attorney general who led the department's environmental division. But the requests were ultimately rejected.")

Indeed, we have been trying to get access to that correspondence with the Biden DOJ but the State will not turn it over to us and DOJ has on a slow boat to China. We asked Fulton County Superior Court Judge Scott McAfee to order its release but he declined to do so and placed the relevant documents under seal. *See* Fulton Superior Court, Case No. 23SC188947, Order Defendant's Motion to Compel, Feb. 6, 2024. This supports, rather than undermines removal because it exemplifies that Georgia state officials' disrespect for federal supremacy and immunity. The State also whistles past the public indication that the Biden DOJ denied Georgia permission to secure Mr. Clark as a witness.

It is disingenuous for the State's to argue that the only way Mr. Clark could resist removal is if he agreed to testify at the removal hearing. Beyond the fact that such an argument is not supported by removal law, if Georgia has in its possession a refusal by the Biden DOJ to let Mr. Clark testify, then its argument is pure gamesmanship the Court should not condone. It should order the State to put its correspondence with the Biden DOJ concerning any potential Trump DOJ witnesses, especially including Mr. Clark, before the Court as a supplement to the record. Or at

the very least, the Court should inquire of the State's counsel at the podium during oral argument how it squares the position in its red brief here with its hidden knowledge of whether Mr. Clark would even have been permitted to testify.

Finally we pose a simple question and hypothesis: If the *New York Times* reporting is correct, why would the Biden DOJ deny permission to make former DOJ officials like Mr. Clark and Mr. Donoghue witnesses? Obviously because it is acting to protect federal supremacy and immunity; it does not wish to expose its own lawyers to state subpoenas to third- or even second-party witnesses.

*Fifth*, this means that even when it gets to trial the State may be unable to produce witnesses and it certainly will not be able to introduce transcripts from the January 6 Committee. In any event, this also reinforces the propriety of and need for removal. First and foremost Mr. Clark wants access to federal court to resolve his immunity defenses in but he also wants access to the Federal Rules of Criminal Procedure.

*Sixth*, even crediting the testimony that Messrs. Rosen and Donoghue disagreed with Mr. Clark's recommendations to them and to the President of the United States, that does not remove Mr. Clark's actions from the protections of the federal removal statute. Federal officers disagree on matters of fact, law, and policy all the time. As the Judges of this Court will know, any Assistant Attorney General like Mr. Clark would have reviewed and edited scores of important appellate briefs

where he disagreed with positions proposed by inferior lawyers. Should any of those lawyers be sued in state court or prosecuted that would not defeat removal. Millions of Americans questioned the 2020 election. President Trump famously did as well. This equates to *ipso facto* illegal conduct only as part of the media and political narrative created after January 6, but not in any court worthy of the name.

**Seventh**, the State argues that the letter Mr. Clark allegedly advocated to send was not ordered to be sent by President Trump during a multi-hour meeting held on January 3, 2021. The State fails to inform that Court that it deliberately kept the January 3 meeting out of the indictment, artificially ending its allegations against Mr. Clark on January 2, 2021. This is because the very fact that the meeting happened, that Mr. Clark was invited to the meeting, that he participated in it, and no adverse action was undertaken against him at DOJ in the days following January 3 reveals that the President had authorized Mr. Clark to make the arguments he made, that he wanted to engage in a vigorous debate, and that he did not see any participant, including himself, as acting outside of their federal offices, and that there was no conspiracy regarding the letter. Including January 3, 2021 in the contextual story completely undermines the idea that this case is not removable because it fell outside of Mr. Clark's duties. Had that been the case, the President would not have invited Mr. Clark to the meeting or he would have ordered Mr. Clark to exit the meeting at its outset. None of that occurred. The purpose of the meeting was

quintessentially constitutional—to debate a written opinion provided to the President for a course of action pursuant to the Opinion Clause, U.S. Const., art. II, § 2, cl. 1.

Indeed, the State is so keen to apply the same approach it used to block Mr. Meadows removal, that it left a cut-and-paste error in its brief. *See* State Br. at 13 (inadvertently referring to Mr. Meadows (not Mr. Clark) being found by the District Court not to have met his burden of showing that the actions he undertook were under color of his office).

We reiterate that *Meadows* is distinguishable from the Clark situation in two major respects: (1) Mr. Meadows admitted to engaging in both political and official activities at the White House and beyond; and (2) Mr. Meadows decided not to stand on privilege but to appear and testify. By contrast, Mr. Clark did not engage in any political activities. The State does not argue that he did. Additionally, Mr. Clark both stood on privileges (as he is entitled to do, especially as against hostile inferior state authorities seeking to intrude into federal supremacy) and he did not testify and make any admissions the State can try to use to contract the theory in his removal notice. Mr. Clark did put in his own sworn statement, which the District Court refused to admit. But that was legal error because there is no law requiring that removal issues be supported by live testimony only. *See* Opening Br. at 16-17 (citing Fed. R. Evid. 1101).

Time and again, the State assumes that it removal is precluded under its view of the facts. But the law requires that Mr. Clark's theory of the case be credited, not the State's.

The State argues that more detailed showings are necessary to remove criminal cases than civil cases, citing *Willingham*, 395 U.S. at 404 n.4. This ignores that the footnote is clearly *dicta*, stating that "Were this a criminal case, a more detailed showing might be necessary because of the more compelling state interest in conducting criminal trials in the state courts." This dicta should not be followed, especially not where Fulton County is trying to use its power over state crimes to reach into the federal DOJ and the White House, both housed in the exclusive federal enclave of Washington, D.C.

The State repeatedly falls back on the allegations in its indictment against Mr. Clark, *e.g.,* State Br. at 23, but crediting the indictment over Mr. Clark's invocation of a host of federal immunity arguments would clearly violate the Supreme Court instruction that federal officer removal is to be tested using the removing officer's theory of the case. As should be apparent from the Supreme Court's recent argument in President Trump's immunity case, where immunity is asserted as to a federal indictment, the federal immunity defenses to state action are even clearer. Despite its long pendency, the Fulton County Superior Court has

16

not yet ruled on Mr. Clark's immunity motion and the State has not yet responded to it.

Finally, the State asserts that Mr. Clark has not asserted any federal defenses. *See* State Br. at 39-48. The State knows this is not true. It is facing a serious motion to dismiss on federal immunity grounds in state court that Mr. Clark never should have been forced to file there, since he has the right to a federal forum to resolve such federal defenses pursuant to *Willingham*.

## III. THE MEADOWS DECISION IS ERRONEOUS AND SHOULD NOT BE FOLLOWED BECAUSE IT RUNS CONTRARY TO SUPREME COURT AND ELEVENTH CIRCUIT PRECEDENT.

We stand on the points made in our Opening Brief (pages 34-39) and our petition for this case to be heard as an initial matter en banc. We amplify a few points, however.

***First***, it is beyond dispute that federal officer removal is available not only to federal officials but also by federal contractors. But once the application of the statute to federal contractors is considered, the facile analysis and structural contrast between Sections 1442(a) and 1442(b) (the latter of which was separately codified thus cannot be considered as if it were adopted in juxtaposition by Congress, rather than an arbitrary choice made by non-legislator codifiers) collapses.

A federal contract inherently has an expiration date. One common type of federal officer removal case involving federal contracts involves workers for such

contractors who develop asbestosis or other diseases after a long latency period and long after such contracts have elapsed. *See Marley v. Elliott Turbomachinery Co.*, 545 F. Supp. 2d 1266 (S.D. Fla. 2008) (tort cases based on exposure to asbestos ranging from the 1940s through the 1980s were removable to federal court under Section 1442). Under the newfound *Meadows* principle all of these cases would go poof and removal, except of the rare case where a tort suit was brought before a long contract expired, would no longer be removable, taking away an important defensive procedural right from federal contractors relying on federal product specification decisions. *See also Ruppel v. CBS Corp.*, 701 F.3d 1176 (2012) (similar, but involving mesothelioma, based on exposures running from the 1940s to the 1970s).

We especially recommend that the Court review the Fifth Circuit's en banc opinion in *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) (asbestos contractor case involving the Navy). *Latiolais* notes that prior precedent on removal in that circuit was very confused. They opted to stress the 2011 amendments to the federal officer removal statute and to align with other circuits. In *Meadows*, this Court is breaking with both the U.S. Supreme Court and other circuits. *Meadows* would entirely upend federal contractor removals and eject from federal jurisdiction virtually all long latency asbestos and mesothelioma cases.

Indeed, this Court's own precedent is being overturned by *Meadows*. It would *sub silentio* overrrule *Cohen*, 887 F.2d at 1453-54, invoked above, which holds that

18

the immunity that is the touchstone of the purpose of the federal removal statute goes both backwards in time and forwards in time. Other precedents would simply cease to make sense or require analysis of thoughts never before thought relevant. Take another contractor case like *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424 (11th Cir. 1996) (allowing manufacturer to remove a case based on an authorization issued by a designated Federal Aviation Administration inspection representative). The latent injury cases show that *Meadows* would gut federal contractor removal as a category. *Magnin* points out an even more bizarre defect in the practical consequences of *Meadows* as it would require an inquiry into whether the relevant contracting officer or other federal official the defendant was "acting under" is still in federal service. Presumably *Meadows* as applied to a case like *Magnin* means that as soon as the federal inspection representative retires, removal protections elapse. That makes no sense. And nothing in *Magnin* indicates that that should matter.

We offer the federal contractor removal cases as a response to the gauntlet laid down in *Meadows* that cases involving former federal officers do not exist, just *dicta* that they are covered. That is certainly an assertion radically contravened by the asbestos/mesothelioma contractor cases. In all of those long lag-time cases, the federal contracts are inherently things of the past. Yet removal by defendant contractors (or their successors in interest) is readily permitted.

The State insists that federal contractors are different because they rest on "acting under" language as to federal officers. *See* State Br. at 17. But this makes no sense, for two reasons. **1)** No one would argue that a private contractor could possibly remove if purportedly authorized by a former federal officer. The inquiry would always require looking whether the contracting individual was in federal service at the time or not. **2)** It is easy to replicate the ambiguity the *Meadows* panel saw for the first time in the annals of federal law as to the "acting under" language. It doesn't say "acted under" or "acted under at any time or any relevant time," it simply says "acting under." And from that perspective a retired federal contracting officer a private party is no longer acting under becomes just as much of a problem as being former federal officer under *Meadows*. Both would or could become barriers to removal.

Lastly, we point the Court to the Sixth Circuit's decision in *Kentucky v. Long*, 837 F.2d 727 (6th Cir. 1988). Its report of the facts is unclear. It is possible the FBI agent involved was still with the FBI at the time of the relevant suit. But it is also possible that the Sixth Circuit was saying the agent was with the Bureau at the time of relevant facts between 1979 and 1981. In either event, anomalies are created by *Meadows* reading of Section 1442. An officer like Mr. Clark can be assailed in state court 2.5 years after he left office and be left unable to remove but another federal officer could be assailed for conduct a decade old but he is allowed to remove

20

because he still happens to be in federal service, even if in an entirely different agency in an entirely differently part of the country.

**Second**, we note that two Judges on the *Meadows* panel (Judges Rosenbaum and Abudu) wrote a concurrence that appears to express significant reservations about the policy impact of that Court's unprecedented ruling. They expressed alarm about what would happen if the Biden Administration ends and "Red State" (or locality) prosecutors weaponize the *Meadows* ruling to embroil former President Biden in immediate lawfare: "In short, foreclosing removal when states prosecute former federal officers simply for performing their official duties can allow a rogue state's weaponization of the prosecution power to go unchecked and fester." *Meadows*, 88 F.4th at 1350 (Rosenbaum, J., concurring) (footnotes omitted). These concerns are very real and the courts dealing with how to construe Section 1442 should approach the statute in an evenhanded manner—not one that throws President Trump's allies Mr. Meadows and Mr. Clark to the wolves express concern that President Biden and his Administration's high-ranking officials might suffer the same fate.

**Third**, as the State recognizes, State Br. at 15, *Meadows* is based on the en banc ruling in *United States v. Pate*, 84 F.4th 1196 (11th Cir. 2023). But *Pate* was not a removal case. It held that the relevant federal criminal statute involved was to be strictly construed to cover only current employees. The case is thus wildly

inapposite. Yes, it is also a case that involves theoretical distinction between former and current federal officers. But it was applying fair notice and lenity principles to narrowly construe the criminal statute. This is directly contrary to Supreme Court instructions to construe the federal officer removal statute broadly, and indeed, even more broadly than federal immunity to ensure that *all* cases brought against federal officers can see the included immunity issues resolved in a federal forum.

## IV. THE DISTRICT COURT'S NON-MEADOWS APPROACH TO REMANDING THIS CASE IS ALSO LEGALLY FLAWED.

The State begins its defense of the District Court by offering a few arguments against our invocation of Federal Rule of Evidence 1101(d)(3) and Federal Rule of Civil Procedure 43(c). We cited multiple cases in which removal was decided on affidavits. *Kentucky v. Long* was decided on the officer's affidavit, not his live testimony. The trial court's exclusion of Mr. Clark's declaration was an abuse of discretion.

## V. THE SPGJ MATTER IS REMOVABLE UNDER 28 U.S.C. §§ 1331, 1441 AND 1446.

The SPGJ proceedings are removable because they present a federal question by virtue of complete constitutional preemption. The State makes four arguments in response which we address in turn.

***First***, the State's argues that the SPGJ proceedings were finished because the SPGJ itself had been dissolved before the removal petition was filed. It is plain,

however, that the purported dissolution of the SPGJ did not really conclude the SPGJ proceedings. Motions and orders were filed and hearings were held after the dissolution of the SPGJ. *See* Opening Br. at 6-7, nn.1 & 2. At Dkt.#1-186, media intervenors moved in August 16, 2023 for release of SPGJ Final Report. And, on September 8, 2023—after removal—the SPJ was ordered released. *See* Dkt.#32-1. Much like how it is proceeding on the Catch-22 issue of its secret knowledge of whether Mr. Clark was permitted by the current DOJ to testify in this case, the State on this issue is trying to ascribe knowledge to us before it could possibly have been available to Mr. Clark or his lawyers.

**Second**, the State's next argues that a motions panel of this Court held that the SPGJ is not "ancillary" to the criminal prosecution. 11th Cir. Rule 27-1(g) provides that "A ruling on a motion or other interlocutory matter ... is not binding upon the panel to which the appeal is assigned on the merits, and the merits panel may alter, amend, or vacate it." The motions panel did discuss the meaning of "ancillary." The 11th edition of Black's Law Dictionary defines it as "Supplementary; subordinate." This definition elevates brevity from a virtue to an inexplicable fetish. The definition in the Fifth Edition (1979) is more helpful: "aiding; Attendant upon; Describing a proceeding attendant upon or which aides another proceeding considered as principal. Auxiliary or subordinate." The Free Dictionary at freedictionary.com collects definitions from multiple dictionaries that are consistent with the broader

definition in the Fifth Edition of Black's and include "auxiliary," "supplementary" and "assisting. *See* https://www.thefreedictionary.com/ancillary (last visited May 13, 2024).

In this sense, the SPGJ proceedings are clearly ancillary, supplementary, auxiliary to and assisting the prosecution of this case because the prosecutors used its longer duration and singular focus to gather the evidence used to indict the case. The State simply could not have assembled the case in the way that it did without the SPGJ and, as noted above, by voluntarily opting to use the SPGJ the State must take the bitter (opening not one by two paths to removal) with the sweet.

**Third**, the State's next argues that there is no preemption but its argument is just a restatement of the trial court's finding that Mr. Clark did not act under the color of his office. That finding and the State's argument on that issue are erroneous for their clear failure to credit Mr. Clark's theory as required by *Acker*.

**Fourth**, the State argues that the SPGJ is not a "civil action" and is therefore outside the scope of removal under §§ 1331, 1441, and 1446. To support this argument the State cites *In re Clark*, No. 22-mc-0096, 2023 U.S. Dist. LEXIS 100128, at *22 (D.D.C. June 8, 2023) in which the U.S. District Court for the District of Columbia found that bar proceedings could not be removed because they were neither civil actions nor criminal prosecutions. That issue is on appeal in the D.C. Circuit in *In Re: Jeffrey B. Clark*, D.C. Circuit Case No. 23-7073 (lead). The trial

court was dead wrong in that ruling because 28 U.S.C. § 1442(d)(1) defines a "civil action" or "criminal prosecution" as "any proceeding …to the extent that … a judicial order is sought or issued," which includes hybrid proceedings like bar disciplinary proceedings. The D.C. Circuit appeal in this case was just argued on May 10, 2024. The Court can review the oral argument recording there and we submit there was little interest by the Judges on the Court in agreeing that a bar disciplinary matter is neither civil nor criminal. *See* https://www.youtube.com/live/XgANEQnNmnU?si=8mFUTQHJVrrkxtGV.

Indeed, Judge Katsas posed an extensive series of questions directed at counsel for the D.C. Office of Disciplinary Counsel asking why such a proceeding should not be treated as not a "civil action."

*Fifth*, the state next contends federal grand jury matters are not removable under Section 1441. This not persuasive because federal grand juries, being able to issue indictments, are therefore inherently criminal in nature, while the Georgia special purpose grand juries cannot issue indictments and are thus civil in nature. *See Kenerly v. Georgia*, 311 Ga. App. 190, 193 (2011).

The State's arguments against removal of the SPGJ are unpersuasive and should be rejected.

## CONCLUSION

Oral argument should be held after the petition to hear the case en banc in the first instance is granted.

On the merits, the District Court's September 29, 2023 remand order should be reversed with instructions to notify the Fulton County Superior Court to halt all further action in the prosecution initiated by the indictment pursuant to 28 U.S.C. § 1455(b)(5).

Additionally, this Court should instruct the District Court that the Federal Rules of Civil Procedure are applicable to the removed Special Purpose Grand Jury proceedings and that, as a party targeted in those proceedings, Mr. Clark may use those processes to inquire into same and otherwise seek relief against them, whereas the Federal Rules of Criminal Procedure would be applicable to defending the case as indicted by the ordinary grand jury.

Respectfully submitted, this 14 day of May 2024.

**CALDWELL, CARLSON, ELLIOTT & DELOACH, LLP**

/s/ Harry W. MacDougald
Harry W. MacDougald
Ga. Bar No. 463076
Two Ravinia Drive
Suite 1600
Atlanta, GA 30346
(404) 843-1956
hmacdougald@ccedlaw.com

26

*Attorney for Jeffrey B. Clark*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was hereby filed on this 14 day of May 2024 with the Court's electronic filing system, which causes service to be made upon all counsel of record.


This 14 day of May, 20244.

/s/ Harry W. MacDougald
Georgia Bar No. 463076
Attorney for Defendant

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 6499 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1), according to the count of Microsoft Word.

I certify that this brief complies with the typeface and type-style requirements of Fed. R. App. P. Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced 14-point font, Times New Roman.

*/s/ Harry W. MacDougald*

Harry W. MacDougald
Caldwell, Carlson,
   Elliott & DeLoach LLP
Suite 1600 Atlanta
Two Ravinia Drive
Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com